The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation.<br><br>*Defendants*. | No. 3:15-cv-00612-RBL<br><br>**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTE ON MOTION CALENDAR: October 17, 2019 |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>*Defendants*. | No. 2:19-cv-00199-RBL<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTE ON MOTION CALENDAR: October 17, 2019 |

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## I. INTRODUCTION

Plaintiffs Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda jointly seek a temporary restraining order to enforce a return to the status quo while the Court considers whether, pursuant to Federal Rule of Civil Procedure 23(d), the Court should limit Defendants' communications with putative class members and issue corrective notice. Without telling Plaintiffs or their counsel, and without Court approval, Defendants have attempted to orchestrate an unsanctioned opt-out campaign in these class actions. Defendants undertook this effort during a stay in litigation, before the Court has had the opportunity to consider class certification.

Specifically, in late August, Big Fish quietly amended its Terms of Use to include a statement saying that players who continued to play its games would be forbidden from participating in these two class action lawsuits, which are referred to by name and case number and include the name of this Court. The plaintiffs in these cases are specifically excluded from the new terms, again by name.

Then, last weekend, Plaintiffs learned that Big Fish began displaying a pop-up window to players purporting to require them to not participate in these lawsuits in order to keep playing the games. (Ex. A, reproduced at right.) Both the pop-up window and the new Terms of Use are



Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

manifestly improper communications to putative class members. They are made for the improper purpose of discouraging participation in pending class action lawsuits, and they contain misleading statements that, if they continue to be disseminated, will cause irreparable harm to Plaintiffs and putative class members.

Pursuant to Federal Rule of Civil Procedure 65(b) and LCR 65(b), Plaintiffs request a temporary restraining order to require Defendants to remove these wrongful communications immediately. In this motion, Plaintiffs do not ask the Court to resolve whether the purported arbitration agreements solicited after August 28, 2019, are enforceable. Indeed, if Defendants decide not to attempt to enforce the agreements, then the Court may never need to answer that question. If the TRO is granted, Plaintiffs will seek corrective notice and appointment of interim class counsel pursuant to Rule 23 before the TRO expires.

## II.     BACKGROUND

The facts underlying these two class action lawsuits were summarized succinctly by the Ninth Circuit in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785-86 (9th Cir. 2018):

> Big Fish Casino is a game platform that functions as a virtual casino, within which users can play various electronic casino games, such as blackjack, poker, and slots. Users can download the Big Fish Casino app free of charge, and first-time users receive a set of free chips. They then can play the games for free using the chips that come with the app, and may purchase additional chips to extend gameplay. Users also earn more chips as a reward for winning the games. If a user runs out of chips, he or she must purchase more chips to continue playing. A user can purchase more virtual chips for prices ranging from $1.99 to nearly $250.

The only material differences between these two cases are the addition of Big Fish's new owner as a defendant in *Thimmegowda* and class definitions that cover different time periods. The proposed *Kater* class covers persons who lost purchased chips at Defendants' games before March 23, 2015, and the proposed *Thimmegowda* class covers persons who lost chips after that date.

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

On or about August 28, 2019, Big Fish changed the "Terms of Use" on the Big Fish website.[1] Before then, the "Terms of Use" contained a generic arbitration agreement, which is the subject of pending motions in both cases. The updated Terms of Use, however, are expressly directed at this lawsuit. The new terms provide in relevant part:

> These Terms of Use dated August 28, 2019 do not apply to Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda, who are named plaintiffs in class action lawsuits pending in the Western District of Washington: *Kater v. Churchill Downs Inc.*, Case No. 15-cv-00612-RBL, and *Thimmegowda v. Big Fish Games, Inc.*, Case No. 2:19-cv-00199-RBL. The lawsuits allege claims relating to Big Fish Casino under the Washington Recovery of Money Lost at Gambling statute, the Washington Consumer Protection Act, and Washington common law. The mandatory arbitration provision in these Terms of Use prevents you from participating in these class action lawsuits, even if a class is certified.

(Exhibit B at 1, also available at https://www.bigfishgames.com/company/terms.html) (emphasis omitted). The terms are written in dense, legal language and do not provide information about the current status of these cases, the type of relief being sought, the Court's previous decisions about arbitration in *Kater*, or how to contact Plaintiffs' counsel. There is an opt-out provision, which purports to require players to opt out of the arbitration agreement within 30 days.

More than 30 days after changing the agreement, on or about October 14, 2019 (a federal holiday), Big Fish began displaying a new pop-up window to its players. (Exhibit A.) The pop-up expressly references this litigation and tells players that clicking the "I Agree" button means that they will not be permitted to participate in these lawsuits. Players cannot continue to play the game unless they click the "I Agree" button, even though they have already purchased chips. Further, as Defendants know, many of its players are addicted to Big Fish Casino, and those addicted players can't keep playing unless they click the "I Agree" button. Those players are also cut off socially from the people with whom they play. Defendants have created enormous psychological and social pressure to click the button so that addicted players can keep playing. (*See* Letter of Natasha Dow Schüll, Ph.D. to Washington State Gambling Commission, attached

---

[1] Plaintiffs are unaware to what degree, if any, the other defendants were involved in this decision.

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

hereto as Exhibit C and available at https://wsgc.wa.gov/sites/default/files/public/news/big-fish/Dr.%20Schull%20Comments.pdf.) Defendants did not tell Plaintiffs, Plaintiffs' counsel, or the Court about the changes to the Terms of Use or the addition of the pop-up window. Nor has the Court has authorized any form of class notice. In fact, both cases have been stayed, with limited exceptions, pending the Ninth Circuit's resolution of the appeal in *Wilson v. Huuuge, Inc.* (*Kater* dkt. 121; *Thimmegowda* dkt. 70.)

III.   ARGUMENT

"To obtain a TRO … the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest." *USAA Fed. Sav. Bank v. Bouchard*, C17-5590RBL, 2017 WL 7053638, at *1 (W.D. Wash. Aug. 7, 2017) (Leighton, J.) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). These factors are met here, and a TRO should issue.

> A.   **Plaintiffs Are Likely to Succeed on the Merits of Their Argument that Defendants' Communication with Putative Class Members Was Misleading and Improper.**

To be entitled to a TRO, Plaintiffs must demonstrate a likelihood of success on the merits. Here, the relevant merits question is whether, pursuant to Federal Rule of Civil Procedure 23(d), the Court should limit Defendants' communications with putative class members and issue appropriate corrective notice (among other potentially appropriate remedies). *See Grewe v. Cobalt Mortg., Inc.*, C16-0577-JCC, 2016 WL 4211530, at *3 (W.D. Wash. Aug. 10, 2016) ["*Grewe I*"] (granting TRO based on finding "a high likelihood of success on the merits with respect to the issue of whether communication … [to putative class members] will interfere with the rights of the parties."); *cf. Glass v. FMM Enters., Inc.*, 755 F. App'x 700, 701 (9th Cir. 2019)

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

(noting that an order under Rule 23(d) is not itself an injunction). Plaintiffs are very likely to succeed on that issue.[2]

"Federal Rule of Civil Procedure 23(d) provides courts with considerable discretion in regulating defendant communications with putative class members to prevent abuse." *Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015). "[C]lass actions serve important goals but also present opportunities for abuse," and therefore "'… a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'" *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). In keeping with that rule, courts routinely find that a defendant's attempt to impose an arbitration agreement on putative class members after a case has been filed constitutes improper and abusive communication. *See, e.g.*, *Jimenez*, 2015 WL 4914727, at *5 ("[T]he ADR Policy is unenforceable here because Menzies seeks to apply the policy to employees that were putative class members, and had pending class claims, before the ADR Policy was issued."); *Balasanyan v. Nordstrom, Inc.*, 10-CV-2671-JM-WMC, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) ("In sum, because Nordstrom's communication constituted an improper attempt to alter the pre-existing arbitration agreement with putative class members during litigation, this court invalidates the … agreement as to putative class members"); *O'Connor v. Uber Techs., Inc.*, C-13-3826 EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) ("Here, the risk of interfering with the pending class action and the need for a limitation on communication with the class that adversely affects their rights is palpable. The communication which is the subject of this motion is likely to mislead potential class members about their right to join the current class action."). When determining whether pre-certification relief under Rule

---

[2] While Plaintiffs' likelihood of success on the merits of the claims in this lawsuit is not at issue here, Plaintiffs nevertheless note that the Court has already found that "there is little uncertainty that Churchill Downs engaged in illegal conduct that Kater can recover for if she truly lost as much money as she claims." (Dkt. 75 at 8.) Thimmegowda's claims are materially identical to Kater's.

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

23(d) is necessary, a matter of "particular concern to courts is whether a party has made misrepresentations to putative class members or has attempted to discourage class members from participating in the class." *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (internal quotation marks omitted). Here, both are true.

The clear intention of both the pop-up window and the amended Terms of Use are to discourage putative class members from participating in these cases. The pop-up window tells putative class members that clicking the button to agree "means you will not be able to participate in the class action lawsuits filed in the Western District of Washington," then lists the case numbers for these two cases. (Exhibit A.) The Terms of Use tell putative class members, in bold face text, that "**The mandatory arbitration provision in these Terms of Use prevents you from participating in these class action lawsuits, even if a class is certified.**" (Exhibit B at 1.) Defendants obviously do not want putative class members to be able to participate in these lawsuits, and the goal in sending the communications is to make sure they don't. *See Cty. of Santa Clara v. Astra USA, Inc.*, C 05-03740 WHA, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010)) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir.1985) ("Examples of communications that may warrant restraint include efforts by a defendant to encourage potential class members not to participate in the class action, thereby reducing potential liability").

The problem is exacerbated by the presence of coercive conduct. "Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1158 (E.D. Cal. 2018. Here, the message has been presented to putative class members while they are trying to play Defendants' casino games, which Defendants know are psychologically addictive. (*See* Exhibit C at 2-3.) Putative class members are locked out of the games (which they have paid thousands of dollars to play), and they are unable to use any of the casino chips that they

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

purchased until they click on the "I agree" button. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (quoting *Kleiner*, 751 F.2d at 1202). Defendants make their suggested course of action clear: the screen does not provide any options other than clicking the "I Agree" button.

In addition to being made for an improper purpose, the statements in the pop-up window and Terms of Use are at best highly misleading. In the *Thimmegowda* case, the Court has not yet determined whether the previous version of the arbitration clause will bind putative class members, nor has it determined that a post-lawsuit arbitration clause would be enforceable (indeed, as explained above, such an agreement likely would *not* be enforceable). In the *Kater* case, Churchill Downs has *waived* its argument that the case should go to arbitration, partially on the grounds that Kater would be prejudiced if she had to relitigate the core issue in front of an arbitrator, who might not be bound by the Ninth Circuit. (*See* dkt. 75 at 10-11.) This wavier likely applies to all putative class members. *See In re Universal Serv. Fund Tel. Billing Practices*, 320 F. Supp. 2d 1135, 1142 (D. Kan. 2004) *aff'd*, 428 F.3d 940 (10th Cir. 2005) ("[D]efendants … did not move to compel arbitration of [named plaintiff's] claims despite knowing that [named plaintiff] was intended to serve as a class representative…. Thus, the court's waiver analysis applies with equal force to the unnamed class members."). These salient facts are absent from any of Defendants' communications. *See Kutzman*, 354 F. Supp. 3d at 1156-57 (finding communications from defendant to class members to be misleading when they omitted "a critical fact" about the status of the case); *cf. Nugussie v. HMS Host N. Am.*, No. C16-0268RSL, 2017 WL 1250420, at *2 (W.D. Wash. Apr. 5, 2017) (finding settlement offer to putative class member to be acceptable when the defendant "notified [the putative class member] of the passage of the SeaTac wage ordinance, this lawsuit (including the claims asserted, the relief sought, and that plaintiff would be part of the class if certified), how to contact plaintiffs'

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

counsel, and the method by which the offered payment was calculated (based on a formula negotiated with the union)").

Beyond statements regarding the legal implications of clicking on the "I Agree" button, the class notice also contains misleading statements about the cases more generally. When a class is certified, the Court sends out class notice in "plain, easily understood language," Fed. R. Civ. P. 23(c)(2)(B), that is "scrupulous to respect judicial neutrality," *Hoffmann-La Roche*, 493 U.S. at 174. But Defendants' revised Terms of Use are written in lawyer-speak, rather than in language designed for laypersons. Instead of explaining, as real class notice would, that the lawsuit seeks to recover all of the money that putative class members lost at Big Fish Casino, Defendants' communications merely make vague reference to Washington statutes and the causes of action. Even worse, the communications reference the Court by name without explaining that the Terms of Use have been prepared and disseminated without the Court's authorization or knowledge. A layperson, particularly one who had previously received class notice postcards or emails, could easily misunderstand the use of the Court's name as an endorsement.

Defendants' communications to class members are improper. They are misleading, unfair, and, at bottom, represent a naked attempt to coerce currently unrepresented putative class members into not participating in these lawsuits without fully understanding what they are giving up. *See* Wash. R. Prof'l Conduct 4.3. Plaintiffs are likely to succeed in their request for corrective action.

**B.  Plaintiffs and Putative Class Members Will Suffer Irreparable Harm in the Absence of a TRO.**

Because corrective action can only accomplish so much, each day Defendants' misleading communications continue to be disseminated causes irreparable harm to Plaintiffs and putative class members. *See Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009) (a showing of "the likelihood of irreparable harm" is required). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203.

As explained above, Defendants' communications with putative class members are misleading and inaccurate. And once misinformation has been communicated to putative class members, that bell cannot be unrung. *Grewe v. Cobalt Mortgage, Inc.*, C16-577-JCC, 2016 WL 4547131, at *3 (W.D. Wash. Sept. 1, 2016) ["*Grewe II*"] (holding that misleading communication to putative class members constituted irreparable harm because "neither the Court nor the parties can 'go back in time and prevent those misrepresentations from occurring'"); *see generally* Man-Pui Sally Chan, et al, *Debunking: A Meta-Analysis of the Psychological Efficacy of Messages Countering Misinformation*, 28 Psychol. Sci. 1531, 1531 (2017), https://cite.law/U5QS-2NF4 (meta-analysis focusing on "false beliefs … [that] occur when the audience initially believes misinformation and that misinformation persists or continues to exert psychological influence after it has been rebutted"). Because no official class notice has been sent, Defendants' pop-up and Terms of Use will be the first that many putative class members hear about these lawsuits. There is a serious risk that putative class members, having been told that they are not eligible to participate in these cases, will be inclined to disregard further communications about them. Convincing class members to take the steps necessary to secure recovery in a class action settlement or judgment is often difficult. *Cf. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017) (noting "consistently low participation rates in consumer class actions"). If putative class members have already formed the belief that they're not entitled to participate, it will make that task even more difficult. Accordingly, even if the Court orders corrective notice, that will not completely undo the fact that putative class members have already received dangerously wrong information. That is irreparable harm. *See, e.g.*, *Grewe II*, 2016 WL 4547131, at *3; *Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914, 924 (11th Cir. 2014) (finding, in FLSA context, that irreparable harm can

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 ♦ Fax: 206.682.2992

occur in a misleading communication that results in "planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'").

In sum, the continued dissemination of Defendants' misleading communications causes irreparable harm to Plaintiffs and to putative class members. The Court should order a return to the status quo before August 28, 2019 when Big Fish changed its Terms of Use and subsequently posted the "opt-out" pop-up window.

### C. The Balance of Equities and Public Interest Favor Plaintiffs.

The final two factors, the balance of equities and the public interest, each favors Plaintiffs.

In weighing equities, "the Court considers each party's claimed injury, as well as the effect that granting or denying Plaintiff's motion would have on the parties." *Quinault Indian Nation v. Kempthorne*, C09-5064 RBL, 2009 WL 734682, at *3 (W.D. Wash. Mar. 18, 2009) (Leighton, J.). Issuance of this TRO would have very little practical effect on Defendants. They would have to take down the new pop-up and restore the Terms of Use that existed before the August 28, 2019 update. If, upon further consideration, the Court finds that Defendants' communications were allowed, then they can simply put the pop-up and the revised Terms of Use back online in a few weeks.[3]

For Plaintiffs and putative class members, on the other hand, these communications have "imposed significant hardship on the fair administration of this case." *Grewe I*, 2016 WL 4211530, at *3. As explained above, it is difficult, and sometimes impossible, to correct laypersons' mistaken initial impressions, or even to get their attention after they have been told that they can't participate in this case. If Defendants are right and this arbitration agreement is

---

[3] In fact, the burden on Defendants is so light here that the Court can safely waive the security requirement of Rule 65(c). *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("[T]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *USAA Fed. Sav. Bank v. Bouchard*, No. C17-5590RBL, 2017 WL 7053638, at *1 (Leighton, J.) (W.D. Wash. Aug. 7, 2017) (waiving security requirement).

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 10

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

enforceable, then it is unfair to require putative class members to decide whether they're going to submit to such an agreement without the advice of counsel.

To be clear, if this were a certified class, then it would be unethical for Defendants' counsel to propose arbitration agreements to class members without the authorization of class counsel. *See Kirkpatrick v. Ironwood Communications, Inc.*, C05-1428JLR, 2006 WL 8454762, at *4 (W.D. Wash. Nov. 1, 2006) ("Because the court has certified this action, class members are now represented parties. … [T]he court emphasizes that it will impose severe sanctions and corrective measures if Plaintiffs produce evidence of … attempts to influence class members as they decide whether to opt out of this action. … The court expects that [defendant's] counsel's professional judgment will lead them to advise [the defendant] that the prudent course is not to communicate with class members about this lawsuit."). But no class has been certified and no class counsel appointed because the Court has stayed the cases while it awaits the Ninth Circuit's decision in *Wilson v. Huuuge*. The stay has prevented Plaintiffs both from filing a class certification motion and from taking the discovery necessary to draft that motion. It is manifestly inequitable to permit Defendants to take advantage of the stay to try and get putative class members not to participate in these actions before class counsel has an opportunity to advise them what they're giving up. To that end, Plaintiffs' counsel will, before the expiration of the TRO, seek an order appointing them interim class counsel for the purpose of negotiating any change to the existing legal relations between putative class members and Defendants.

The public interest, too, supports granting the TRO. "Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980). The public certainly has an interest in the fair administration of justice. Further, Defendants have effectively embarked on an unsanctioned opt-out campaign before the Court has even had a chance to consider class certification, let alone approve a fair and neutral class notice; such conduct "unquestionably

Plaintiffs' Motion for TRO
Nos. 3:15-cv-00612-RBL, 2:19-cv-00199-RBL - 11

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

frustrates the purposes of Rule 23." *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010). The public interest favors allowing courts to control the judicial process and ensure compliance with the Federal Rule of Civil Procedure.

### D. The Stay Should Be Lifted with Respect to this Issue.

Finally, Plaintiffs recognize a litigation stay is in place in both cases. Plaintiffs respectfully submit that Defendants' unauthorized communications represent a fact unknown to the Court when the stays were put in place, and that justice requires a limited reprieve from the stays to resolve this issue quickly. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (reversing a district court's imposition of a litigation stay on the basis that "there is more than a 'fair possibility' that the stay will 'work damage'" to a party). Plaintiffs do not seek to open any matters unrelated to Defendants' extrajudicial attempts to alter their legal relationship with putative class members.

## IV. CONCLUSION

The Court should issue a temporary restraining order requiring Big Fish and Aristocrat (and, to the extent it is involved, Churchill Downs) to 1) immediately stop displaying the pop-up and 2) restore the Terms of Use to the version in place before August 28, 2019.

DATED this 17th day of October, 2019.

By: s/ Janissa A. Strabuk

Plaintiffs' Motion for TRO
Nos. 3:15-cv-00612-RBL, 2:19-cv-00199-RBL - 12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

| | |
|---|---|
| 1 | TOUSLEY BRAIN STEPHENS PLLC |
| 2 | Janissa A. Strabuk, WSBA #21827 |
|   | jstrabuk@tousley.com |
| 3 | Cecily C. Shiel, WSBA #50061 |
|   | cshiel@tousley.com |
| 4 | 1700 Seventh Avenue, Suite 2200 |
|   | Seattle, Washington 98101-4416 |
| 5 | Tel: 206.682.5600 |
| 6 | Alexander G. Tievsky* |
|   | atievsky@edelson.com |
| 7 | EDELSON PC |
| 8 | 350 N LaSalle Street, 14th Floor |
|   | Chicago, Illinois 60654 |
| 9 | Tel: 312.589.6370/ Fax: 312.589.6378 |
| 10 | Rafey S. Balabanian* |
|    | rbalabanian@edelson.com |
| 11 | Eve-Lynn J. Rapp* |
|    | erapp@edelson.com |
| 12 | Todd Logan* |
|    | tlogan@edelson.com |
| 13 | Brandt Silver-Korn* |
| 14 | bsilverkorn@edelson.com |
|    | EDELSON PC |
| 15 | 123 Townsend Street, Suite 100 |
|    | San Francisco, California 94107 |
| 16 | Tel: 415.212.9300/Fax: 415.373.9435 |
| 17 | *Admitted *pro hac vice* |
| 18 | *Attorneys for Cheryl Kater, Suzie Kelly and* |
| 19 | *Manasa Thimmegowda* |

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## CERTIFICATE OF SERVICE

I hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on October 17, 2019.

                                                          *s/* Alexander G. Tievsky

6518/001/543879.1

Plaintiffs' Motion for TRO
Nos. 3:15-CV-00612-RBL, 2:19-CV-00199-RBL - 14

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992