The Honorable Ronald B. Leighton

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated, | Case No.: 2:15-cv-00612-RBL |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY** |
| v. | |
| CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation, | |
| Defendants. | **Hearing Date: November 4, 2019** |

| | |
|---|---|
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-00199-RBL |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED RELIEF FROM LITIGATION STAY** |
| v. | |
| BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, | **Hearing Date: November 4, 2019** |
| Defendants. | |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 2

     A.    Big Fish Casino Terms of Use. ................................................................ 2

     B.    This Litigation. ........................................................................................ 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT .................................................................................................................. 8

I.     Plaintiffs Are Not Likely To Succeed On The Merits Of Their Request To Restrain Big Fish Games' Ability To Communicate With Its Customers. ........................ 8

     A.    Providing information to users about the terms and conditions of their access to and use of Big Fish Casino was entirely proper and not abusive. ........... 9

     B.    The October 14 pop-up and August 28 TOU are not misleading. ........................ 11

     C.    The October 14 pop-up and August 28 TOU are not coercive. ........................... 14

II.    Plaintiffs Fail To Show They Will Suffer Irreparable Harm In The Absence Of An Order Restraining Defendants' Business Operations. ...................................... 16

     A.    Plaintiffs fail to identify any cognizable risk of irreparable harm. ...................... 17

     B.    Plaintiffs' requested relief is untethered from the risk of irreparable harm they allege. ........................................................................................ 20

III.   The Equities Weigh Overwhelmingly In Defendants' Favor. ........................................... 21

IV.   Plaintiffs Fail To Show That An Injunction Is In The Public Interest. ............................. 22

CONCLUSION ............................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adtrader, Inc. v. Google LLC*,
    2018 WL 1876950 (N.D. Cal. Apr. 19, 2018) ............................................................. *passim*

*Balasanyan v. Nordstrom, Inc.*,
    2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ...................................................................10, 15

*Billingsley v. Citi Trends, Inc.*,
    560 F. App'x 914 (11th Cir. 2014) .......................................................................................18

*Burrell v. Crown Cent. Petroleum, Inc.*,
    176 F.R.D. 239 (E.D. Tex. 1997)..........................................................................................19

*Carideo v. Dell, Inc.*,
    520 F. Supp. 2d 1241 (W.D. Wash., 2007).........................................................................13

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ..............................................................................................15

*County of Santa Clara v. Astra USA, Inc.*,
    2010 WL 2724512 (N.D. Cal. July 8, 2010)........................................................................16

*Erhardt v. Prudential Grp.*,
    629 F.2d 843 (2d Cir. 1980).............................................................................................22, 23

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) .................................................................................................7

*Gomez v. City of Chicago*,
    1986 WL 8733 (N.D. Ill. Aug. 1, 1986) ..............................................................................18

*Gottstein v. Nat'l Ass'n for the Self Employed*,
    186 F.R.D. 654 (D. Kans. 1999) ..........................................................................................19

*Grewe v. Cobalt Mtg., Inc.*,
    2016 WL 4211530 (W.D.Wash. Aug. 10, 2016) .............................................................14, 17

*Grewe v. Cobalt Mtg., Inc.*,
    2016 WL 4547131 (W.D.Wash. Sep. 01, 2016)..................................................................17

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)......................................................................................................... *passim*

*Gutierrez v. Wells Fargo*,
    889 F.3d 1230 (11th Cir. 2018) .........................................................................................12, 13

*In re Currency Conversion Fee Antitrust Litig.*,
    361 F. Supp. 2d at 254 ....................................................................................................10, 11

ii

*In re FedEx Ground Package Sys., Inc. Emp. Practices Litig.*,
  2007 WL 3036891 (N.D. Ind. Oct. 12, 2007) ........................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 1753784 (N.D. Cal. May 9, 2011) ..........................................................12

*In re Universal Serv. Fund Tel. Billing Pracs.*,
  320 F. Supp. 2d 1135 (D. Kans. 2004) ...................................................................13

*Jennings v. Seattle Hous. Auth.*,
  2009 WL 10676378 (W.D. Wash. July 28, 2009) .....................................................7

*Jimenez v. Menzies Aviation Inc.*,
  2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015)........................................9, 10, 11, 15

*Kleiner v. First Nat'l Bank of Atlanta*,
  751 F. 2d 1193 (11th Cir. 1985) .........................................................................1, 18

*Kutzman v. Derrel's MiniStorage, Inc.*,
  354 F. Supp. 3d 1149 (E.D. Cal. 2018)..............................................................14, 16

*Laster v. T-Mobile USA, Inc.*,
  2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) .........................................................11

*Li v. A Perfect Day Franchise, Inc.*,
  270 F.R.D. 509 (N.D. Cal. 2010)......................................................................22, 23

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ...............................................................................15

*Mora v. Harley-Davidson Credit Corp.*,
  2012 WL 1189769 (C.D. Cal. Apr. 9, 2012) ...........................................................13

*Nat. Res. Def. Council, Inc. v. Winter*,
  508 F.3d 885 (9th Cir. 2007).................................................................................20

*Nevarez v. Forty Niners Football Co.*,
  2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .........................................................13

*Nugussie v. HMS Host N. Am.*,
  2017 WL 1250420 (W.D. Wash. Apr. 5, 2017)............................................... *passim*

*O'Connor v. Uber Techs., Inc.*,
  2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ...................................................10, 11, 15

*Piekarski v. Amedisys Ill., LLC*,
  4 F. Supp. 3d 952, 954 (N.D. Ill. Nov. 12, 2013) ...................................................11

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .................................................................................23

*St. Barnabas Hosp., Inc. v. Ovation Pharm., Inc.*,
  2010 WL 11574952 (D. Minn. June 24, 2010)........................................................22

iii

*West v. Capitol Fed. Sav. & Loan Ass'n*,
    558 F.2d 977 (10th Cir. 1977) ...............................................................................18

*Wiginton v. Ellis*,
    2003 WL 22232907 (N.D. Ill. Sept. 16, 2003) ..............................................10, 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................................................17, 19, 21, 22

**Statutes and Other Authorities**

Federal Rule of Civil Procedure 23(d) ..................................................................... *passim*

iv

## INTRODUCTION

Since *before* this litigation was filed, Big Fish Games has required users of Big Fish Casino—a free-to-play virtual game and social entertainment platform—to arbitrate any disputes relating to use of that product and waive any entitlement to class relief.   And *throughout* this litigation, Big Fish Games has communicated with users about these and other terms and conditions that govern the use of Big Fish Casino, as Big Fish Games is entitled to do.  Plaintiffs' motion for an emergency order restraining Big Fish Games' communications with users in the ordinary course of business has no basis in law or fact and should therefore be denied.

Plaintiffs' speculative assertions and invocations of inapposite case law do not carry their burden to show that each of the four elements necessary to justify the "extraordinary remedy" of a temporary restraining order are met.  *First*, Plaintiffs are not likely to succeed on the merits of their Federal Rule of Civil Procedure 23(d) request to restrain Big Fish Games' clear and factual statements that the mandatory arbitration and class waiver provision—in place since before this litigation began—precludes participation in class action litigation relating to the use of Big Fish Casino, such as these actions.  Plaintiffs fail to present any evidence—much less the required "clear record and specific findings"—that the challenged language is abusive, misleading, or coercive.  To the contrary, courts across the country have ruled that providing notice of pending litigation, as was done here, *cures* any Rule 23(d) concerns.

*Second*, there is no risk of irreparable harm to Plaintiffs.  It is undisputed that the challenged communications expressly do not apply to the named plaintiffs in this litigation.  Plaintiffs speculate that Big Fish Games' communications might confuse *non-party* putative class members about their eligibility to participate in this litigation, but any risk of harm to non-parties is legally irrelevant.  Even if potential harm to non-parties could support the issuance of a temporary restraining order, Plaintiffs fail to show that there is any non-speculative risk of *imminent and irreparable harm* to those non-parties.  Class certification and recovery are both uncertain, and any (hypothetical) misapprehension of eligibility to participate in a (hypothetical) class could be corrected through (hypothetical) class notice.

*Third*, the balance of equities weighs strongly in Defendants' favor, given that (1) Plaintiffs fail to identify a cognizable risk of harm to themselves, and (2) issuance of the temporary restraining order would directly impair Big Fish Games' ability to conduct its business operations and communicate with users about the terms and conditions that govern their access to and use of the company's product.

*Finally*, Plaintiffs' requested relief is contrary to the public interest, including fundamental rights to speak and contract freely and the strong public policy underlying the Federal Arbitration Act.

Accordingly, Plaintiffs' attempt to throttle Big Fish Games' ability to communicate with its users in the ordinary course of business regarding the terms and conditions that have always governed access to and use of Big Fish Casino should be rejected.

## BACKGROUND

### A.  Big Fish Casino Terms of Use.

Each of Plaintiffs' alleged claims in this litigation derives from their use of Big Fish Casino ("BFC"), a virtual game and social entertainment platform that is owned and operated by Big Fish Games ("BFG").  *See Kater*, Case No. 2:15-cv-00612-RBL, Dkt. 2 ¶ 1.  BFC is free to join and free to play.  *Id.* Dkt. 100-1 ¶ 2.  In order to play BFC, users must agree to the Terms of Use ("TOU").  *See* Declaration of David Grossman in Support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Grossman Decl.") Exs. A-D at 1 ("BY ACCESSING OR USING ANY BIG FISH OFFERING, YOU AGREE TO BE BOUND BY THESE TERMS OF USE AND ALL TERMS INCORPORATED BY REFERENCE.  IF YOU DO NOT AGREE TO THESE TERMS OF USE IN THEIR ENTIRETY, DO NOT USE ANY BIG FISH OFFERINGS."); *id.* Ex. E at 1 ("By clicking 'Accept' or otherwise accessing or using any Big Fish Offering, you agree to be bound by these Terms of Use . . . If you do not agree to these Terms of Use in their entirety, you may not use any Big Fish Offerings.").

Five versions of the TOU have been in effect over the course of this litigation, dated: March 24, 2015 (two weeks *before* this litigation began); November 30, 2017; August 14, 2018;

March 28, 2019; and August 28, 2019.  *Id.* Exs. A-E.  Each version has included a mandatory

arbitration and class waiver provision, titled "Dispute Resolution by Binding Arbitration"

("Arbitration Provision").  *Id.*  The first sentence of each version of the TOU reads:

> PLEASE READ THESE TERMS OF USE CAREFULLY, INCLUDING
> THE MANDATORY ARBITRATION PROVISION IN THE SECTION
> TITLED "DISPUTE RESOLUTION BY BINDING ARBITRATION,"
> WHICH REQUIRES THAT DISPUTES ARE RESOLVED BY FINAL
> AND BINDING ARBITRATION ON AN INDIVIDUAL AND NOT A
> CLASS-WIDE OR CONSOLIDATED BASIS.  IF YOU DO NOT WISH
> TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE
> ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS
> PROVIDED AT THE END OF THE SECTION TITLED "DISPUTE
> RESOLUTION BY BINDING ARBITRATION."

*Id.* Exs. A-D at 1; *see also id.* Ex. E at 1 (further clarifying that the Arbitration Provision has

always required arbitration of "any past, current, or future disputes").

Each version of the TOU has expressly notified prospective users that:

> THIS PROVISION PRECLUDES YOU FROM BRINGING ANY
> CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST
> BIG FISH.  IT ALSO PRECLUDES YOU FROM PARTICIPATING IN
> OR RECOVERING RELIEF UNDER ANY CURRENT OR FUTURE
> CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST
> BIG FISH BY SOMEONE ELSE.  IN ADDITION, ARBITRATION
> PRECLUDES YOU FROM SUING IN COURT OR FROM HAVING A
> JURY TRIAL.
>
> WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT
> DECISION.  IT IS YOUR DECISION TO MAKE AND YOU SHOULD
> NOT RELY SOLELY ON THE INFORMATION PROVIDED IN THIS
> AGREEMENT, AS IT IS NOT INTENDED TO CONTAIN A
> COMPLETE EXPLANATION OF THE CONSEQUENCES OF
> ARBITRATION.  YOU SHOULD TAKE REASONABLE STEPS TO
> CONDUCT FURTHER RESEARCH AND TO CONSULT WITH
> OTHERS REGARDING THE CONSEQUENCES OF YOUR DECISION.
> YOU MAY OPT OUT OF THIS ARBITRATION PROVISION BY
> FOLLOWING THE INSTRUCTIONS BELOW.

*Id.* Ex. A at 8; *id.* Ex. B at 11; *id.* Ex. C at 10; *id.* Ex. D at 7; *id.* Ex. E at 9.

Since before this litigation began, the TOU arbitration provision has required that "any

dispute, claim or controversy arising out of or relating to your access to or use of any Big Fish

Offering or to these Terms of Use (including without limitation any dispute concerning the

breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of these Terms of Use) . . . shall be determined by arbitration[.]" *Id.* Ex. A at 8; *id.* Ex. B at 11; *id.* Ex. C at 10; *id.* Ex. D at 7; *id.* Ex. E at 10.  The TOU have also required, since before this litigation began, that users waive any entitlement to class relief:

> WHETHER THE DISPUTE IS HEARD IN ARBITRATION OR IN COURT, YOU AGREE THAT YOU AND BIG FISH WILL NOT COMMENCE AGAINST THE OTHER A CLASS ACTION, CLASS ARBITRATION OR OTHER REPRESENTATIVE ACTION OR PROCEEDING. YOU AND BIG FISH ARE EACH WAIVING RESPECTIVE RIGHTS TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

*Id.* Ex. A at 9; *id.* Ex. B at 12; *id.* Ex. C at 11; *id.* Ex. D at 8; *id.* Ex. E at 10 (further clarifying that the class waiver has always applied to "any past, pending, or future class proceedings"). The TOU have always permitted users to opt out of the Arbitration Provision by mailing written notice "via U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.)" within thirty days of acceptance of the TOU.  *Id.*

BFG most recently modified the TOU on August 28, 2019.  The vast majority of the modifications in the August 28 TOU were unrelated to the Arbitration Provision.  *See* Declaration of Lindsey Barnhart in Support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Barnhart Decl.") Ex. A (redline showing changes in August 28 TOU).  For example, BFG modified (1) a provision requiring that commercially reasonable efforts be made to notify users of any future changes to the TOU, *id.* at 2; (2) general user interaction and game play guidelines, *id.* at 3; (3) guidelines regarding material posted by users within Big Fish games, *id.* at 4; (4) restrictions regarding the use of Big Fish Software, *id.* at 5; (5) guidelines regarding the use of intellectual property, *id.* at 6; and (6) a provision relating to the processing of payments for any in-game purchases users may choose to make, *id.* at 8.  With respect to the Arbitration Provision, BFG made changes to confirm that the provision has always applied to "any" dispute, "no matter when such Dispute arose or arises," and that the class waiver similarly has always applied to "ANY PAST, PENDING, OR FUTURE CLASS

1    ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING." *Id.*

2    at 9-10.  Plaintiffs do not claim that any of these changes are improper in any way.

3            The only change Plaintiffs challenge in their Motion is the addition of prefatory language

4    in the TOU notifying users that:

5                    These Terms of Use dated August 28, 2019 do not apply to Cheryl
                     Kater, Suzie Kelly, and Manasa Thimmegowda, who are named
6                    plaintiffs in class action lawsuits pending in the Western District of
                     Washington: *Kater v. Churchill Downs Inc.*, Case No. 15-cv-00612-
7                    RBL, and *Thimmegowda v. Big Fish Games, Inc.*, Case No. 2:19-
                     cv-00199-RBL. The lawsuits allege claims relating to Big Fish
8                    Casino under the Washington Recovery of Money Lost at Gambling
                     statute, the Washington Consumer Protection Act, and Washington
9                    common law. The mandatory arbitration provision in these Terms
                     of Use prevents you from participating in these class action lawsuits,
10                   even if a class is certified.

11   Grossman Decl. Ex. E at 1; *see* Plaintiffs' Motion for Temporary Restraining Order and Limited

12   Relief From Litigation Stay ("Motion" or "Mot.") at 3.

13           On October 14, 2019, an in-game message ("pop-up") was sent to approximately 30

14   percent of BFC users, including users who have previously made in-game purchases and users

15   who have never made in-game purchases.  Grossman Decl. ¶¶ 4, 8.  The pop-up notified users

16   who accessed BFC that:

17                   We've updated our **TERMS OF USE**, which include mandatory
                     arbitration and class action waiver provisions that apply to past,
18                   current, and future disputes.  *By clicking the button below or*
                     *continuing to access this game, you agree to the **Terms of Use**.  This*
19                   *means you will not be able to participate in the class action lawsuits*
                     *filed in the Western District of Washington (Case Nos. 15-cv-00612-*
20                   *RBL and 2:19-cv-00199-RBL).*

21   Grossman Decl. Ex. F (italics in original).  The bolded language quoted above appeared in blue

22   font, indicating the presence of a hyperlink that takes the user to the August 28 TOU, the first

23   page of which contained additional information about the pending litigation, the consequences of

24   agreeing to the Arbitration Provision, and instructions for opting out of the Arbitration Provision,

25   as quoted above.  *Id.* ¶ 5; *see supra* at 3-5.

26

27

28

                                            5

BFG routinely communicates with BFC users about the TOU, which describe important rules and conditions that users must follow and accept when accessing and playing the game. For example, before and throughout this litigation BFG has required users who create BFC accounts to click to accept the TOU when doing so.  *Kater*, Dkt. 60-2 ("Vella Decl.") (attached as Barnhart Decl. Ex. B) ¶ 6.  In addition, users are on notice during gameplay that continued use of BFC will constitute acceptance of the TOU, including via hyperlinks to the TOU that appear as a footer on the BFC webpage, in the BFC App Store description, and in the Account Settings page of the BFC mobile app.  *See id.*; *Thimmegowda*, Case No. 2:19-cv-00199-RBL, Dkt. 34 ("Willig Decl.") (attached as Barnhart Decl. Ex. C) ¶¶ 6-7.  As another example, in December 2015 BFG sent an email to all then-existing BFC users regarding the TOU, including the Arbitration Provision.  Vella Decl. ¶ 6.  Finally, a similar pop-up requiring users to click to accept the TOU was disseminated to users in January 2016, *id.*, before Plaintiffs added BFG as a defendant in this litigation.  Approximately 25 percent of the users who viewed the October 14 pop-up had previously clicked to close the January 2016 pop-up and accept the TOU, including the Arbitration Provision.  Grossman Decl. ¶ 9.

### B.    This Litigation.

On April 17, 2015, over two weeks after the mandatory arbitration and class waiver provision was incorporated into the TOU, Plaintiff Cheryl Kater, a resident of Michigan, filed a putative class action against Defendant Churchill Downs Incorporated ("CDI").  *Kater*, Dkt. 2. On February 11, 2019, Plaintiff Manasa Thimmegowda filed a related putative class action against Defendants CDI, BFG, Aristocrat Technologies, and Aristocrat Leisure Limited. *Thimmegowda*, Dkt. 1.  On March 20, 2019, Plaintiff Kater, along with new named plaintiff Suzie Kelly, filed a First Amended Class Action Complaint against CDI and BFG.  *Kater*, Dkt. 85.  Plaintiffs Kelly, Kater, and Thimmegowda each allege the same three causes of action under Washington law based on their respective use of the BFC game.  *See id.*; *Thimmegowda*, Dkt. 1.

Plaintiffs Kelly and Kater seek to bring claims on behalf of a putative class of "[a]ll persons in the United States who began playing Big Fish Casino . . . on or before March 23,

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR TRO
(2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

2015, and lost purchased chips" when playing the game.  *Kater*, Dkt. 85 ¶ 48.  Plaintiff

Thimmegowda seeks to bring claims on behalf of a putative class of "[a]ll persons in the United

States who began playing Big Fish Casino . . . on or after March 24, 2015, and lost purchased

chips" when using the game.  *Thimmegowda*, Dkt. 1 ¶ 53.[1]  Users who never purchased virtual

chips while using BFC are not putative class members, and BFG estimates that over 90 percent

of BFC users have never purchased virtual chips.  Grossman Decl. ¶ 10**.**  No class has been

certified in either action, and class certification briefing deadlines have not been set.

On May 10, 2019, Defendants filed motions to compel arbitration of Plaintiffs' claims,

based on Plaintiffs' actual and constructive notice, and acceptance, of the TOU.  *Kater*, Dkt. 100;

*Thimmegowda*, Dkt. 33.  All of Plaintiffs' claims are subject to the motions to compel

arbitration, except for Plaintiff Kater's claims against CDI.  *See id.*  On August 21 and

September 12, 2019, the Court stayed the litigation except for Plaintiff Kater's "outstanding, pre-

amendment discovery to" CDI.  *Kater*, Dkts. 119, 121; *Thimmegowda*, Dkt. 70.

On October 17, 2019, Plaintiffs filed the present Motion.  *Kater*, Dkt. 122;

*Thimmegowda*, Dkt. 73.  In the Motion, Plaintiffs ask the Court to order BFG to "immediately

stop displaying the [October 14] pop-up" and "restore the Terms of Use to the version in place

before August 28, 2019."  *Id.* at 12.

## LEGAL STANDARD

A temporary restraining order is an "extraordinary remedy never awarded as of right."

*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  The Court may issue a temporary

restraining order only if Plaintiffs carry their burden to prove all four elements of a "demanding

standard": "(1) that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer

irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in

[their] favor, and (4) that an injunction is in the public interest."  *Jennings v. Seattle Hous. Auth.*,

2009 WL 10676378, at *1 (W.D. Wash. July 28, 2009) (citing *Winter v. Nat. Res. Def. Council,*

---

[1] Plaintiffs' Motion misstates the putative class definitions.  The alleged putative classes are
keyed to the date that users who purchased virtual chips within BFC *began playing the game*, not
the date that users purportedly "lost purchased chips."  Mot. at 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Inc.*, 555 U.S. 7, 20 (2008)).  Plaintiffs must satisfy each of these four elements.  Their failure to prove a single one requires that the Motion be denied.

## ARGUMENT

### I.      Plaintiffs Are Not Likely To Succeed On The Merits Of Their Request To Restrain Big Fish Games' Ability To Communicate With Its Customers.

According to Plaintiffs, the "relevant merits question" for purposes of their Motion is whether the Court "should limit Defendants' communications with putative class members" pursuant to Federal Rule of Civil Procedure 23(d).  Mot. at 4.  As a general matter, class action defendants are "allowed to communicate with putative class members prior to certification of the class."  *Nugussie v. HMS Host N. Am.*, 2017 WL 1250420, at *1 (W.D. Wash. Apr. 5, 2017) (citing Newberg on Class Actions § 9:7 (5th ed.)).  While district courts have authority "to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties," any order restraining communications with putative class members must be based on "a clear record and specific findings that reflect . . . the need for a limitation and the potential interference with the rights of the parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).  To prevail, Plaintiffs must demonstrate that Defendants have engaged in coercive, misleading, or other abusive communications with the putative class.  *See id.* at 102.

There is no dispute that BFG is entitled to set the terms and conditions for access to and use of its product during the course of this litigation.  BFG routinely communicates with BFC users about those terms and conditions.  For example, before and throughout this litigation BFG has required users who create BFC accounts to click to accept the TOU when doing so.  Vella Decl. ¶ 6.  In addition, users are on notice during gameplay that continued use of BFC will constitute acceptance of the TOU, including via hyperlinks to the TOU that appear as a footer on the BFC webpage, in the BFC App Store description, and in the Account Settings page of the BFC mobile app.  *Id.*; Willig Decl. ¶¶ 6-7.  As another example, in December 2015 BFG sent an email to all then-existing BFC users regarding the Arbitration Provision.  Vella Decl. ¶ 6.  Finally, BFG disseminated a similar pop-up requiring users to click to accept the TOU in January

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR TRO
(2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

2016, before Plaintiffs added BFG as a defendant in this litigation.  *Id.*  Approximately 25 percent of the users who viewed the October 14 pop-up had previously clicked to close the January 2016 pop-up and accept the TOU, including the Arbitration Provision.  Grossman Decl. ¶ 9.  This is in addition to the users who clicked to accept the TOU when creating a BFC account.

The October 14 pop-up and August 28 TOU are merely the most recent communications to all BFC users about the TOU, and Plaintiffs take issue only with those communications' reference to this litigation.  Plaintiffs argue that the communications were: (1) abusive in that their intention was "to discourage putative class members from participating in" the litigation; (2) "coercive"; and (3) "highly misleading."  Mot. at 6-8.  But Plaintiffs fail to present any evidence—let alone a "clear record and specific findings"—indicating that the challenged communications were abusive, misleading, or coercive.  *Gulf Oil*, 452 U.S. at 101.  Accordingly, Plaintiffs cannot carry their burden to show a likelihood of success on the merits of their request.

### A.   Providing information to users about the terms and conditions of their access to and use of Big Fish Casino was entirely proper and not abusive.

The information in the TOU regarding the pending litigation relating to Big Fish Casino is exactly the sort of information courts across the country have found to be permissible in other putative class actions.  As other courts have explained, "the policies behind Rule 23 [a]re not threatened" when, as here, the challenged communications disclosed the existence of the pending litigation and the impact of the mandatory arbitration provision on putative class members' ability to participate in existing litigation.  *Nugussie*, 2017 WL 1250420, at *3.  Indeed, many of the cases cited by Plaintiffs *encourage* the disclosure of the existence of pending litigation.  *See* Mot. at 5, 7.  In *Jimenez v. Menzies Aviation Inc.*, for example, the court faulted the defendant for "not informing . . . putative class members of the pending litigation [and] not explaining the consequences of agreeing to the [arbitration] policy."  2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015).  Similarly, *In re Currency Conversion Fee Antitrust Litigation* found a Rule 23(d) problem based on the defendants' failure to inform communication recipients "of the pendency of this litigation" or "that by failing to reject the arbitration clause, they were forfeiting their

9

rights as potential plaintiffs in this litigation."  361 F. Supp. 2d 237, 249, 251 (S.D.N.Y. 2005).

And in *Balasanyan v. Nordstrom, Inc.*, the court found the defendant's communications

impermissible under Rule 23(d) because they "did not alert putative class members of the

litigation."  2012 WL 760566, at *3 (S.D. Cal. Mar. 8, 2012); *see also O'Connor v. Uber Techs.,

Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (to be permissible, communication must

"give[] clear notice of the arbitration provision [and] the effect of assenting to arbitration on

[recipients'] participation in this lawsuit").  BFG's communications with BFC users avoided the

concerns noted by these courts.  *See Nugussie*, 2017 WL 1250420, at *1 (distinguishing *Jimenez*

and *Balasanyan* on similar grounds).

Aside from being contrary to this case law, Plaintiffs' contention that BFG's

communications were abusive is counterfactual.  First, Plaintiffs suggest with no support

whatsoever that the challenged language was added "to discourage putative class members from

participating in these cases."  Mot. at 6; *see Wiginton v. Ellis*, 2003 WL 22232907, at *3 (N.D.

Ill. Sept. 16, 2003) (denying motion to restrict communications under Rule 23(d) in part because

movant failed to present evidence that the defendant "intended to prohibit the class members

from participating in the lawsuit").  Yet the language notifying users of the existence of the

litigation could only be expected to have the opposite effect.

Second, Plaintiffs' Motion fails to acknowledge the critical fact that the Arbitration

Provision *was not added to the TOU during the pendency of this litigation*.  Since before this

litigation began, the Arbitration Provision has precluded users from participating in class actions

such as these cases as a condition of using and accessing BFC.  None of the cases cited by

Plaintiffs addresses the propriety of communications with putative class members regarding

arbitration agreements that were put into place *before* any pending litigation existed.  *See

Balasanyan*, 2012 WL 760566, at *4 (addressing arbitration agreement imposed on putative class

members for the first time *after* commencement of litigation); *Jimenez*, 2015 WL 4914727, at *6

(same); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 254 (same);

*O'Connor*, 2013 WL 6407583, at *1 (same); *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952,

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR TRO
(2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

954 (N.D. Ill. Nov. 12, 2013) (same); Mot. at 5-7.  Here, the TOU have included the Arbitration

Provision since before any of the claims at issue were filed.  *See Laster v. T-Mobile USA, Inc.*,

2008 WL 5216255, at \*7 (S.D. Cal. Aug. 11, 2008) (abrogated on other grounds) (distinguishing

*In re Currency Conversion* by noting that, in *Laster*, the revised agreement "merely modified"

the already-existing arbitration clause).

BFG's communication of additional information regarding the effect of the Arbitration

Provision in no way discouraged participation in these class actions; indeed, the provision

precluded participation in any class action before this litigation was even filed.  And even if the

October 14 pop-up and August 28 TOU were characterized as "new" arbitration agreements,

communications regarding such agreements are permissible under the circumstances presented

here.  In *Jimenez*, a case cited by Plaintiffs, the court held that a company may adopt an

arbitration agreement while a class action is pending so long as the communication "inform[s]

putative class members of the [agreement's] impact on their class rights and provide[s] clear opt-

out opportunities," because doing so likely "ameliorate[s]" any "potential for abuse and coercive

behavior."  2015 WL 4914727, at \*6; *see infra* at Section I.C.  Courts have emphasized that

"[t]he mere fact that the communications occurred while this action was pending is not enough"

to show that the communications "somehow threaten the fairness of the class action procedures."

*Nugussie*, 2017 WL 1250420, at \*2.

**B.     The October 14 pop-up and August 28 TOU are not misleading.**

Plaintiffs' assertion that the October 14 pop-up and August 28 TOU are "highly

misleading" is unsupported by fact or law.  Mot. at 7.  The challenged communications are

factually correct: since before this litigation began, the TOU have included the Arbitration

Provision prohibiting users from participating in any "current or future" class proceeding,

whether in arbitration or in court.  Grossman Decl. Ex. A at 8; *id.* Ex. B at 11; *id.* Ex. C at 10; *id.*

Ex. D at 7; *id.* Ex. E at 9.  That provision—separate and apart from the pop-up advising users

about the pending actions—plainly bars users' participation in these cases, which are class

actions in court.  Plaintiffs take no issue with that fact.

Plaintiffs nevertheless contend that the communications are misleading because the Court has not yet ruled on the pending motions to compel the named plaintiffs to arbitrate their claims. Mot. at 7.  But whether or not the TOU are enforceable as to Plaintiffs does not alter the fact that the plain language of the TOU prohibits, and has always prohibited, users from participating in a class action in federal court relating to BFC.  Adopting Plaintiffs' position would lead to the absurd result that *any* terms of use that contain a mandatory arbitration provision are "highly misleading" unless and until a court determines the enforceability of that provision.

Plaintiffs are also wrong that the communications are misleading because CDI has "waived its argument that the [*Kater*] case should go to arbitration," and that this "waiver likely applies to all putative class members."  Mot. at 7.  This Court held that CDI waived its arbitration rights as to Plaintiff Kater only.  *Kater*, Dkt. 75.  Currently pending before the Court is BFG's motion to compel arbitration as to all three Plaintiffs; CDI's motion to compel arbitration as to Plaintiffs Kelly and Thimmegowda; and Aristocrat's motion to compel arbitration as to Plaintiff Thimmegowda.  *Id.* Dkt. 100; *Thimmegowda*, Dkt. 33.  The Court's finding of waiver by CDI of its arbitration rights as to Plaintiff Kater has no impact on the pending motions.  Further, it is well settled that waiver of arbitration rights as to a named plaintiff cannot be imputed to arbitration rights as to putative class members.  *See Gutierrez v. Wells Fargo*, 889 F.3d 1230, 1236 n.9 (11th Cir. 2018) ("[W]hether Wells Fargo had waived its rights to enforce the arbitration provisions in its contracts with the *named plaintiffs* . . . is not the same as the relevant issue here: whether Wells Fargo has waived its rights to enforce the arbitration provisions . . . with each of the *unnamed putative class members*."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("Critically, defendants seek to enforce arbitration agreements only against unnamed class members and do not seek to enforce any arbitration agreement against the named plaintiffs.  It does not appear to the Court that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case."); *Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769, at *15 (C.D. Cal. Apr. 9, 2012) ("Harley has not waived its right to seek

arbitration . . . [U]ntil a class is certified and the opt-out period has expired, unnamed Class members are not parties to this action, and their claims are not at issue.").  In addition, CDI has provided clear notice of its intent to enforce its arbitration rights against absent class members should a class be certified in this litigation.  *See, e.g.*, *Kater*, Dkt. 76 at 13 (Fifth Affirmative Defense); *see Gutierrez*, 889 F.3d at 1237 (noting parties' arbitration agreements as an affirmative defense in defendant's answer to complaint "had the effect of putting both the Court and Plaintiffs on notice of [the defendant's] arbitration rights against the unnamed Plaintiffs and its intent to invoke them").  The sole case Plaintiffs cite on this point—from the District of Kansas—was decided prior to the more recent and authoritative cases cited here and thus carries little, if any, persuasive weight.  *See In re Universal Serv. Fund Tel. Billing Pracs.*, 320 F. Supp. 2d 1135 (D. Kans. 2004).

Finally, the Court should disregard Plaintiffs' vague and unsupported contention that the October 14 pop-up and August 28 TOU "contain[] misleading statements about the cases more generally."  Mot. at 8.  Plaintiffs do not identify any purportedly misleading language or "lawyer-speak" that a reasonable modern consumer of mobile phone applications would not understand.  *Id.*  In fact, provisions similar to the Arbitration Provision in the TOU have been upheld repeatedly by courts.  *See, e.g.*, *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1249 (W.D. Wash. 2007) (finding arbitration provision not procedurally unconscionable because, as here, "[t]he arbitration clause was not hidden in a maze of fine print, but was presented in all capital letters."); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, at *12 (N.D. Cal. Aug. 15, 2017) (finding arbitration agreement not substantively unconscionable when, as here, fee required to be paid by the consumer was capped at $250 because that amount is comparable to what would be required to file a lawsuit).

Moreover, in contrast to the communications at issue in the cases Plaintiffs rely on to support their contention that the October 14 pop-up and August 28 TOU are "misleading," BFG's communications are clear, factual, and neutral.  The in-game pop-up message states that:

> We've updated our **TERMS OF USE**, which include mandatory arbitration
> and class action waiver provisions that apply to past, current, and future

13

disputes.  *By clicking the button below or continuing to access this game, you agree to the **Terms of Use**.  This means you will not be able to participate in the class action lawsuits filed in the Western District of Washington (Case Nos. 15-cv-00612-RBL and 2:19-cv-00199-RBL).*

Grossman Decl. Ex. F (italics in original).  The prefatory language in the August 28 TOU states:

> These Terms of Use dated August 28, 2019 do not apply to Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda, who are named plaintiffs in class action lawsuits pending in the Western District of Washington: *Kater v. Churchill Downs Inc.*, Case No. 15-cv-00612-RBL, and *Thimmegowda v. Big Fish Games, Inc.*, Case No. 2:19-cv-00199-RBL. The lawsuits allege claims relating to Big Fish Casino under the Washington Recovery of Money Lost at Gambling statute, the Washington Consumer Protection Act, and Washington common law. The mandatory arbitration provision in these Terms of Use prevents you from participating in these class action lawsuits, even if a class is certified.

*Id.* Ex. E at 1.

In contrast, in *Grewe v. Cobalt Mtg., Inc.*, the court restrained communications with potential FLSA collective action members that: (1) misrepresented the attorney-client relationship with recipients of the communication; (2) "mischaracterize[d] the Court's orders and omit[ted] any mention of the Court's ultimate determination that the settlement is fair and reasonable"; and (3) "urge[d]" the "recipients not to opt into this collective action."  2016 WL 4211530, at *1 (W.D. Wash. Aug. 10, 2016).  And in *Kutzman v. Derrel's MiniStorage, Inc.*, the communications "contained a number of slights, disparaging remarks, and off-handed comments" targeted at class counsel, and omitted "a critical fact one might want to consider before deciding to settle"—namely, the fact that a mediation between the parties had been scheduled.  354 F. Supp. 3d 1149, 1156-57 (E.D. Cal. 2018).  Plaintiffs' cases are also inapposite because they address concerns that are unique to the context of settlement discussions; here, BFG's communications do not ask putative class members to extinguish any legal claims.  *See infra* at Section I.C.

### C.     The October 14 pop-up and August 28 TOU are not coercive.

Finally, Plaintiffs fail to show that the factual references to the pending litigation in the October 14 pop-up and August 28 TOU are coercive.  "Courts will ordinarily not impose restrictions due to the mere existence of a relationship that could be coercive."  3 Newberg on

14

Class Actions § 9:7 (5th ed.).  That is because the "potential for coercion . . . inheres . . . in a wide range of business relationships, so it cannot, standing alone, warrant the types of restriction on speech to which *Gulf Oil* raised the tent flaps."  *In re FedEx Ground Package Sys., Inc. Emp. Practices Litig.*, 2007 WL 3036891, at *6 (N.D. Ind. Oct. 12, 2007).

Plaintiffs attempt to show coercion by pointing to an unsworn letter from an academic discussing the purported similarities between BFC and "traditional gambling machines."  *See* Mot. at 6-7.  Nowhere in that letter or the Motion is there any *evidence* that a putative class member was actually coerced by the challenged language in the October 14 pop-up and August 28 TOU for any reason, let alone due to any purported "addicti[on]."  *Id.*  Instead, Plaintiffs rely on a series of speculative assertions, none of which are supported by citation to any record evidence.  *See id.*  Such self-serving statements fall far short of the evidence Plaintiffs must present to carry their heavy burden.  *See Wiginton*, 2003 WL 22232907, at *3 (plaintiffs' assertions found to be "too speculative" to justify restrictions on communications); *Nugussie*, 2017 WL 1250420, at *2-3 (finding "the policies behind Rule 23 were not threatened by" the challenged communications when the recipient "does not report being confused, coerced, or misled" by the communication).

In fact, the October 14 pop-up and August 28 TOU include safeguards to ensure that users have the opportunity to opt out of the Arbitration Provision, precluding any coercion argument.  Users may continue to play BFC if they accept the TOU, and may then opt out of the Arbitration Provision should they so desire.  The pop-up includes two conspicuous hyperlinks to the August 28 TOU, the first paragraph of which notifies users that they may opt out of the Arbitration Provision by following the clear instructions in the TOU, consistent with case law enforcing similar arbitration provisions.  *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 10-11 (9th Cir. 2016); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002).

Tellingly, several of the cases Plaintiffs cite in which courts have restrained communications with putative class members did so *specifically because* the defendant failed to include any opportunity to opt out of the arbitration agreement.  *See Jimenez*, 2015 WL 4914727,

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR TRO
(2:15-cv-00612-RBL; 2:19-cv-00199-RBL)

at *6 (finding mid-litigation communication to employees regarding newly-imposed arbitration requirement impermissible because the communication "provided no opportunity to opt-out . . . making assent to the ADR Policy a condition of employment"); *Balasanyan*, 2012 WL 760566, at *3 (finding employee arbitration agreement "introduced during the pendency of litigation" was impermissible communication because "no opt-out was available"); *O'Connor*, 2013 WL 6407583, at *6 (finding opt-out provision requiring "hand delivery or overnight mail" delivery of written notice unduly onerous, but noting that "less burdensome" means, including "first class mail," which is more than BFG requires in the TOU, would be acceptable).

Moreover, if users choose not to opt out of the Arbitration Provision, they do not waive any claims.  The October 14 pop-up and August 28 TOU do not extinguish any claims: users who have accepted the TOU still have the right to pursue a claim for appropriate relief, either via arbitration or through litigation if they timely opted out of the Arbitration Provision.  For this reason, the cases cited by Plaintiffs addressing settlement offers that would extinguish *any* claim for relief by putative class members are not applicable.  *See, e.g.*, *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (finding impermissible "accord and satisfaction" refund payments that extinguished all potential claims without providing "enough information so that the recipients would not be misled about the strength or extent of the claims" they were giving up); *Kutzman*, 354 F. Supp. 3d at 1151-52 (finding impermissible settlement offers communicated by defendant to employee putative class members).  The unique concerns surrounding potentially coercive and misleading communications of settlement offers are simply not at issue in this case.

In sum, BFG's communications with its customers in the ordinary course of business regarding the guidelines and already-existing conditions of use of its product are not barred by Rule 23(d), and so Plaintiffs are not likely to succeed on the merits of their request.

## II.    Plaintiffs Fail To Show They Will Suffer Irreparable Harm In The Absence Of An Order Restraining Defendants' Business Operations.

To obtain a temporary restraining order, a "plaintiff *must show* that *she* is likely to suffer irreparable harm in the absence of preliminary relief."  *Adtrader, Inc. v. Google LLC*, 2018 WL

16

1876950, at *3 (N.D. Cal. Apr. 19, 2018) (citation omitted) (first emphasis in original).  "The plaintiff must also *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief. . . . Speculative injury is not sufficient[.]"  *Id.* (citation omitted) (emphasis in original); *see also Gulf Oil*, 452 U.S. at 101 (order restricting communications with putative class members must be "based on a clear record and specific findings").

**A.      Plaintiffs fail to identify any cognizable risk of irreparable harm.**

Plaintiffs fail to specify any risk of irreparable harm to or interference with the rights of the named plaintiffs themselves—let alone with the requisite evidentiary specificity required for the issuance of preliminary relief.  *See Adtrader*, 2018 WL 1876950, at *3; Mot. at 8-10 (alluding only to purported harms to *non-party* putative class members).  Nor could Plaintiffs assert that the August 28 TOU and October 14 pop-up interfere with their rights or otherwise threaten irreparable harm: the August 28 TOU expressly do not apply to them.  *See* Grossman Decl. Ex. E at 1 ("These Terms of Use dated August 28, 2019 *do not apply to Cheryl Kater, Suzie Kelly, and Manasa Thimmegowda . . . .*") (emphasis added).  *Adtrader* is instructive. There, the named plaintiffs sought a temporary restraining order preventing Google from requiring potential class members to accept revised terms of service (including a retroactive arbitration and class waiver provision).  2018 WL 1876950, at *3 (N.D. Cal. Apr. 19, 2018). The court denied the request because "the named Plaintiffs [did] not face any immediate threatened injury," as Google would not enforce the revised terms against the named plaintiffs. *Id.* at *5 (citation omitted).  The same result should apply here.[2]

Unable to identify any risk of irreparable harm to themselves, Plaintiffs instead identify only a purported risk to non-party putative class members, namely that "[i]f putative class members have already formed the belief that they're not entitled to participate [in the litigation], it will make [the] task [of convincing them to take the steps necessary to secure recovery] even

---

[2] *Grewe II*, cited by Plaintiffs, is not to the contrary.  Mot. at 9.  In that case, the court granted the defendant's motion to prohibit an intervener from communicating with members of an FLSA class (for which the court had already approved settlement) due to a risk of irreparable harm *to the defendant*, not non-party putative class members.  *Grewe v. Cobalt Mtg., Inc.*, 2016 WL 4547131, at *3 (W.D.Wash. Sep. 01, 2016).

17

more difficult." Mot. at 9. Plaintiffs offer no record evidence demonstrating why communications with members of any later-certified class would be insufficient to apprise them of their rights. In any event, harm to putative class members (speculative or not) is not a cognizable basis for relief under *Gulf Oil* and *Winter*. *See* 452 U.S. at 101-02; 555 U.S. at 20. Indeed, *Adtrader* expressly recognized that "the named Plaintiffs [could] not seek a TRO or a preliminary injunction on behalf of putative class members before class certification." 2018 WL 1876950, at *6.[3]

 Plaintiffs also contend there is a risk of irreparable harm to "the plaintiff class." Mot. at 8-9 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F. 2d 1193, 1203 (11th Cir. 1985)). But absent class certification *there is no plaintiff class*, and the only plaintiffs are the named plaintiffs themselves. *See West v. Capitol Fed. Sav. & Loan Ass'n*, 558 F.2d 977, 980 (10th Cir. 1977) (in the absence of class certification, "the putative members were not parties to the suit"); *Gomez v. City of Chicago*, 1986 WL 8733, at *1 (N.D. Ill. Aug. 1, 1986) ("[U]ntil certification potential class members are not parties."). In *Kleiner*, the district court found that communications with members of the *certified class* were improper when the defendant secretly contacted class members on the eve of court-approved notice issuing, despite a prior order withholding permission to communicate with class members. 751 F.2d at 1196-99. Such egregious conduct toward parties is not at issue here. Likewise, the district court in *Billingsley* granted relief only to plaintiffs who had opted into (and were thereby parties to) an FLSA collective action. *See Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 919 (11th Cir. 2014). Deciding a motion to compel arbitration, not a motion to restrict communications with class members, it declined to enforce an arbitration agreement against those *opt-in plaintiffs*. *Id.* at 919 (emphasis added).

 Even if a risk of irreparable harm to non-parties could support injunctive relief, which it cannot, a temporary restraining order could issue only upon a demonstration of non-speculative

---

[3] *Adtrader* recognized certain exceptions to this rule which do not apply here: "class-wide relief may be necessary to ensure that the *named plaintiffs* receive complete relief or if there is a constitutional violation that has become sufficiently pervasive." 2018 WL 1876950, at *6 (emphasis added).

"immediate threatened injury." *Adtrader*, 2018 WL 1876950, at *3.  Plaintiffs' Motion presents no facts that would enable this Court to make such a finding.  Instead, Plaintiffs speculate that "putative class members, having been told that they are not eligible to participate in these cases, will be inclined to disregard further communications about them."  Mot. at 9.  This unsupported assertion does not permit the Court to forbid BFG from communicating with its users.  *See Gulf Oil*, 452 U.S. at 101; *Adtrader*, 2018 WL 1876950, at *3; *Gottstein v. Nat'l Ass'n for the Self Employed*, 186 F.R.D. 654, 655 (D. Kans. 1999) (denying in relevant part defendants' motion for protective order to preclude plaintiff's counsel from communicating with potential class members, because defendants' motion was based only on "speculation" and "conjecture" that such communications would harm their reputation and profits); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997) ("[T]here must be some evidence that justifies an interference with Defendant's speech.").

Moreover, Plaintiffs make no showing that any harm would be *irreparable.  See Winter*, 555 U.S. at 20.  *If*, as Plaintiffs fear, some putative class members believe they may not participate in the class action, *if* the Court later concludes the arbitration agreement in the TOU is not enforceable, *if* a class is certified, and *if* class members are ultimately found to be entitled to relief, then any class notice could instruct class members to disregard prior communications from BFG and contact class counsel if they believe, for any reason, they may be excluded from the class.  If, on the other hand, the Court later rules that the arbitration agreements are enforceable—or if no class is certified, or no class recovery secured—any potential class members believing themselves excluded from class participation based on the October 14 pop-up or August 28 TOU will experience no harm at all.

Finally, if Plaintiffs' argument is that self-exclusion from BFC by those who choose not to click to accept the TOU constitutes harm, this curious position is also foreclosed by *Adtrader*. Indeed, any choice by a putative class member to forego using BFC rather than click to accept the August 28 TOU is not cognizable as it would amount to "self-inflicted" harm.  *Adtrader*, 2018 WL 1876950, at *4 (collecting cases) ("Harm does not constitute irreparable injury if it is

19

self-inflicted. . . . Plaintiffs' purported injury that would result from the deactivation of their accounts is based on their voluntary choice to decline the new terms[.]"). This is especially true because BFC users are free to opt out of the Arbitration Provision, *see supra* at Section I.C., just as they were in *Adtrader*, 2018 WL 1876950, at *5 (potential class member's "decision to decline the [revised terms of service] to avoid being subject to the new arbitration provision is a voluntary choice given that he or she can easily opt out from that provision").

**B.      Plaintiffs' requested relief is untethered from the risk of irreparable harm they allege.**

Separately, the scope of Plaintiffs' requested relief—an "order requiring Big Fish . . . to 1) immediately stop displaying the pop-up and 2) restore the Terms of Use to the version in place before August 28, 2019"—reaches beyond the purported source of alleged harm Plaintiffs identify, namely, the *specific language* in the October 14 pop-up and August 28 TOU informing BFC users that the Arbitration Provision precludes participation in this litigation. *See* Mot. at 9.

This disconnect underscores that there can be no irreparable harm flowing from the August 28 TOU, which do not change the fact that the Arbitration Provision is—and has long been—a condition of using BFC. The TOU in place *before* August 28 and *before* the litigation was filed likewise required users to accept those terms to use the game. *See* Grossman Decl. Exs. A-D. By the same token, BFC previously presented users with a pop-up requiring users to click to accept the TOU in order to access the game, in January 2016. Vella Decl. ¶ 6. Plaintiffs lodged no objection to that pop-up, and object to the October 14 pop-up only insofar is it expressly states that agreement to the TOU precludes participation in these cases. *See* Mot. at 9.

Because "[i]njunctive relief must be tailored to remedy the specific harm alleged," *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007), Plaintiffs' failure to allege a risk of harm flowing from anything other the specific challenged language in the October 14 pop-up and August 28 TOU precludes any relief requiring reversion to the prior TOU and/or wholesale removal of the pop-up. *See also Gulf Oil*, 452 U.S. at 102 (an order limiting communications with potential class members must be "carefully drawn [to] *limit[] speech as little as possible*, consistent with the rights of the parties under the circumstances") (emphasis

20

1

added).  To put a finer point on it, reversion to the prior TOU and/or wholesale removal of the

2

pop-up would not change the fact that BFC users are precluded from participating in this

3

litigation, unless they timely opt out of the Arbitration Provision.

4

**III.   The Equities Weigh Overwhelmingly In Defendants' Favor.**

5

The "balance of equities" prong requires the Court to "balance the competing claims of

6

injury and . . . consider the effect *on each party* of the granting or withholding of the requested

7

relief."  *Winter*, 555 U.S. at 24 (citation omitted).  At the outset, Plaintiffs identify no equities

8

weighing in their favor because they do not sufficiently allege any harms threatening themselves.

9

*See supra* at Section II.A.  Likewise, granting the requested relief would have no effect on the

10

named plaintiffs, to whom the revised TOU do not apply because they are expressly excluded by

11

name.  Even considering, in contravention of *Winter*, 555 U.S. at 24, non-party putative class

12

members, they too would be unaffected by reversion to the prior TOU, which also include a

13

mandatory arbitration and class waiver provision.  *See* Grossman Decl. Exs. A-D.  Further,

14

putative class members would be unaffected by removal of the October 14 pop-up, because the

15

August 28 TOU (just like the prior version) include mechanisms to opt out of the waiver

16

provision, *see id.*, and any theoretical misconceptions about class action participation eligibility

17

could be corrected, if necessary, on final notice.  *See supra* at Sections I.C., II.A.

18

On the other side of the scale, Plaintiffs' conclusory assertion that "[i]ssuance of this

19

TRO would have very little practical effect on Defendants," Mot. at 10, is unsupported and

20

wrong.  Granting the requested relief would directly impair BFG's ability to conduct its business

21

operations and communicate with BFC users about the terms and conditions that govern their

22

access to and use of the game.  In addition, the vast majority of modifications to the August 28

23

TOU are unrelated to anyone's ability to participate in litigation.  *See* Barnhart Decl. Ex. A.

24

Plaintiffs give no reason why BFG should be handcuffed from requiring users of its product to

25

click to agree to comply with rules about in-game commenting and intellectual property use and

26

indefinitely locked into outdated TOU.  *See id.* at 4, 6.  It is not a simple matter, as Plaintiffs

27

suggest, of Big Fish Games "tak[ing] down the new pop-up and restor[ing] the Terms of Use."

28

21

1    Mot. at 10.  To the contrary, such a reversion would likely result in genuine and significant

2    customer frustration and confusion, which will cause substantial harm to BFG (and its

3    customers).

4         Plaintiffs separately assert that "it is unfair" for BFG to communicate with putative class

5    members about the August 28 TOU without permitting them to seek "the advice of counsel."

6    Mot. at 11.  But the TOU explicitly encourage users to seek external consultation before agreeing

7    to arbitration.  *See, e.g.*, Grossman Decl. Ex. E at 9.  Further, Plaintiffs' implicit argument—that

8    any consumer-facing business must require customers to seek "the advice of counsel" before

9    accepting terms of service—finds no support in the case law.  *See, e.g.*, *Adtrader*, 2018 WL

10   1876950, at *3-6 (declining to restrain Google from requiring putative class members to agree to

11   terms of service including mandatory arbitration agreement ).

12        As Plaintiffs' brief concedes, this is not a certified class, and the TOU do not offer an

13   arbitration agreement to any represented party.  *See* Mot. at 11; *see also* Grossman Decl. Ex. E at

14   1 (August 28 TOU exempts named plaintiffs).  Plaintiffs' request to appoint interim class

15   counsel, *see* Mot. at 2, 11, will not change this: putative class members are not represented

16   unless and until a class is certified.  *See St. Barnabas Hosp., Inc. v. Ovation Pharm., Inc.,* 2010

17   WL 11574952, at *3 (D. Minn. June 24, 2010) (order designating counsel "'to act as Interim

18   Class Counsel on behalf of all Plaintiffs and the proposed class' . . . did not create an attorney-

19   client relationship").

20        Plaintiffs do not allege any cognizable injury, do not identify the detrimental impact of

21   the denial of their requested relief, and do not explain how they will benefit from the granting of

22   such relief.  Thus, the balance of equities does not tilt in their favor.  *See Winter*, 555 U.S. at 24.

23   **IV.    Plaintiffs Fail To Show That An Injunction Is In The Public Interest.**

24        Granting Plaintiffs' requested relief would not further the public interest.  The only two

25   cases Plaintiffs cite on this prong are wholly distinguishable from this case.  In *Erhardt v.*

26   *Prudential Grp.*, the defendant's CEO sent letters to certified class members "urging them to

27   disassociate themselves from the lawsuit" *after* court-ordered class notice had been mailed to

28

22

class members and *during* the period in which class members could choose to opt out of the class.  629 F.2d 843, 845 (2d Cir. 1980).  And in *Li v. A Perfect Day Franchise, Inc.*, employer defendants "threatened that participation in the case would . . . prevent the worker from being hired anywhere else" and employed that threat to coerce putative class members' agreement to waive their right to participate in the class action lawsuit.  270 F.R.D. 509, 512-13 (N.D. Cal. 2010).  Unlike the defendants' conduct in *Erhardt* and *Li*, BFG's dissemination of the October 14 pop-up and August 28 TOU is not "an unsanctioned opt-out campaign" contrary to the public interest.  Mot. at 11.  Rather, the Arbitration Provision in the TOU has, since *before* this litigation was filed, precluded BFC users from participating in class actions in federal court unless they timely opt out of that provision.  *See supra* at Section I.

While Plaintiffs are unable to point to any public interest that would be served by the issuance of a temporary restraining order, such an order would undoubtedly restrain BFG's right to speak and contract freely with its users and be at odds with the strong public policy underlying the Federal Arbitration Act.  *See, e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The FAA embodies a clear federal policy in favor of arbitration.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

23

DATED:   October 28, 2019                    Respectfully submitted,

                                   By:   *s/Mark S. Parris*
                                         *s/Paul F. Rugani*
                                         Mark Parris (Bar No. 13870)
                                         mparris@orrick.com
                                         Paul F. Rugani (Bar No. 38664)
                                         prugani@orrick.com
                                         ORRICK HERRINGTON & SUTCLIFFE LLP
                                         701 5th Avenue, Suite 5600
                                         Seattle, WA 98104
                                         Telephone: (206) 839-4320

                                         *Attorneys for Defendants Aristocrat*
                                         *Technologies, Inc., Aristocrat Leisure Limited,*
                                         *Churchill Downs Incorporated, and Big Fish*
                                         *Games, Inc.*

                                         *s/Emily Johnson Henn*
                                         *s/Lindsey Barnhart*
                                         Emily Johnson Henn (*pro hac vice*)
                                         ehenn@cov.com
                                         Lindsey Barnhart (*pro hac vice*)
                                         lbarnhart@cov.com
                                         COVINGTON & BURLING LLP
                                         3000 El Camino Real
                                         5 Palo Alto Square
                                         Palo Alto, CA 94306
                                         Telephone: (650) 632-4700

                                         *s/Gary Rubman*
                                         Gary Rubman (*pro hac vice*)
                                         grubman@cov.com
                                         COVINGTON & BURLING LLP
                                         One CityCenter
                                         850 Tenth Street, NW
                                         Washington, D.C. 20001
                                         Telephone: (202) 662-6000

                                         *s/Matthew Q. Verdin*
                                         *s/David Watnick*
                                         Matthew Q. Verdin (*pro hac vice*)
                                         mverdin@cov.com
                                         David Watnick (*pro hac vice*)
                                         dwatnick@cov.com
                                         COVINGTON & BURLING LLP
                                         Salesforce Tower
                                         415 Mission Street, Suite 5400
                                         Telephone: (415) 591-7065

                                         *Attorneys for Defendants Aristocrat*
                                         *Technologies, Inc., Aristocrat Leisure Limited,*
                                         *and Big Fish Games, Inc.*

24