The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation,<br><br>Defendants. | Case No.: 2:15-cv-00612-RBL<br><br>**DEFENDANTS' MOTION FOR RULE 23(d) PROTECTIVE ORDER**<br><br>**Note on Motion Calendar: February 7, 2020** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>Defendants. | Case No.: 2:19-cv-00199-RBL<br><br>**DEFENDANTS' MOTION FOR RULE 23(d) PROTECTIVE ORDER**<br><br>**Note on Motion Calendar: February 7, 2020** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I. Edelson Has Engaged In Misleading And Coercive Conduct. ............................ 4

    A. Edelson's Opt-Out Website Is Misleading And Coercive. ..................... 4

    B. Edelson's Unauthorized Launch Of The Opt-Out Website Contradicts Plaintiffs' Prior Positions And Circumvents This Court's Orders.......................... 8

    C. Edelson Has Engaged In Other Unauthorized And Undisclosed Communications With Putative Class Members. ................................................. 9

II. The Court Should Order Edelson To Cease Operating The Website, Invalidate Any Opt-Outs Obtained Through The Website, Monitor Any Further Communications, And Require Corrective Notice. ........................................... 10

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................................................... 5, 6

*Doyon v. Rite Aid Corp.*,
  279 F.R.D. 43 (D. Me. 2011) ....................................................................................... 3, 7

*Georgine v. Amchem Prod., Inc.*,
  160 F.R.D. 478 (E.D. Pa. 1995) ....................................................................................... 11

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ......................................................................................................... 3, 4

*Hamm v. TBC Corp.*,
  597 F. Supp. 2d 1338 (S.D. Fla.), *aff'd*, 345 F. App'x 406 (11th Cir. 2009) .................. 12

*Lance v. Dennis*,
  546 U.S. 459 (2006) .......................................................................................................... 9

*Maddox v. Knowledge Learning Corp.*,
  499 F. Supp. 2d 1338 (N.D. Ga. 2007) ............................................................................ 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1239 (N.D. Cal. 2000) ............................................................................. 4

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ........................................................................................... 12

*Rackemann v. LISNR, Inc.*,
  No. 17-cv-00624 (S.D. Ind.) ............................................................................................. 3

*Salgado v. O'Lakes*,
  2014 WL 7272784 (E.D. Cal. Dec. 18, 2014) ................................................................... 3

*Self v. TPUSA, Inc.*,
  2008 WL 4372928 (D. Utah Sept. 19, 2008) ................................................................... 11

**Other Authorities**

Federal Rule of Civil Procedure 23(d) ................................................................................ *passim*

Wash. R. Prof'l Conduct 4.3 ...................................................................................................... 8

DEFENDANTS' REQUEST TO STRIKE
MOTION FOR RECONSIDERATION AND
OPPOSITION TO MOTION TO STAY (2:15-cv-
00612-RBL; 2:19-cv-00199-RBL)

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

## INTRODUCTION

In October 2019, Plaintiffs came to the Court for emergency relief, seeking to prevent the dissemination of a pop-up notification by Defendant Big Fish Games to its customers regarding the Terms of Use that have governed access to and use of Big Fish Casino ("BFC") since before this litigation began—which Plaintiffs mischaracterized as an "unsanctioned opt-out campaign." *Kater* Dkt. 122 at 2. Over Defendants' objections, the Court granted Plaintiffs' motion, forbade further dissemination of the October 2019 pop-up, and ordered that any subsequent communications to putative class members about this litigation, including the impact of the Terms of Use on users' rights to participate in the litigation, be subject to Court pre-approval and comply with numerous requirements. *See Kater* Dkt. 137.

While Defendants complied with all of these requirements, Plaintiffs' counsel exempted themselves from the Court's standards and launched a campaign to communicate numerous misleading statements to putative class members. Specifically, on or before January 22, 2020, Plaintiffs' counsel, the Edelson law firm, launched the website "www.nocasinoarbitration.com" expressly encouraging putative class members to opt out of the dispute resolution provision in the Terms of Use (the "Opt-Out Website"), presumably in the hopes that such users would become Edelson clients, either individually or as part of a class that Edelson will seek to certify. The Opt-Out Website advises users that they may "opt out of Big Fish Games' Arbitration Provision" by filling out an Edelson-created online form. Edelson has also purchased Facebook and Google ads directing putative class members to the Opt-Out website, and at least one putative class member reported receiving a call from an attorney from Edelson who made comments disparaging of the games and referred to a class action lawsuit.

The Opt-Out Website—as well as Edelson's paid-for ads and other communications directing putative class members to the Website—is coercive and misleading, effectively circumvents this Court's orders regarding communications with putative class members about this litigation, and improperly advocates in favor of Plaintiffs' legal position to unrepresented individuals, without disclosing that neutral legal advice could be sought elsewhere. Pursuant to

its Rule 23(d) authority and other inherent powers, this Court should order Edelson to immediately take down the Opt-Out Website and cease misleading communications with putative class members, in addition to the other remedial measures specified below.

## BACKGROUND

On November 19, 2019, the Court granted Plaintiffs the relief described above. *Kater* Dkt. 137. On November 29, 2019, both parties submitted to the Court proposed pop-up communications to putative class members. *Kater* Dkts. 138–39. Defendants objected that many statements in Plaintiffs' proposed pop-up were misleading. *Kater* Dkt. 138 at 3–4. Finding that Defendants' proposal was "a much briefer, more neutral message" that "satisfie[d] Rule 23[(d)] as it has been applied in the cases the Court relied upon in its prior Orders," and that Plaintiffs' proposal went "far beyond" the November 19 Order's requirements, the Court approved Defendants' proposed pop-up. *Kater* Dkt. 145 at 3.

On January 22, 2020, Plaintiffs filed a notice that Edelson had "established a website" that they claimed would "aid putative class members in exercising the right to opt out of the dispute resolution provision in Big Fish Games' Terms of Use." *Kater* Dkt. 159 at 2; *see* Declaration of Lindsey Barnhart Ex. A. The website contains the same messaging featured in Plaintiffs' November 29 proposed pop-up, which the Court did not adopt. *See Kater* Dkts. 139-1, 145. Plaintiffs pledged to "meet and confer in good faith with all parties to ensure that all information presented on this website is true and accurate." *Kater* Dkt. 159 at 2. The next day, Defendants requested a meet-and-confer call; Plaintiffs responded that "[t]his is not an emergency" and claimed to be unavailable until the following week. *See* Barnhart Decl. ¶ 3 & Ex. B at 3.[1]

---

[1] By contrast, Defendants' counsel promptly addressed a technical error that had caused BFC to inadvertently display for fewer than 90 minutes during the afternoon of January 21, 2020 an incorrect version of the Court-approved pop-up that contained the phone number for Plaintiffs' counsel of record instead of a 1-800 number. *Kater* Dkt. 158 at ¶ 6. Plaintiffs' counsel notified Defendants' counsel of the incorrect phone number, and Defendants' counsel responded 35 minutes later to confirm that the error had been corrected. Barnhart Decl. ¶ 13 & Ex. G.

DEFENDANTS' MOTION FOR RULE 23(d)
PROTECTIVE ORDER (2:15-cv-00612-RBL;
2:19-cv-00199-RBL)

- 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

In correspondence and during the meet-and-confer call, Defendants' counsel identified specific statements on the Opt-Out Website that are misleading. *Id.* ¶¶ 3, 7 & Ex. B at 1. Edelson refused to modify or correct any of the statements. *Id.* ¶ 7 & Ex. E at 1–4. In response to questioning by Defendants' counsel, Edelson admitted that it had purchased Google and Facebook ads directing putative class members to the Website. *See id.* ¶ 5 & Exs. C & D. When asked why it had disclosed to the Court only the Opt-Out Website, and not the ads, Edelson stated it did not believe the ads are communications subject to disclosure.[2] *Id.* ¶ 6.

Moreover, at least one of Edelson's clients has encouraged other BFC users to visit the Opt-Out Website and opt out of arbitration. *Id.* ¶ 11 & Ex. F. During the parties' meet and confer, Edelson declined to state whether its lawyers had directed or urged their clients to send such messages, claiming that such information is protected by the attorney-client privilege. *Id.* ¶ 11. Further, at least two users have reported receiving calls from attorneys, and one user reported that the attorney who called her was from Edelson, that the attorney made comments disparaging of the games, and that the attorney referred to a class action lawsuit. *Id.* ¶ 12.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23(d) endows district courts with "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), and prohibits counsel and parties from disseminating coercive or misleading communications to putative class members, *Salgado v. O'Lakes*, 2014 WL 7272784, at *12 (E.D. Cal. Dec. 18, 2014). Rule 23(d) relief may be issued in the form of a protective order. *See, e.g.*, *Doyon v. Rite Aid Corp.*, 279 F.R.D. 43, 50 (D. Me. 2011) (issuing Rule 23(d) protective order imposing "court supervision of communications between the plaintiff's counsel and putative class members").

---

[2] Edelson attorneys—including some of the same attorneys who represent Plaintiffs—stipulated on the record in a different matter that Facebook ads purchased by Edelson and targeting putative class members in that case contained incorrect information. *See Rackemann v. LISNR, Inc.*, No. 17-cv-00624 (S.D. Ind.), Dkts. 228-2 at 3 (Jan. 28, 2018 ) & 320-1 at 3 (Oct. 10, 2018).

# ARGUMENT

## I. Edelson Has Engaged In Misleading And Coercive Conduct.

Edelson's Opt-Out Website subverts BFC users' free choice whether to arbitrate individually any potential claims by promulgating misleading statements about arbitration and circumventing the Court-mediated process for communicating with putative class members about these subjects. Indeed, the launch of the Opt-Out Website contradicts positions taken by Plaintiffs in arguing for the suppression of Defendants' October 2019 pop-up. Edelson should be prohibited from engaging in unsupervised communications with putative class members about the litigation and from spreading misleading information to those unrepresented parties.

### A. Edelson's Opt-Out Website Is Misleading And Coercive.

Rule 23(d) grants this Court broad authority to regulate communications with putative class members that are misleading, coercive, or abusive. *See Gulf Oil Co.*, 452 U.S. at 102. The Opt-Out Website is rife with statements that mislead or coerce BFC users to make the choice preferred by Edelson—*i.e.*, opting out of arbitration—rather than whatever voluntary, knowing choice those users would reach on their own, without biased influence from a law firm that stands to derive a direct financial benefit from that choice.

The URL of the Opt-Out Website is www.nocasinoarbitration.com and the headline reads, "Say No To Big Fish Arbitration." Barnhart Decl. Ex. A. One can only imagine Edelson's reaction had Defendants' communications to putative class members led with the headline, "Say No to Edelson Class Action"—or if, as here, Defendants' *counsel* had done so. This exhortation to putative class members that they should opt of the dispute resolution provision in the Terms of Use, made in the guise of neutral advice, is coercive and therefore violates Rule 23(d). *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000) ("Prime among [Rule 23 concerns] is the concern that absent class members should not be forced into a class against their will."). By presenting this headline and numerous other statements disparaging arbitration, *see infra*, while staying conspicuously silent as to the many benefits of arbitration, the Opt-Out Website misleads putative class members into the false

belief that they will necessarily be better off joining Edelson's putative class action than individually arbitrating their claims. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) ("In bilateral arbitration, parties . . . realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." (citation omitted)).

The rest of the Opt-Out Website contains numerous similarly misleading statements, including many of the same statements that Defendants identified as misleading in Plaintiffs' November 29 proposed pop-up to putative class members, *see Kater* Dkt. 138 at 3–4, which the Court declined to approve, *Kater* Dkt. 145.

**1. "If you give up your rights and agree to arbitration, <u>you might be giving up your chance to recover all of the money you have spent, even if the court later decides that Big Fish has to give players refunds</u>."**

Barnhart Decl. Ex. A (emphasis in original). This statement misleadingly implies that class action participation is the only means by which BFC users can advance claims similar to those alleged in this litigation, when, in fact, these claims would be equally available to a BFC user in arbitration. Moreover, the Opt-Out Website is silent as to the many benefits users would be giving up by opting out of arbitration. *See Concepcion*, 563 U.S. at 348.

**2. "There is no judge and no jury in arbitration[.]"**

Barnhart Decl. Ex. A. This statement is misleading because it conspicuously fails to note that any arbitration would in fact be "judged" by a neutral arbitrator, or to detail the many benefits of arbitration, suggesting instead by omission that the decision-making process is arbitrary.

**3. "Big Fish's Terms of Use say that you can only file claims that are less than a year old. But the Plaintiffs in the two class actions believe you can recover <u>all</u> of your losses. <u>If you give up your rights, you might be giving up your only opportunity to recover for losses that are more than a year old</u>."**

Barnhart Decl. Ex. A (emphases in original). This statement misrepresents that different limitations periods apply to class action claims and arbitrated claims, when, in fact, all BFC users who agree to the Terms of Use, whether or not they opt out of arbitration, agree to a one-year filing deadline for all claims. *See Kater* Dkt. 128-5 at 11. Indeed, Plaintiffs have conceded, in briefs to this Court and the Ninth Circuit, that the one-year statute of limitations applies to the

DEFENDANTS' MOTION FOR RULE 23(d)
PROTECTIVE ORDER (2:15-cv-00612-RBL;
2:19-cv-00199-RBL)

- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

claims of any BFC user who accepts the Terms of Use. *See Kater* Dkt. 151 at 12 ("agreeing to the Terms [of Use] means being bound by a single-year statute of limitations provision" to which the opt-out right does not apply); Ninth Circuit Case No. 19-36090 Dkt. 11 at 11 ("Putative class members who agree to the [Terms of Use] would thus be giving up longer statutory limitations periods . . . as well as the tolling effect of the original *Kater* and *Thimmegowda* complaints[.]").

4. **"Big Fish says you have thirty (30) days to opt out, and it is not clear when they think the thirty-day clock starts running."**

Barnhart Decl. Ex. A. The Terms of Use expressly state that users must send any notice of opt out "**within thirty (30) days of your acceptance of these Terms of Use.**" *Kater* Dkt. 128-5 at 11 (emphasis in original).[3]

5. **"There is <u>no charge to you to keep your right to participate in the class actions</u>, and if the Court allows the cases to proceed as class actions, it will appoint lawyers to represent Big Fish players. . . . If you decide to give up your rights, <u>starting an arbitration would cost you $250, and if you wanted a lawyer, you would have to pay for one yourself.</u>"**

Barnhart Decl. Ex. A (emphases in original). This statement misleadingly suggests that participating in any class action is free when, in fact, a sizeable portion of any recovery would likely be taken by class counsel,[4] while at the same time neglecting to mention that users' arbitration costs are *capped* at $250. In addition, as noted above, arbitration frequently carries greater benefits in terms of expediency and efficiency than litigation—benefits the Opt-Out Website misleadingly omits. *Concepcion*, 563 U.S. at 348.

6. **"Didn't I already see something about this? In October, you may have seen a pop-up about Big Fish Games' Terms of Use. <u>A federal judge has decided that the pop-up was misleading and coercive.</u> You should disregard it."**

---

[3] During meet-and-confer, Edelson took the position that the date of "acceptance" is unclear because determining when a user accepts the Terms of Use is a fact-intensive, individualized inquiry. Barnhart Decl. ¶ 9. While Defendants agree that contract acceptance is an individualized inquiry that cannot be resolved on a classwide basis, that is beside the point. The Terms of Use clearly state that the opt-out clock starts as of the day a user accepts the Terms.

[4] Edelson did not disclaim any intent to seek attorneys' fees from any class recovery during the parties' meet and confer. *Id.* ¶ 10.

Barnhart Decl. Ex. A (emphases in original).  This statement is misleading because it conspicuously fails to note that the current pop-up—the only pop-up disseminated to *all* BFC users—is *Court-approved*.  A reader may therefore be deceived into wrongly believing this Court-approved pop-up was declared misleading and coercive, and should be disregarded.

    **7.**    **"Big Fish Games' Terms of Use ask you, by default, to give up your right to participate in two class action lawsuits. . . . These lawsuits claim that players, including you, are entitled to a refund of ALL money they have spent on Big Fish Casino and Jackpot Magic Slots because they are unlicensed gambling games."**

Barnhart Decl. Ex. A (emphasis in original).  First, no class has been certified, and not every BFC user would be eligible to participate even if a class were certified because, among other reasons, they may previously have accepted the Terms of Use (and not opted out of arbitration), and/or they may not be encompassed in any class definition.  Second, Plaintiffs' Complaints do not mention Jackpot Magic Slots, an entirely separate app that no Plaintiff alleges she played.  *See generally Kater* Dkt. 85; *Thimmegowda* Dkt. 1.

    **8.**    **"If you have questions [sic] any questions, please send an email to casinolawsuits@edelson.com or call Edelson PC at 1-800-347-5750."**

Barnhart Decl. Ex. A.  This statement is misleading because it holds Edelson out as capable of providing neutral legal advice regarding Big Fish Games' Terms of Use and this litigation in general.  That is precisely what Rule 23(d) is meant to guard against.  *Doyon*, 279 F.R.D. at 50 (D. Me. 2011) ("The Court's primary purpose in supervising communications is . . . to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." (citation omitted) (omission in original)).

    **9.**    **"A federal appellate court has already decided the key issue in this case in favor of the players."**

Barnhart Decl. Ex. A.  This statement and others on the Opt-Out Website misleadingly suggest that class recovery is a foregone conclusion, despite the fact that the only merits determination made so far in this litigation is that Plaintiff Kater's original complaint could withstand a motion to dismiss, and very little fact discovery (and no expert discovery) has occurred.  Similar to a website statement to putative class members at issue in *Jones v. Casey's General Stores*,

Edelson's statement is misleading because it "implies that [a party's] liability . . . has already been proven."  517 F. Supp. 2d 1080, 1088 (S.D. Iowa 2007).

B.  **Edelson's Unauthorized Launch Of The Opt-Out Website Contradicts Plaintiffs' Prior Positions And Circumvents This Court's Orders.**

When Big Fish Games in October 2019 disseminated an in-game communication to a portion of BFC users regarding the Terms of Use and this litigation, Plaintiffs moved to enjoin such communication in part because it was sent "[w]ithout telling Plaintiffs or their counsel, and without Court approval."  *Kater* Dkt. 122 at 2.  Yet Edelson launched its website without informing anyone.  Plaintiffs also described Defendants' October 2019 pop-up as a "manifestly improper communication[]," and posited that "Defendants obviously do not want putative class members to be able to participate in these lawsuits, and the goal in sending the communications is to make sure they don't."  *Id.* at 3, 7; *see also id.* at 9 (similar); *Kater* Dkt. 129 at 9–10 (similar).  Although Defendants dispute those characterizations of the October 2019 pop-up, they aptly describe the Opt-Out Website, wherein Edelson makes abundantly clear what it wants putative class members to do: "Say No To Big Fish Arbitration."  Barnhart Decl. Ex. A; *see also Casey's Gen. Stores*, 517 F. Supp. 2d at 1088-89 (threatening to sanction plaintiffs where they "have undertaken precisely the type of one-sided, misleading communications with putative [class] members that they claim Defendant undertook").  Worse, the Opt-Out Website comes from *counsel*, with the attendant veneer of authority and objectivity, increasing its coerciveness.

In previous Rule 23(d) briefing, Plaintiffs wrongly accused Defendants' counsel of violating Washington professional ethics rules providing that in "situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client . . . the possibility that the lawyer will compromise the unrepresented person's interests is so great that [Rule 4.3] prohibits the giving of any advice, apart from the advice to obtain the services of another legal practitioner."  Wash. R. Prof'l Conduct 4.3, cmt. 2; *see* Dkt. 129 at 7 n.2.  Here, Edelson is purporting to provide opt-out services to unrepresented putative class members and advocating for them to make Edelson's preferred choice to forego arbitration, despite the fact

that many putative class members—for example, those who would prefer the expediency and confidentiality of arbitration—may have interests adverse to Edelson. In short, Edelson is doing exactly what it baselessly accused Defendants' counsel of doing three months ago.

Nor can the Opt-Out Website be squared with the Court's previous rejection of Edelson's request that the Court appoint it as interim class counsel in order to "to advise [putative class members] what they're giving up" by agreeing to arbitration, and "for the purpose of negotiating any change to the existing legal relations between putative class members and Defendants." *Kater* Dkt. 122 at 12. After the Court denied the request, Edelson nevertheless launched a website advising putative class members not to agree to arbitration and claiming to be able to opt out of the dispute resolution provision of the Terms of Use on those users' behalf. This conduct circumvents the Court's order by doing precisely what Edelson previously conceded by its actions would require a Court order—an order the Court declined to grant. *Cf. Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citation omitted) (an "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly").

Finally, the Court's November 19 Order ruled that any "initial communication directed [by Defendants] to putative class members [regarding the Terms of Use]" would be subject to Court pre-approval and would have to satisfy four requirements, including that it would have to "advise players to contact an attorney for advice on any of the legal terms." *Kater* Dkt. 137 at 12 (emphasis added). Edelson apparently believes that it should not be held to this same standard, having now issued unsanctioned communications to putative class members that, in addition to being misleading and coercive, *see supra* Section I.A, fail to inform putative class members that they should seek counsel "for advice on any of the legal terms" in the Terms of Use—other than calling Edelson directly with "any question," *see* Barnhart Decl. Ex. A.

### C. Edelson Has Engaged In Other Unauthorized And Undisclosed Communications With Putative Class Members.

While Edelson notified the Court and the parties of its Opt-Out Website, it did not file a similar notice of the other unauthorized communications it has recently directed to putative class

members. For example, Edelson paid for targeted Facebook and Google ads directing putative class members to the Opt-Out Website, without first requesting Court approval or even notifying the Court or the parties. *See* Barnhart Decl. ¶ 5 & Exs. C & D. Defendants have obtained those ads, which contain similarly improper language as the Opt-Out Website, such as "Say No To Big Fish Arbitration." *See id.* Exs. C & D; *supra* Section I.A. In addition, at least one of Edelson's clients has encouraged other BFC users to visit the Opt-Out Website and opt out of arbitration. Barnhart Decl. ¶ 11 & Ex. F. And finally, at least two users have reported receiving calls from attorneys, and one user reported that the attorney who called her was from Edelson, and that the attorney disparaged the games and referred to a class action lawsuit. *Id.* ¶ 12.

Given Edelson's demonstrated interest in driving traffic to the Opt-Out Website and procuring arbitration opt-outs from putative class members, these communications raise substantial concerns that Edelson is directly or indirectly communicating with, and effectively offering legal advice and services to, unrepresented putative class members. *See* Washington Rules of Professional Conduct ( "RPC") 7.3 (prohibiting client solicitation "directly or through a third person, by in-person, live telephone, or real-time electronic contact" when a significant motive is pecuniary gain); *see also id.* cmt. 2 (noting a "potential for abuse" in such situations).

II. **The Court Should Order Edelson To Cease Operating The Website, Invalidate Any Opt-Outs Obtained Through The Website, Monitor Any Further Communications, And Require Corrective Notice.**

Rule 23(d) and this Court's inherent powers provide the Court with ample authority to prohibit Edelson's improper, misleading, and coercive communications, and to address the fallout from those communications. Four forms of relief are appropriate and warranted here.

*First*, the Court should order Edelson to cease operating the Opt-Out Website and associated misleading media campaign, and order that any communications by Edelson to putative class members (not including its clients) about the litigation or Terms of Use must first be submitted for Court pre-approval, to ensure that such communications are free of any misleading and/or coercive statements. *See Kater* Dkt. 137. In analogous contexts, courts have ordered corrections to misleading statements on plaintiff-operated websites that, like the Opt-Out

DEFENDANTS' MOTION FOR RULE 23(d)
PROTECTIVE ORDER (2:15-cv-00612-RBL;
2:19-cv-00199-RBL)

- 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 FIFTH AVENUE, SUITE 5600
SEATTLE, WASHINGTON 98104-7097
+1 206 839 4300

Website, were directed at putative class members. *See Casey's Gen. Stores*, 517 F. Supp. 2d at 1089 (ordering removal of "offending website information from the public domain" until it could be replaced with "factual, accurate, and balanced" information); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344–45 (N.D. Ga. 2007) (ordering and prescribing corrections to statements on plaintiffs' website).

*Second*, any opt-outs obtained through Edelson's misleading and coercive Opt-Out Website should be invalidated under Rule 23(d). Where, as here, a party engages in misleading or coercive communications, courts have invalidated opt-out forms obtained through those communications. *See, e.g.*, *Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 490, 504–05 (E.D. Pa. 1995) (invalidating opt-outs obtained through counsel communications deemed misleading because they created the false impression that opting out was the only way to secure recovery, and "did not reveal the personal interests of the drafters"); *see also Self v. TPUSA, Inc.*, 2008 WL 4372928, at *5 (D. Utah Sept. 19, 2008) (invalidating opt-ins in FLSA collective action obtained through plaintiffs' counsel-operated website containing statements deemed misleading because they were "presented as factual and legal conclusions rather than merely as Plaintiffs' contentions"); *Casey's Gen. Stores*, 517 F. Supp. 2d at 1088–89 (holding that plaintiff-operated website facilitating plaintiff opt-ins in FLSA collective action was misleading because it gave "the impression that Defendant's liability [was] already settled and did not inform putative members "that they may contact counsel of their own choice," and ordering that further such communications may result in "invalidation" of any opt-ins).

*Third*, any BFC user who purports to opt out of the arbitration agreement through the Opt-Out Website should receive Court-approved corrective notice: (1) notifying the user that his or her opt-out has been invalidated; (2) explaining that the Opt-Out Website contained misinformation; (3) explaining what information was misleading and why; (4) notifying the user that he or she remains free to opt out or not opt out of the disputed resolution provision within 30 days of the corrective notice and pursuant to the procedures in the Terms of Use; and (5) indicating that any questions about the litigation or the impact of the Terms of Use on any legal

rights in the litigation should be discussed with an attorney.[5] *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming order of corrective notice to "unwind the confusion" caused by plaintiffs' attorney's unilateral communication with putative class members to procure class opt-outs).

*Fourth*, the Court would be well within its discretion to order further relief and/or oversight of Edelson, to protect putative class members from any future misleading or coercive communications about the litigation or Terms of Use or improper solicitation attempts. *See, e.g.*, *Casey's Gen. Stores*, 517 F. Supp. 2d at 1089 (barring plaintiffs' counsel who unethically solicited clients from contacting potential opt-in plaintiffs without first obtaining opposing counsel's or the court's permission); *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1340 (S.D. Fla.) (barring plaintiffs' counsel who unethically solicited clients from representing future opt-in clients not directly associated with named plaintiffs), *aff'd*, 345 F. App'x 406 (11th Cir. 2009). Such relief should include an order requiring Edelson to preserve all communications between Edelson (or others acting on its behalf, including clients) and other BFC users.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for a protective order under Rule 23(d), and order: (1) that Edelson must immediately cease operating the Opt-Out Website, and that any communications by Edelson to putative class members (not including its clients) about the litigation or the impact of the Terms of Use on any legal rights of putative class members in the litigation are subject to Court pre-approval; (2) that any opt-outs procured by Edelson through the Opt-Out Website are invalid; (3) corrective notice (as described *supra* Section II) to any putative class members whose purported opt-out notices are invalidated; and (4) any further relief the Court deems necessary and appropriate to protect putative class members from misleading communications or improper solicitation attempts from Edelson.

---

[5] The Opt-Out Website collects email and mailing addresses for all users it purports to assist in opting out, so corrective notice can efficiently be disseminated to the affected users. And because Edelson's conduct occasioned the need for such notice, it should pay distribution costs.

| | |
|---|---|
| DATED: January 30, 2020 | Respectfully submitted, |

| | |
|---|---|
| */s/ Mark Parris*<br>*/s/ Paul Rugani*<br>Mark Parris (Bar No. 13870)<br>mparris@orrick.com<br>Paul F. Rugani (Bar No. 38664)<br>prugani@orrick.com<br>ORRICK HERRINGTON & SUTCLIFFE LLP<br>701 5th Avenue, Suite 5600<br>Seattle, WA 98104<br>Telephone: (206) 839-4320<br>*Attorneys for Defendants Aristocrat Technologies, Inc., Aristocrat Leisure Limited, Big Fish Games, Inc. and Churchill Downs Inc.* | */s/ Emily Johnson Henn*<br>*/s/ Lindsey Barnhart*<br>Emily Johnson Henn (*pro hac vice*)<br>ehenn@cov.com<br>Lindsey Barnhart (*pro hac vice*)<br>lbarnhart@cov.com<br>COVINGTON & BURLING LLP<br>3000 El Camino Real<br>5 Palo Alto Square<br>Palo Alto, CA 94306<br>Telephone: (650) 632-4700<br><br>*/s/ Gary Rubman*<br>Gary Rubman (*pro hac vice*)<br>grubman@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, D.C. 20001<br>Telephone: (202) 662-6000<br><br>*/s/ Ashley M. Simonsen*<br>Ashley M. Simonsen (*pro hac vice* pending)<br>asimonsen@cov.com<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067<br>Telephone: (424) 332-4782<br><br>*/s/ Matthew Q. Verdin*<br>*/s/ David Watnick*<br>Matthew Q. Verdin (*pro hac vice*)<br>mverdin@cov.com<br>David Watnick (*pro hac vice*)<br>dwatnick@cov.com<br>COVINGTON & BURLING LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>Telephone: (415) 591-7065<br><br>*Attorneys for Defendants Aristocrat Technologies, Inc., Aristocrat Leisure Limited, and Big Fish Games, Inc.* |