The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation.<br><br>*Defendants*. | No. 15-cv-00612-RBL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 23(d) MOTION**<br><br>ORAL ARGUMENT REQUESTED BY PLAINTIFFS<br><br>Noting Date: February 14, 2020 |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>*Defendants*. | No. 19-cv-00199-RBL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 23(d) MOTION**<br><br>ORAL ARGUMENT REQUESTED BY PLAINTIFF<br><br>Noting Date: February 14, 2020 |

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612, 19-CV-199

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................. 1

**BACKGROUND** .................................................................................................................. 3

**LEGAL STANDARD** .......................................................................................................... 4

**ARGUMENT** ........................................................................................................................ 5

    I.    The Website Is Neither "Coercive" Nor "Misleading." ............................................... 5

    II.   There Is No Constitutional Basis For Ordering The Website Taken Down. ............................................................................................................. 10

    III.  Defendants' Remaining, Scattershot Accusations Of Ethical Breaches Are Baseless. ............................................................................................................ 11

**CONCLUSION** .................................................................................................................. 12

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - ii

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................................... 6

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) .................................................................................................... 7

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) ................................................................................................ 10

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ...................................................................................................... 4

**United States Circuit Court of Appeals Cases**

*Kater v. Churchill Downs Inc.*,
    886 F.3d 784 (9th Cir. 2018) ...................................................................................... 7

*Long Beach Area Peace Network v. City of Long Beach*,
    574 F.3d 1011 (9th Cir. 2009) .................................................................................. 10

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) ................................................................................ 3, 9

**Statutory Provisions**

Fed. R. Civ. P. 23 ............................................................................................................... 6

Wash. R. of Prof'l Conduct 4.3 ....................................................................................... 11

Wash. R. of Prof'l Conduct 7.3 ................................................................................. 11, 12

**Other Authorities**

3 Newberg on Class Actions (5th ed.) .............................................................................. 5

6 Newberg on Class Actions (5th ed.) .............................................................................. 5

Black's Law Dictionary 345 (3d ed. 1933) ....................................................................... 5

Pls' Opp to Defs' Rule 23(d) Motion
Nos. 15-cv-612 and 19-cv-199 - iii

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## INTRODUCTION

For months, Defendants have insisted to the Court that their revised Terms and single-button pop-up window aren't coercive because putative class members supposedly retain the right to "opt out" of Big Fish's Dispute Resolution Provision. *See, e.g.*, Dkt. 133/84[1] at 10:4-9:

> THE COURT: Don't you think it's a little coercive if in order to access your chips, you've got to agree to the terms and agree to arbitration?
>
> MS. HENN: Your Honor, I don't think that that is the case with the game because of the prominently disclosed opt-out right.

But now that Plaintiffs' counsel have made it easier for putative class members to exercise that supposed right—and that more than 2,500 putative class members have navigated to www.nocasinoarbitration.com and done so—it turns out Defendants aren't so hot on the idea of honoring opt-outs, after all.

Hoping to invalidate the hundreds of opt-out letters that they are receiving each day, Defendants have filed a motion for a "Rule 23(d) Protective Order" ("Motion"). *See* Dkt. 164/115. The motion follows a familiar playbook: muddy up the facts, attack opposing counsel with baseless accusations of unethical conduct, and hope that something sticks. Nothing does.

Defendants chiefly complain that Plaintiffs' counsel didn't seek pre-approval from the Court before launching www.nocasinoarbitration.com (the "Website") and promoting it through internet banner advertisements. *See* Motion at 1, 9, 10, 12. But it is Defendants, not Plaintiffs' counsel, who are subject to a preliminary injunction requiring Court pre-approval based on Defendants' past "coercive and misleading" communications. Dkt. 137/88 at 7. Defendants have not offered any authority suggesting that Plaintiffs or their attorneys are subject to any type of prior restraint on their speech.

Pivoting to whataboutism, Defendants argue that statements made on the Website and corresponding banner advertisements are "coercive" and "misleading." *See* Motion at 1, 4-8. The

---

[1] For all slash-separated docket citations in this brief, the first citation is to the docket entry in the *Kater/Kelly* action, and the second is to the docket entry in the *Thimmegowda* action.

Pls' Opp to Defs' Rule 23(d) Motion
Nos. 15-cv-612 and 19-cv-199 - 1

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

suggestion of coercion is downright silly, and the Court is well-situated to make its own determination as to whether the content—which, the Parties agree, largely mirrors Plaintiffs' proposal at Dkt. 139/90—is in any way misleading. On that issue, it bears noting that the statements on the Website are extremely similar to the corrective notice Plaintiffs previously proposed, which "[met] the Court's requirements" for such notice. Dkt. 145/96.

Finally, Defendants throw around accusations of unethical conduct based on: (1) Plaintiffs' counsel's placement of banner advertisements for www.nocasinoarbitration.com on the internet,[2] (2) an allegation that putative class members who apparently exchange real-time messages might be talking to each other about these issues, and (3) an allegation that, sometime after Defendants disseminated the revised pop-up featuring Plaintiffs' counsel's phone number on January 21, 2020 (leading to Plaintiffs' counsel's phones being flooded with calls and voicemails), Plaintiffs' counsel returned the phone call of a putative class member. Motion at 9-10. These accusations are meritless. There's nothing wrong with posting banner advertisements to a true and accurate website; there's nothing wrong with putative class members talking to each other (regardless of who they've hired as their counsel); and there's nothing wrong with Plaintiffs' counsel returning putative class members' phone calls or otherwise responding to communications initiated by putative class members.

At bottom, Defendants' motion asks the Court to believe that they have the best interests of putative class members in mind, and that Plaintiffs' counsel's interests are "adverse" to the putative class. *See* Motion at 9. That argument just doesn't pass the smell test. *Compare Kater*, Dkt. 75 at 8 ("[T]here is little uncertainty that Churchill Downs engaged in illegal conduct that Kater can recover for if she truly lost as much money as she claims.") *with* Churchill Downs' Answer, Dkt. 102 at ¶ 86 ("CDI … denies Plaintiff is entitled to any relief whatsoever from CDI."). Because it is meritless, the Court should deny the Motion.

---

[2] The banner advertisements Defendants complain of are simply screenshots of *Defendants'* revised pop-up that say "Have you seen this pop up? You can protect your legal rights by opting out of Big Fish's arbitration clause" and have a "Learn More" button. Dkt. 165-3/116-3 at 2.

Pls' Opp to Defs' Rule 23(d) Motion
Nos. 15-cv-612 and 19-cv-199 - 2

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**BACKGROUND**

In late 2019, after finding that Defendants engaged in "coercive and misleading" communications with putative class members, the Court issued intertwined preliminary injunction and Rule 23(d) orders regulating Defendants'—*not* Plaintiffs' counsel's—future communications with putative class members. *See* Dkts. 137/88; 145/96. More specifically, the Court required that any initial communication from Defendants to putative class members pertaining to these lawsuits come in the form of a pop-up window that—among other requirements—identified Plaintiffs' counsel, provided their telephone number, and notified putative class members of their right to "opt out" of Big Fish's Dispute Resolution Provision. *Id.*

For weeks, Defendants took no substantial action in response to the Court's Orders.[3] But then, on January 13, 2020, the Ninth Circuit issued its mandate in the related *Huuuge* case, affirming this Court and effectively extinguishing any argument by Defendants in these cases that they have ever had enforceable arbitration agreements with putative class members. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1213 (9th Cir. 2019).

One week and one day after that mandate issued, on January 21, 2020, at approximately 3:45 p.m., Defendants finally began disseminating the revised pop-up in earnest, and the undersigned Plaintiffs' counsel's direct phone line (as opposed to the Court-ordered 1-800 number) was immediately flooded with calls and voicemails from putative class members. *See* Logan Decl. ¶ 2. The next day, on January 22, 2020, Plaintiffs' counsel responded by (1) establishing www.nocasinoarbitration.com ("Website"), and (2) notifying the Court and all Parties of the same via ECF. *See* Dkt. 159/110; Logan Decl. ¶ 3. Later that evening, at

---

[3] While Defendants claim that they "began disseminating" the amended pop-up on December 30, 2019, *see* Dkt. 156/107 at 2, that appears to be a misleading (though perhaps technically defensible) claim. Plaintiffs' counsel received no pop-up related phone calls from putative class members on December 30 (or 31). *See* Declaration of Todd Logan ("Logan Decl.") ¶ 2. By contrast, when Defendants actually began disseminating the revised pop-up on January 21, 2020 in earnest, Plaintiffs' counsel's direct phone line was immediately flooded with calls and voicemails from putative class members. *Id.*

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

approximately 11:00 p.m., Plaintiffs' counsel began running internet banner advertisements pointing toward the Website. Logan Decl. ¶ 3.

As Plaintiffs' counsel stated in their notice, the Website is intended to aid putative class members in exercising the right to opt out of the dispute resolution provision in Big Fish Games' Terms of Use. Practically speaking, that means enabling putative class members to communicate their position on arbitration with the click of a button—as opposed to having to physically mail a letter to Big Fish's lawyers in Seattle. To that end, when a putative class member navigates to www.nocasinoarbitration.com and fills out the six fields of information and then clicks "sign and send," a postcard is automatically mailed from a third-party facility to Big Fish Games' legal department (per the instructions in Big Fish's Terms). Logan Decl. ¶ 4. An exemplar of these postcards is attached to the Declaration of Todd Logan as **Exhibit 1**.

As the Court will see in its review of the Website, its content largely mirrors the content Plaintiffs' counsel previously proposed that Defendants be required to include in their revised pop-up. *See* Dkt. 139/90. The website also includes contact information for the National Problem Gambling Helpline, links to several important documents from these cases, and a clear disclaimer of Edelson PC's role—as Plaintiffs' counsel—in these lawsuits.

Since its launch, more than 2,500 individuals have utilized the Website to send "opt-out" letters to Big Fish Games' legal department, pursuant to the instructions provided in Big Fish Games' most recent Terms. Logan Decl. ¶ 5.

## LEGAL STANDARD

An order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). For example, when a litigant in a putative class action engages in "coercive and misleading" communications with putative class members by foisting upon those putative class members "ultimatum[s]" regarding access to previously-purchased goods in an "addictive" product a Rule 23(d) Order is appropriate. Dkt. 137/88 at 7-8.

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**ARGUMENT**

**I.    The Website Is Neither "Coercive" Nor "Misleading."**

Defendants argue that www.nocasinoarbitration.com is "coercive" because it "subverts BFC users' free choice." Motion at 4. That is nonsense. Coercion occurs where "the relation of the parties is such that one is under subjection to the other, and is thereby constrained to do what his free will would refuse." Black's Law Dictionary 345 (3d ed. 1933); *accord* 3 NEWBERG ON CLASS ACTIONS § 9:7 (5th ed.) (coercive communications in putative class context generally require an "ongoing business relationship" and, in certain courts, "something more"). For example, when a company operates a highly addictive service, and then bars its customers from accessing that addictive service—and from accessing previously-purchased goods within the service—until those customers agree to retroactively waive valuable rights, that is coercion. *See* Dkt. 137/88 at 7-8.

By contrast, there's nothing coercive about Plaintiffs' counsel establishing a website that: (1) conveys truthful and accurate information; (2) putative class members may choose whether or not to visit, and (3) putative class members may choose whether or not to fill out a form on. That's true most obviously because Plaintiffs' counsel wield no power or control over putative class members. And that distinction reveals the fallacy in Defendants' attempts to conflate the Website with Defendants' (or their counsel's) implementation of the original pop-up. *See* Motion at 4-5. There's a crucial difference between the Website and the original pop-up: Defendants (and their counsel) are adverse to, and wield substantial power over, putative class members. Plaintiffs' counsel, by contrast, wield no power over putative class members—and are, in fact ethically charged with advancing their interests, even before a class is certified. *See* 6 NEWBERG ON CLASS ACTIONS § 19:2 (5th ed.).

Nor is www.nocasinoarbitration.com misleading. *See* Motion at 5-8. Again, the statements on the Website are extremely similar to the corrective notice Plaintiffs proposed and which "[met] the Court's requirements" for such notice. Dkt. 145/96. Defendants' overarching complaint seems to be that the Website does not go out of its way to lavish praise upon private

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

arbitration. *See, e.g.*, Motion at 4 (grousing that the Website is "conspicuously silent as to the many benefits of arbitration"); *id.* at 5 ("the Opt-Out Website is silent as to the many benefits users would be giving up by opting out of arbitration"); *id.* at 6 ("arbitration frequently carries greater benefits in terms of expediency and efficiency than litigation—benefits the Opt-Out Website misleadingly omits"). It's not exactly clear why Defendants believe Plaintiffs' counsel would have an obligation to compliment arbitration on the Website, and Defendants certainly don't provide any authority for such an obligation. *Cf.* 3 NEWBERG ON CLASS ACTIONS § 9:6 (5th ed.) ("When courts have been asked to limit communications by plaintiffs' counsel with prospective class members, they have generally refused to do so unless the communications are misleading, abusive, or coercive."). To be clear, Defendants' repeated citations to *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), are nothing more than red herrings. This is not a dispute about whether there is a federal policy favoring arbitration; this is a dispute about whether Plaintiffs' counsel may continue operating a true and accurate website. *Concepcion* does not speak to the issues here.

Perhaps if the Website contained objectively false statements about arbitration, or attempted to lure putative class members into retroactively waiving valuable rights, the Court might need to exercise its discretion pursuant to Fed. R. Civ. P. 23(d) and regulate the Website. But that isn't the case here, as each statement made on the website—including those about arbitration, the status of these cases, and which arguments the parties are making—is true and accurate, and the effect of "opting out" is simply maintaining the status quo. Defendants highlight nine specific statements on www.nocasinoarbitration.com that are purportedly misleading. *See* Motion at 5-8. But as explained below, in bullet-point format, each statement is true, accurate, and in no way misleading.

1. **"If you give up your rights and agree to arbitration, you might be giving up your chance to recover all of the money you have spent, even if the court later decides that Big Fish has to give players refunds."**

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

- This statement is true, accurate, and in no way misleading. There are many things putative class members *might* be giving up by agreeing to Defendants' dispute resolution provision. *See* Dkt. 137/88 at 7-8 (ordering Defendants to advise putative class members of "what they are giving up" by agreeing to Terms). One sacrifice is the full benefit of the Ninth Circuit's decision in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), which unquestionably binds this Court but does not necessarily bind a private arbitrator. Another potential sacrifice is the right to *American Pipe* and *Crown Cork* tolling, which in these cases—but potentially not in individual arbitration—will likely allow the vast majority of putative class members to recover all of their losses, regardless of the 1-year statute of limitations clause in Defendants' Terms. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 345 (1983).

2. **"There is no judge and no jury in arbitration, and your right to appeal is limited."**

   - This statement is true, accurate, and in no way misleading. *See, e.g.*, "JAMS: Arbitration Defined: What is Arbitration?," available at https://www.jamsadr.com/arbitration-defined/ (Arbitration is "administered" by a private organization … By agreeing to arbitration, the parties … are waiving their fundamental, constitutional right to a trial by a jury of their peers … Unless otherwise agreed, the decision is legally binding and non-appealable."). Nothing about this statement suggests that arbitration is decided by a coinflip or any other "arbitrary" measure. And, in any event, Big Fish's Terms—which Defendants insist putative class members now have knowledge of—explain the powers and duties of the arbitrator in detail.

3. **"Big Fish's Terms of Use say that you can only file claims that are less than a year old. But the Plaintiffs in the two class actions believe you can recover all of your losses. If you give up your rights, you might be giving up your only opportunity to recover for losses that are more than a year old."**

   - This statement is true, accurate, and in no way misleading. Plaintiffs' counsel believe that under *American Pipe* and *Crown Cork* tolling, the vast majority of putative class members are likely to recover all of their losses should they prevail at trial. By contrast, Defendants have consistently taken the position that, in individual arbitration, putative class members will be subject to a 1-year statute of limitations contained in Defendants' revised Terms. *See, e.g.*, Dkt. 156/107 at 8.

4. **"Big Fish says you have thirty (30) days to opt out, and it is not clear when they think the thirty-day clock starts running."**

   - This statement is true, accurate, and in no way misleading. Defendants concede that they believe and will argue in these cases that the timing of each

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

consumer's "acceptance" of the Terms is an individualized, fact-bound inquiry. *See, e.g.*, Motion at 6 n.3. Plaintiffs disagree, but the more important point, which is why it is made on www.nocasinoarbitration.com, is that it's "not clear" when Defendants believe the thirty-day clock starts running for each member of the putative classes.

5. **"There is no charge to you to keep your right to participate in the class actions, and if the Court allows the cases to proceed as class actions, it will appoint lawyers to represent Big Fish players … If you decide to give up your rights, starting an arbitration would cost you $250, and if you wanted a lawyer, you would have to pay for one yourself."**

- This statement is true, accurate, and in no way misleading. There is no charge for putative class members to keep their rights to participate in these cases, and if the Court certifies them, it will appoint class counsel. If class counsel is awarded fees, those fees will be shared among the entire class, meaning that there is no chance a class member would have to pay for a lawyer by herself. Conversely, a consumer who files an arbitration against Big Fish must immediately pay $250, and, if the consumer wishes to be represented by counsel in that arbitration, she would have to locate and then pay for that counsel on her own, without the cost-spreading benefits of class litigation. Additionally, the statement implies neither that class action litigation is free nor that arbitration is prohibitively expensive—and in any event, the putative class cases are pursuing CPA claims for which consumers are likely entitled to fee-shifting and cost-shifting. Indeed, Aristocrat disclosed as much to its investors in its 2019 annual report. *See* Aristocrat Leisure Limited, 2019 Aristocrat Leisure Limited Annual Report at 103, https://cite.law/F58A-GL4C.

6. **"Didn't I already see something about this? In October, you may have seen a pop-up about Big Fish Games' Terms of Use. A federal judge has decided that the pop-up was misleading and coercive. You should disregard it."**

- This statement is true, accurate, and in no way misleading. *See* Dkt. 137/88 at 7-8 ("Here, Big Fish's [October] pop-up, in conjunction with the revised Terms of Use, is coercive and misleading."). To the extent that Defendants contend their customers cannot currently distinguish between pop-ups displayed in October 2019 (*i.e.*, the original pop-up) and pop-ups displayed in January 2020 (*i.e.*, the revised pop-up), Plaintiffs respectfully submit that isn't a credible position. In any event, the Website makes clear that "Big Fish Games' Terms of Use ask you, by default, to give up your right to participate in two class action lawsuits by agreeing to resolve all disputes in arbitration" but also that "you have a choice: by sending this letter, you can say no to arbitration by opting out of Big Fish Games' 'Dispute Resolution Provision.'"

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

7. **"Big Fish Games' Terms of Use ask you, by default, to give up your right to participate in two class action lawsuits. . . . These lawsuits claim that players, including you, are entitled to a refund of ALL money they have spent on Big Fish Casino and Jackpot Magic Slots because they are unlicensed gambling games."**

   - This statement is true, accurate, and in no way misleading. Plaintiffs in both cases seek to represent putative classes of consumers who have lost money to Big Fish Casino or Big Fish Games' "other internet casino games," of which Jackpot Magic Slots is (a major) one. *See Kater*, Dkt. 85 ¶ 48; Dkt. 1 ¶ 52. And while Defendants' counsel believe that putative class members have previously accepted Big Fish's Terms, via browsewrap, Plaintiffs' counsel believe that binding caselaw in a factually analogous case demonstrates otherwise. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019).

8. **"If you have questions [sic] any questions, please send an email to casinolawsuits@edelson.com or call Edelson PC at 1-800-347-5750."**

   - How this could be a "misleading" statement escapes Plaintiffs' counsel. In any event, here is the entire paragraph from which this statement is taken, which Plaintiffs' counsel submits is unassailable: "Who created this website? Edelson PC, a law firm, created this website. Edelson PC represents the plaintiffs in the lawsuits against Big Fish that are described on this website. By sending this letter you are not creating an attorney-client relationship with Edelson PC and you are not hiring Edelson PC to be your lawyer. If you have any questions, please send an email to casinolawsuits@edelson.com or call Edelson PC at 1-800-347-5750."

9. **"A federal appellate court has already decided the key issue in this case in favor of the players."**

   - This statement is true, accurate, and in no way misleading. Plaintiffs' counsel adopted the phrasing from an order of this Court. *See Kater*, Dkt. 75 at 8. ("Churchill Downs' 28-page motion requested that the court dismiss Kater's claims with prejudice, and self-admittedly addressed *the key issue* in this case ... Indeed, with these questions resolved by the Ninth Circuit, *there is little uncertainty that Churchill Downs engaged in illegal conduct* that Kater can recover for if she truly lost as much money as she claims.") (emphasis added).

There's nothing coercive, misleading, or otherwise unfair about a website that provides true and accurate information, and allows visitors to make an informed decision about arbitration. Defendants just don't like it.

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## II. There Is No Constitutional Basis For Ordering The Website Taken Down.

Defendants argue that Plaintiffs' counsel's establishment of the Website "circumvent[ed] the Court-mediated process for communicating with putative class members." Motion at 4. But no circumvention could possibly have occurred—because there is nothing to circumvent. There exists no Court-mediated process for communications between putative class members and Plaintiffs' counsel. Instead, because *Defendants* previously engaged in "coercive and misleading" communications, the Court issued a preliminary injunction that regulates *Defendants'* communications with putative class members. *See* Dkt. 137/88.[4]

Ultimately, the "protective order" that Defendants now seek is an unjustified and consequently unconstitutional prior restraint on Plaintiffs' counsel's speech. Prior restraints on speech and communication are "presumptively invalid." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009). Even against attorneys, such restrictions are in general permitted only if the challenged speech threatens "a substantial likelihood of materially prejudicing an adjudicative proceeding." *Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991). There is no such threat here; the Website contains exclusively true and accurate statements, and simply allows visitors to make an informed decision about whether to "sign and send" a letter to Defendants' legal department.

The truth is that Defendants are asking the Court to suppress Plaintiffs' counsel's speech—and to invalidate actions that putative class members have taken on the basis of it—because they are worried putative class members might agree with that speech. But the First Amendment "does not permit suppression of speech because of its power to command assent." *Id.* In other words, where "the dangers of [attorneys'] speech arise from its persuasiveness, from their ability to explain judicial proceedings, or from the likelihood the speech will be believed, these are not the sort of dangers that can validate restrictions." *Id.* That's exactly the case here.

---

[4]    Defendants also suggest that the Court's preliminary injunction against them *sub silentio* created a prior restraint on Plaintiffs' counsel's speech to putative class members. There is no way to read the Court's preliminary injunction order to reach such an unconstitutional result.

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 10

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**III.     Defendants' Remaining, Scattershot Accusations Of Ethical Breaches Are Baseless.**

Finally, Defendants accuse Plaintiffs' counsel of violating Washington Rule of Professional Conduct 7.3. *See* Motion at 9-10. Defendants offer three bases for Plaintiffs' counsel's purported ethical breaches. *Id.* Each is baseless.

First, Defendants argue that Plaintiffs' counsel violated RPC 7.3 by failing to seek pre-approval from the Court before launching internet banner advertisements to the Website. *Id.* That argument has so many flaws that it's almost hard to know where to start, but here are a few: (1) Plaintiffs' counsel had no obligation, ethical or otherwise, to seek Court pre-approval before advertising the Website; (2) RPC 7.3 pertains to solicitation, but the Website states that "By sending this letter you are not creating an attorney-client relationship with Edelson PC and you are not hiring Edelson PC to be your lawyer"; and RPC 7.3 governs only "in-person, live telephone, or real-time electronic contact," whereas none of those kinds of contact can occur on the Website (and the Website does not ask visitors to share their phone number).

Defendants also contend that by establishing the Website without pre-approval, Plaintiffs' counsel have violated Washington Rule of Profession Conduct 4.3 because Plaintiffs' counsel's interests are—in Defendants' view—"adverse" to those of members of the putative classes. *See* Motion at 8-9. There can be no serious dispute here as to whose interests are aligned with—as opposed to adverse to—putative class members. The dockets in these cases reveal that Plaintiffs' counsel have advocated on behalf of putative class members dating back to 2015, and have fought—and won—a string of crucial battles not just in this Court but also before the Washington State Gambling Commission and the Washington State Legislature. By contrast, Defendants continue to argue that Plaintiffs and putative class members are entitled to no relief. *Kater*, Dkt. 102 at ¶ 86. Plaintiffs' counsel have not come anywhere close to violating Rule 4.3.

Next, Defendants argue that Plaintiffs' counsel violated RPC 7.3 because one of the putative class members represented by Plaintiffs' counsel—of which, to be clear, there are many—apparently advised another putative class member to visit www.nocasinoarbitration.com. *See* Motion at 10. But again, whereas RPC 7.3 pertains to solicitation, the Website states that

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 11

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

"By sending this letter you are not creating an attorney-client relationship with Edelson PC and you are not hiring Edelson PC to be your lawyer." And given that these two putative class members are apparently close enough, personally, to be exchanging real-time messages in which they call each other "Hun," it would appear that the RPC 7.3(a)(2) safe harbor applies here.

Finally, Defendants suggest that Plaintiffs' counsel violated RPC 7.3 because "one [unidentified] user reported receiving a call from" an attorney at Plaintiffs' counsel's law firm, and that attorney "disparaged the games and referred to a class action lawsuit." *Id.*[5] An immediate problem with Defendants' conspiracy theory that Plaintiffs' counsel are using www.nocasinoarbitration.com to cold-call and/or unethically solicit putative class members is that, again, the Website does not ask visitors to share their phone numbers. (And to be absolutely clear, Plaintiffs' counsel *have not* cold-called any putative class members. Logan Decl. ¶ 7.)

Here's the truth. After Defendants disseminated the revised pop-up to *all* of their customers on January 21, 2019, scores of putative class members called Plaintiffs' counsel and left voicemails and other messages requesting representation and/or further information. Logan Decl. ¶ 2. It shouldn't be a shock to anyone—Defendants included—that Plaintiffs' counsel returned those calls and messages. Nor should it be a shock that during any of those communications, Plaintiffs' counsel might have: (1) "referred to a class action lawsuit," given that these lawsuit were expressly mentioned in (and were in fact the reason for) Defendants' pop-up windows; or (2) spoken unkindly of Big Fish Casino, given that it is—in Plaintiffs' counsel's opinion—operating illegally and taking advantage of vulnerable people.

## CONCLUSION

The Court should deny the Motion.

---

[5] Plaintiffs' counsel have repeatedly asked Defendants' counsel to provide specific information regarding this allegation, so as to allow a substantive response. Logan Decl. ¶ 6. For whatever reason, Defendants' counsel have steadfastly refused to provide any further information. *Id.*

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  DATED this 10th day of February, 2020.

**CHERYL KATER, SUZIE KELLY, and MANASA THIMMEGOWDA,** individually and on behalf of all others similarly situated,

By: s/ Todd Logan
Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn*
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300/Fax: 415.373.9435

By: s/ Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

*Attorneys for Cheryl Kater, Suzie Kelly and Manasa Thimmegowda*

*Admitted *pro hac vice*

PLS' OPP TO DEFS' RULE 23(d) MOTION
NOS. 15-CV-612 AND 19-CV-199 - 13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992