The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  *v.*<br><br>CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES, INC., a Washington corporation.<br><br>    *Defendants*. | No. 15-cv-00612-RBL<br><br>**MOTION FOR CERTIFICATION OF A RULE 23(b)(2) CLASS AND FOR PRELIMINARY INJUNCTION**<br><br>Noting Date: March 13, 2020<br><br>**ORAL ARGUMENT REQUESTED** |
| MANASA THIMMEGOWDA, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>  *v.*<br><br>BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT TECHNOLOGIES INC., a Nevada corporation; ARISTOCRAT LEISURE LIMITED, an Australian corporation; and CHURCHILL DOWNS INCORPORATED, a Kentucky corporation,<br><br>    *Defendants*. | No. 19-cv-00199-RBL<br><br>**MOTION FOR CERTIFICATION OF A RULE 23(b)(2) CLASS AND FOR PRELIMINARY INJUNCTION**<br><br>Noting Date: March 13, 2020<br><br>**ORAL ARGUMENT REQUESTED** |

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

## TABLE OF CONTENTS

2   **INTRODUCTION** ................................................................................................ 1

3   **FACTUAL BACKGROUND** ................................................................................ 5

4   **ARGUMENT** ....................................................................................................... 8

5   I.   **THE COURT SHOULD CERTIFY AN INJUNCTION CLASS**
6        **PURSUANT TO FED. R. 23(B)(2).** ..................................................... 9

7        A.   **The proposed Injunction Class is sufficiently numerous.** ............... 10

8        B.   **The claims of the proposed Injunction Class present common**
             **questions.** ....................................................................................... 10

9        C.   **The claims of the proposed representatives are typical.** .................. 11

10       D.   **The proposed representatives and their lawyers are adequate.** ........ 12

11       E.   **Identical injunctive relief is appropriate across the class.** ............... 13

12  II.  **THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION.** ...... 14

13       A.   **Plaintiffs are likely to succeed on their injunction claims.** ............. 15

14            i.   **Washington Gambling Statute** ................................................ 15

15            ii.  **Washington Consumer Protection Act** ................................... 17

16       B.   **Although unnecessary to show, Defendants' continued**
17            **operation of these games causes irreparable harm.** ....................... 20

18       C.   **The balance of equities favors an injunction.** .................................. 21

19       D.   **The requested injunction is in the public interest.** .......................... 22

20  **CONCLUSION** .................................................................................................. 22

21

22

23

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases</u>**

*James v. Ball,*
    451 U.S. 355 (1981) ........................................................................................... 9

*Nelson v. NASA,*
    562 U.S. 134 (2011) ......................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................. 10, 13

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................. 14

**<u>United States Courts of Appeals Cases</u>**

*Antonetti v. Chipotle Mexican Grill, Inc.,*
    643 F.3d 1165 (9th Cir. 2010) .................................................................. 14, 20

*Benson v. Double Down Interactive, LLC,*
    No. 18-36015, 2020 WL 468422 (9th Cir. Jan. 29, 2020) ............................... 13

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) .......................................................................... 4

*Clark v. U.S. Dist. Ct. for C.D. Cal.,*
    840 F.2d 701 (9th Cir. 1988) .......................................................................... 20

*EEOC v. Chrysler Corp.,*
    733 F.2d 1183 (6th Cir. 1984) ........................................................................ 20

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .......................................................................... 12

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) .......................................................................... 11

*hiQ Labs, Inc. v. LinkedIn Corp.,*
    938 F.3d 985 (9th Cir. 2019) .......................................................................... 21

*James v. Ball,*
    613 F.2d 180 (9th Cir. 1979) ............................................................................ 9

Pl's Mot. For Class Cert and PI
Case Nos. 15-cv-612, 19-cv-199  -  iii

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

*Kater v. Churchill Downs Inc.*,
   886 F.3d 784 (9th Cir. 2018) ..................................................................5, 13, 16

*Meyer v. Portfolio Recovery Assocs.*, LLC,
   707 F.3d 1036 (9th Cir. 2012) ............................................................................9

*Modernistic Candies v. FTC*,
   145 F.2d 454 (7th Cir. 1944) ...........................................................................19

*Nelson v. NASA*,
   530 F.3d 865 (9th Cir. 2008) ...........................................................................21

*Owner Operator Independent Drivers Ass'n, Inc. v. Swift Transp. Co., Inc. (AZ)*,
   367 F.3d 1108 (9th Cir. 2004) .........................................................................21

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ...........................................................................14

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019) .........................................................................13

**United States District Court Cases**

*B.E. v. Teeter*,
   No. 16-cv-0227, 2016 WL 3939674 (W.D. Wash. July 21, 2016) ...................11

*Buus v. Wamu Pension Plan*,
   251 F.R.D. 578 (W.D. Wash. 2008) ................................................................12

*Diamond House of SE Idaho, LLC v. City of Ammon*,
   381 F. Supp. 3d 1262 (D. Idaho 2019) ...........................................................14

*Does 1-10 v. Univ. of Wash.*,
   326 F.R.D. 669 (W.D. Wash. 2018) ................................................................10

*Dunakin v. Quigley*,
   99 F. Supp. 3d 1297 (W.D. Wash. 2015) ........................................................11

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ......................................................................4

*Fife v. Sci. Games Corp.*,
   No. 18-cv-00565-RBL, 2018 WL 6620485 (W.D. Wash. Dec. 18, 2018).........5

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................4

*Johnson v. Metro-Goldwyn-Mayer Studios, Inc.*,
    No. 17-cv-0541, 2018 WL 5013764 (W.D. Wash. Oct. 16, 2018) .................................. 12

*Marilley v. Bonham*,
    No. 11-cv-02418-DMR, 2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ............................. 9

*McGuire v. Dendreon Corp.*,
    267 F.R.D. 690 (W.D. Wash. 2010) ................................................................................. 13

*Meyer v. Portfolio Recovery Assocs., LLC*,
    No. 11-cv-1008, 2011 WL 11712610, at *2 (S.D. Cal. Sept. 14, 2011) ........................... 9

*Moeller v. Taco Bell Corp.*,
    816 F. Supp. 2d 831 (N.D. Cal. 2011) ............................................................................. 14

*Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*,
    325 F.R.D. 671 (W.D. Wash. 2016) ................................................................................... 9

*Versaterm, Inc. v. City of Seattle*,
    No. 16-cv-1217, 2016 WL 4793239 (W.D. Wash. Sept. 13, 2016) .................................. 22

*Walters v. Reno*,
    No. 94-cv-1204, 1996 WL 897662 (W.D. Wash. Mar. 13, 1996) .................................... 12

*Wilbur v. City of Mount Vernon*,
    298 F.R.D. 665 (W.D. Wash. 2012) ............................................................................ 10, 11

*Yue v. Conseco Life Ins. Co.*,
    282 F.R.D. 469 (C.D. Cal. 2012) ..................................................................................... 21

**State Court Cases**

*Blake v. Federal Way Cycle Center*,
    698 P.2d 578 (Wash. Ct. App. 1985) ............................................................................... 18

*Hangman Ridge Training Stables, Inc. v. Safeco Ins. Co.*,
    719 P.2d 531 (Wash. 1986) ......................................................................................... 11, 18

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*,
    170 P.3d 10 (Wash. 2007) ............................................................................................... 18

*Johnson v. Collins Entm't, Inc.*,
    564 S.E.2d 653 (S.C. 2002) ............................................................................................. 19

*Klem v. Wash. Mut. Bank*,
    295 P.3d 1179 (Wash. 2013) ...................................................................................... 11, 18

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) ....................................................................................... 18

*Proctor v. Whitlark & Whitlark, Inc.*,
    778 S.E.2d 888 (S.C. 2015) ...................................................................................... 19

*Russo v. State*,
    239 P.3d 1084 (Wash. 2010) ..................................................................................... 8

**<u>Other Authorities</u>**

Fed. R. Civ. P. 23 ................................................................................................*passim*

RCW 7.48 ................................................................................................................. 15

RCW 9.46 ...............................................................................................................*passim*

RCW 19.86 ........................................................................................... 4, 8, 15, 17, 18

11A Wright & Miller Fed. Prac. & Proc.
    *Federal Rules of Civil Procedure* § 2948.4 (3d ed.) ............................................. 22

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## INTRODUCTION

Though Defendants have yet to produce any non-public documents in discovery, recent developments call out for certification of a Rule 23(b)(2) class and a preliminary injunction.

In recent weeks, scores of Big Fish players have stepped forward to pull back the curtain on the social casino industry, including Defendants' Big Fish Casino and Jackpot Magic Slots. More than 100 of them have, through Plaintiffs' counsel, emailed members of the Washington Legislature detailing their losses. *See* Declaration of Todd Logan ("Logan Decl.") ¶ 3. **Figure 1** provides a graphical representation of their reported losses, revealing an average loss of more than $50,000 and suggesting that the bulk of Defendants' revenues come from consumers with losses exceeding $10,000.

**Figure 1**



Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 - 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    *See* Declaration of Austin Prather ("Prather Decl.") ¶¶ 3-8; Prather Decl. Ex. 1 ("**Figure**

2    **1**"). Of the 146 players whose losses are summarized in **Exhibit 1** to the Prather Declaration, 27

3    of them reported losses in excess of $100,000, with one reporting losses of $750,000.00. *See*

4    Prather Decl. ¶ 7. Suzie Kelly is no outlier; her experience is, in fact, Big Fish's business model.

5    Additionally, more than a dozen putative class members have provided the Court with

6    sworn testimony as to how their addictions to Defendants' casino games—and Defendants' VIP

7    programs and concierges—have impacted their lives, with stories ranging from spousal disputes

8    to financial ruin to depression to a suicide attempt. By way of example, **Figure 2** below is an

9    introductory excerpt of the testimony that Big Fish user Jill Interrante, originally submitted in

10   letter format to the Washington State Legislature. *See* Logan Decl. Ex. 1 (Supplemental

11   Declaration of Jill Interrante and Letter to Washington State Legislators) ("Interrante Letter").

12                                          **Figure 2**

House Civil Rights & Judiciary Committee
Senate Labor and Commerce Committee
Washington State Legislature
Washington State Capitol Building and Campus
416 Sid Snyder Avenue SW
Olympia, Washington 98504

To whom it may concern:

My name is Jill Interrante. I'm writing this letter because the social casino company, Big Fish Games, destroyed my life. That is not an exaggeration. For more than seven years I had a gambling addiction to Big Fish Casino. In that time:

- I spent at least $200,000 playing Big Fish Casino. Even though I asked for help over and over and over again, Big Fish's response was always the same. They just gave me more chips, which furthered my addiction.

- I was one of Big Fish's lab rats. Because I lived in Washington, Big Fish asked me to participate in two research experiments at their headquarters in Seattle. When I look back on it now, I realize that Big Fish's goal for these experiments was horrible. They were figuring out new ways to prey on people, like me, who were addicted to their social casino apps.

- Big Fish drove me to attempt suicide.

The story I'm about to tell is not unique. There are many, many people who have been ruined by Big Fish. I only hope that by sharing my full experience, people with the power to stop Big Fish, and other social casinos like it, will do something.

**Here's my story.**

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 - 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   Ms. Interrante's experience in many ways echoes that of Suzie Kelly, particularly as Ms.

2   Kelly described it in an interview with PBS NewsHour. *See* Logan Decl. Ex. 2 (PBS NewsHour,

3   *How social casinos leverage Facebook user data to target vulnerable gamblers*, lodged via USB

4   drive and accessible at: https://www.youtube.com/watch?v=FFtkFLNJZfM) ("NewsHour

5   Video"); *see also* Declaration of Suzie Kelly ("Kelly Decl.") ¶ 3. Like Ms. Interrante, Ms. Kelly

6   repeatedly asked for help, often providing specific details of her addiction's toll upon her

7   personal life. *See* NewsHour Video at 1:45-2:35. Yet just as with Ms. Interrante, Big Fish never

8   permanently banned Ms. Kelly's account; instead, Ms. Kelly's "VIP" Host often responded by

9   just giving Ms. Kelly more chips to keep playing. Kelly Decl. ¶ 4. According to Keith Whyte,

10   the Executive Director of the National Council on Problem Gambling, this sort of "absolutely

11   predatory" behavior would not occur in regulated brick-and-mortar casinos, which face "severe

12   fines" for not cutting off individuals exhibiting tendencies like Ms. Kelly's and Ms. Interrante's.

13   *See* NewsHour Video at 2:45-3:30; *see also* RCW 9.46.071 (requiring Washington State

14   Gambling Commission to establish self-exclusion rules for licensed casinos by June 2021).

15   What all of this evidence indicates is that, notwithstanding Defendants' constant refrain

16   that its casino games are "free to play," substantially all of Defendants' revenues come from

17   addicted gamblers who are preyed upon and exploited by Defendants' VIP programs and

18   personal concierges. The basic outlines of this business model—get as many customers in the

19   door as possible, employ high-pressure sales tactics to convert the most vulnerable of those

20   customers into addicts, and then milk those new addicts (or, in Defendants' parlance, "whales")

21   for all they are worth—is not new. But the extent to which this business model dominates

22   Defendants' purportedly "free-to-play" games is, in Plaintiffs' view and in light of Defendants'

23   prior representations, shocking.

24

25

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    Through this evidence and more, including transaction-level data Big Fish continues

2  improperly to refuse to produce,[1] Plaintiffs will prove at trial that Defendants' core business

3  strategy focuses on leveraging VIP programs and personal VIP concierges to psychologically

4  exploit gambling addicts into spending as much money as their credit card accounts can bear, no

5  matter the human toll. More to the point, the evidence Plaintiffs have mustered *without*

6  Defendants' cooperation provides an urgent and compelling basis to certify a Rule 23(b)(2) class

7  and to issue a preliminary injunction barring Defendants' continued sale of virtual casino chips.

8    Both statutes under which Plaintiffs filed their complaints expressly provide for

9  injunctive relief. RCW 9.46.250(1) ("All gambling premises are common nuisances and shall be

10  subject to abatement by injunction or as otherwise provided by law."); RCW 19.86.090

11  (permitting an "action … to enjoin further violations"). And while Plaintiffs intend also to seek

12  certification of a Rule 23(b)(3) damages class once Defendants produce transaction-level data

13  and other relevant discovery, the current state of affairs—Defendants' failure to produce any

14  discovery coupled with significant evidence nevertheless coming to light regarding ongoing

15  harm and continuing danger to class members—counsels in favor of a bifurcated approach.[2]

16    Though Plaintiffs intend to wait for at least some formal discovery before moving to

17  certify a Rule 23(b)(3) damages class, the record currently establishes that putative class

18  members are suffering—in a common way—from Defendants' continued offering of unlawful

19  gambling. And the predatory nature of Defendants' practices, which are creating more and more

20  gambling addicts every day, to ruinous personal ends, means relief need not and cannot wait.

21

22  [1]   Notwithstanding the Court's Order requiring Defendant Churchill Downs ("CDI") to respond to pre-amendment discovery (including transaction-level information), Dkt. 119 at 2,

23  CDI has refused to produce such information. In fact, CDI has failed to produce *a single non-public document* in discovery; the extent of CDI's production to date is three (3) publicly-filed SEC 10-K Reports. *See* Logan Decl. ¶ 10.

24  [2]   *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) ("[T]he Ninth Circuit has suggested on multiple occasions that district courts consider certifying separate

25  Rule 23(b)(2) and 23(b)(3) classes.") *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) *and* 674 F. App'x 654 (9th Cir. 2017); *Ellis v. Costco Wholesale Corp.*, 285

26  F.R.D. 492, 538 n.37 (N.D. Cal. 2012) ("In an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable

27  remedy.") (internal quotations and alterations omitted).

1   This Court should grant Plaintiffs' motion, certify a Rule 23(b)(2) class, and enjoin Defendants

2   from continuing to peddle their unlawful online gambling.

3                                    **FACTUAL BACKGROUND**

4           As the Court well knows, these cases are about Defendants' internet-based "social"

5   casino apps. The specific casino apps at issue in this motion are "Big Fish Casino" and Big

6   Fish's newer title, "Jackpot Magic Slots," which Defendants operate primarily from their

7   headquarters in Seattle. In support of this motion, Plaintiffs are lodging with the Court an iPad

8   containing current versions of each of the at-issue games, and respectfully request that the Court

9   take judicial notice of each game. *See* Logan Decl. Ex. 3 (iPad containing Defendants' social

10  casino games); *see also Fife v. Sci. Games Corp.*, No. 18-cv-00565-RBL, 2018 WL 6620485, at

11  *3 (W.D. Wash. Dec. 18, 2018) (taking judicial notice of social casino games lodged via iPad).

12          As the Court will see when it examines these games, the fundamental aspects of

13  gameplay are identical for these two games. They both simulate casino experiences and largely

14  feature slot machine games. Players are occasionally given some amount of free credits (whether

15  called "chips," "coins," or something similar), but once out of credits, users are prompted to

16  purchase more for real money. In all the games, these purchased credits are "things of value"

17  because—though some free credits are occasionally distributed—the purchased credits "extend"

18  gameplay. *See Fife*, 2018 WL 6620485, at *3 ("Purchasing coins is therefore not only necessary

19  to 'enhance' gameplay, but is also required to 'extend' it.") (citation omitted); *accord Kater v.*

20  *Churchill Downs Inc.*, 886 F.3d 784, 787 (9th Cir. 2018) ("*Kater* I") ("Bullseye's reasoning was

21  plain—these points fall within the definition of thing of value because they extend the privilege

22  of playing the game without charge.") (citation omitted).

23          Each game also rewards players who purchase large amounts of credits. Built into each

24  game is a tiered rewards system, often dubbed a "VIP Program," that rewards players who

25  purchase and gamble large numbers of credits. Increased VIP status is required to "unlock" new

26  casino games and rooms in which players can interact with other players. And much like in a

27  brick-and-mortar casino, membership in these VIP programs may also include a personal

concierge who can answer questions or solve problems or complaints and who is authorized to "comp" a player's account with free chips. *See* Kelly Decl. ¶ 5. Here is how Suzie Kelly described her interactions with her "VIP host" in a letter to the Washington State Gambling Commission:

> Big Fish Casino assigned me a personal VIP host, Byron Scott. Byron personally called me; sent me his direct email address; responded to all of my emails (in the beginning) within minutes; took the time to get to know me personally; knew more about me than most of my friends did; even had flowers sent to my home when my mother passed away in 2016. He sent me free chips regularly, although sometimes he and other VIP hosts told me that I hadn't spent enough money recently for them to be allowed to send me any. All in all, I have hundreds of emails and messages from Byron.

Logan Decl., Ex. 4 at 1 (Letter from Suzie Kelly to Washington State Gambling Commission).

The personal services offered by these VIP programs also have a sinister purpose. VIP concierges—who are likely paid on commission, *see* Kelly Decl. ¶ 6—encourage players to continue purchasing chips in order to maintain certain status levels and treatment, offer sales designed to entice new purchases when the customers' chip purchasing lags, and try to talk disillusioned players out of quitting. *See id.* ("When I would ask Big Fish Casino to ban my account, or ban my credit card, or say that I thought I needed to take a break from playing because of how much money I was spending, Byron would tell me how much he and the other VIP hosts would miss me, and that they would be sad to see me go."); *see also* Kelly Decl. ¶ 6; Logan Decl. Exs. 5-7 (messages between Suzie Kelly and Big Fish Casino "VIP Host" Byron Scott, with Suzie Kelly repeatedly requesting to be banned and Byron repeatedly providing free chips). These kinds of tactics, in combination with the traditionally addictive aspects of Defendants' casino games, have the effect of creating gambling addicts out of "VIP" players. *See* Logan Decl. Exs. (Declarations of Crystal Fair, Patsy Henson, Brandt Jennings, Floyd Moon,

Pl's Mot. For Class Cert and PI
Case Nos. 15-cv-612, 19-cv-199 - 6

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  Michael Etcheverry, Dawn Milliken, Rhonda Martinez, Crystal Oland, James Bennett, Elizabeth

2  Cash, Jill Interrante Jane Doe 2, Jane Doe 3, Jane Doe 4, and Tina Oliver).

3      Once addicted, "VIP" players often pour tens or hundreds of thousands of dollars into

4  Defendants' social casino. *See supra* **Figure 1;** Interrante Letter at 3-4; Fair Decl. ¶¶ 4-5;

5  Jennings Decl. ¶¶ 3-4; Moon Decl. ¶ 2; Etcheverry Decl. ¶ 2; Milliken Decl. ¶ 2; Martinez Decl.

6  ¶ 3; Doe 2 Decl. ¶ 4. These purchases are key to Defendants' business model, because they

7  represent the primary (if not only) revenue these games generate. Thus, the system of rewards

8  and bonuses and tiers represents an elaborate effort to ensure that addicts spend as much money

9  as they can (and frequently much more than they can) on these gambling apps, all to their

10  detriment and the detriment of society. *See* Henson Decl. ¶¶ 4, 6; Moon Decl. ¶¶ 3, 5; Milliken

11  Decl. ¶¶ 3, 7; Martinez Decl. ¶ 6; Bennett Decl. ¶ 4; Doe 3 Decl. ¶¶ 6, 9; Oliver Decl. ¶¶ 4-5.

12  Addicts suffer emotionally and psychologically on account of these games. *See* Interrante Letter

13  at 3-4; Fair Decl. ¶ 8; Milliken Decl. ¶ 9; Martinez Decl. ¶ 4; Doe 2 Decl. ¶ 5; Doe 4 Decl. ¶ 10.

14  Their addictions, catalyzed and then supercharged by Defendants, interfere with their family and

15  personal relationships. *See* Interrante Letter at 3-4; Jennings Decl. ¶ 8; Doe 3 Decl. ¶ 4. Many

16  players are induced to spend money they don't have, leading to financial ruin. *See* Interrante

17  Letter at 3-4; Moon Decl. ¶ 4; Milliken Decl. ¶ 9; Martinez Decl. ¶ 4; Bennett Decl. ¶ 5; Doe 4

18  Decl. ¶ 10. And many players understand they are trapped in a vicious cycle that their addiction

19  prevents them from escaping—and the personal pressure Defendants place on players only

20  makes the situation worse. *See* Interrante Letter at 3-4; Fair Decl. ¶ 5; Henson Decl. ¶ 3;

21  Jennings Decl. ¶ 6.

22      As Professor Natasha Dow Schüll explained to the Washington State Gambling

23  Commission, the addiction-related dangers of Big Fish Casino (and, Plaintiffs respectfully

24  submit, its close cousin Jackpot Magic Slots), are identical to those of brick-and-mortar casinos.

25  *See* Logan Decl. ex. 23 (Letter from Natasha Dow Schüll to Washington State Gambling

26  Commission) ("Dow Schüll Letter"), at 1 ("In my capacity as an expert on gambling technology

27  and gambling addiction, I am contributing these comments to emphasize the absurdity of any

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    claim by Big Fish Games that its mobile slots are different in any significant or consequential

2    way from traditional gambling machines. Especially for players vulnerable to compulsive play,

3    the games offer an identical experience – and an identical set of associated dangers."). In a brick-

4    and-mortar casino, Washington gambling laws afford players a variety of addiction-related

5    protections, including mandatory addiction-related warnings in advertisements (*see* RCW

6    9.46.072; the consent of all casinos to fully comply with regulatory investigations (*see* RCW

7    9.46.153); and a soon-to-become-effective requirement that casinos offer a mandatory self-

8    exclusion program for gambling addicts (*see* RCW 9.46.071). Internet-based casino app

9    operators, on the other hand, insist that they are not subject to Washington's gambling laws and

10   consequently do not afford to Washington consumers any such protections—indeed, the

11   evidence in the record indicates that these companies in fact target and exploit gambling addicts

12   as primary revenue sources.

## ARGUMENT

14        The Court should not permit these illegal gambling operations to continue. Washington

15   outlaws all unlicensed gambling games, and, in particular, all internet gambling. *See Russo v.*

16   *State*, 239 P.3d 1084, 1086 (Wash. 2010). Defendants' operation of these gambling apps also

17   constitutes an unfair practice under Washington's consumer protection law. *See* RCW 19.86.020.

18   Plaintiffs brought suit under Washington gambling and consumer protection statutes, both of

19   which expressly provide for injunctive relief. RCW 9.46.250(1) ("All gambling premises are

20   common nuisances and shall be subject to abatement by injunction or as otherwise provided by

21   law."); RCW 19.86.090 (permitting an "action … to enjoin further violations").

22        Plaintiffs ask the Court to both certify an injunction class under Rule 23(b)(2) and issue a

23   preliminary injunction. To be clear, the two requests are independent: the Court can certify a

24   Rule 23(b)(2) injunction class without granting the requested preliminary injunction at this time.

25   Likewise, the Court can enter the requested preliminary injunction without certifying a class.

26   *See, e.g., Marilley v. Bonham*, No. C-11-02418-DMR, 2012 WL 851182, at *7 (N.D. Cal. Mar.

27   13, 2012) ("The Ninth Circuit has held that courts may exercise discretion to deny certification

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  [of a 23(b)(2) class] when the relief sought would 'as a practical matter, produce the same result

2  as formal class-wide relief.'") (quoting *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979), *rev'd*

3  *on other grounds*, 451 U.S. 355 (1981)).[3] But there is good cause for the Court to do both here.

4      Because the injunction Plaintiffs seek would bar the further sale of virtual casino chips

5  and apply equally to all purchasers, and because the entitlement to such an injunction rests on

6  questions common to all purchasers, the Court should certify a class of all purchasers under Fed.

7  R. Civ. P. 23(b)(2). Furthermore, because Plaintiffs are likely to succeed in their claims for

8  injunctive relief, and because they (and putative class members) continue to suffer ongoing

9  irreparable harm, this Court should enter a preliminary injunction pending final disposition of

10 this case. For the reasons discussed below, Plaintiffs respectfully request that the Court both

11 certify the proposed Rule 23(b)(2) class and enter the proposed preliminary injunction.

12 **I.     THE COURT SHOULD CERTIFY AN INJUNCTION CLASS PURSUANT TO**

13 **FED. R. 23(B)(2).**

14      Plaintiffs propose that the Court certify the following class:[4]

15          **The Injunction Class:** all individuals who have purchased virtual

16          chips through the Big Fish Casino or Jackpot Magic Slots apps in

            the United States on any date after April 16, 2011.

17

18 The following individuals should be excluded from the Class: (1) any Judge or Magistrate

19 presiding over these actions and members of their families; (2) Defendants, Defendants'

20 subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their

21 parents have a controlling interest and their current or former employees, officers and directors;

22 (3) persons who properly execute and file a timely request for exclusion from any class; (4)

23

24 ───────────────────

   [3]     *But see Meyer v. Portfolio Recovery Assocs., LLC,* No. 11-cv-1008, 2011 WL 11712610,

   at *2 (S.D. Cal. Sept. 14, 2011) ("*Meyer* I") ("In the absence of class certification, the

25 preliminary injunction may properly cover only the named plaintiff"); *Meyer v. Portfolio*

   *Recovery Assocs., LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012) (affirming *Meyer* I).

26 [4]     To the extent the Court identifies any defect with Plaintiffs' proposed class definition, the

   Court may of course exercise its discretion to cure the defect. *See, e.g., Nw. Immigrant Rights*

27 *Project v. U.S. Citizenship & Immigration Servs.*, 325 F.R.D. 671, 695-96 (W.D. Wash. 2016).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    persons whose claims in this matter have been finally adjudicated on the merits or otherwise

2    released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives,

3    successors, and assigns of any such excluded persons. Simultaneously with certifying the

4    proposed Injunction Class, the Court should appoint Edelson PC as class counsel and appoint

5    Suzie Kelly and Manasa Thimmegowda as class representatives. *See* Fed. R. Civ. P.

6    23(c)(1)(B).[5]

7          The proponent of class certification must demonstrate compliance with Fed. R. Civ. P.

8    23(a) (requiring numerosity, the presence of common questions, and appropriate representation)

9    and one subsection of Fed. R. Civ. P. 23(b). *See Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669,

10   678 (W.D. Wash. 2018). Because Plaintiffs seek certification, for the moment, for the purposes

11   of pursuing injunctive relief, subsection (2) applies, permitting certification where the defendant

12   acts on grounds common to the class, rendering classwide injunctive relief appropriate. *See id.*

13        **A.      The proposed Injunction Class is sufficiently numerous.**

14         Rule 23(a) first requires that a proposed class be so numerous that joinder is

15   impracticable. The requirement is presumed satisfied when a proposed class includes at least 40

16   members, although it is "relaxed" when a representative seeks only injunctive relief. *Id.* at 679.

17   As evidenced by the scores of Big Fish users submitting letters to the Washington State

18   Legislature detailing their losses, numerosity is beyond serious dispute here.

19        **B.      The claims of the proposed Injunction Class present common questions.**

20         Next, Rule 23(a)(2) requires that the claims of any proposed class present common

21   questions. For purposes of Rule 23(a)(2), "even a single common question will do." *See Wal-*

22   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "As long as there are substantial questions

23   which, if tried separately, would have to be answered as to each potential class member, this

24   element is satisfied." *Wilbur v. City of Mount Vernon*, 298 F.R.D. 665, 667 (W.D. Wash. 2012).

25   Each proposed class representative here pursues two claims for injunctive relief: one under

26   _____

27   [5]    Cheryl Kater is not proposed as a class representative for the Injunction Class. She will
     continue to pursue her claims, however, either individually or as an absent class member.

Washington's gambling statute and one under Washington's Consumer Protection Act. Because common conduct underlies the claims of the proposed Injunction Class, each claim presents common questions.

Here, claims under the Washington gambling statute present clear common questions. Under this statute, all "gambling premises" are common nuisances and are subject to abatement by injunction. RCW 9.46.250(1). To prevail on their injunctive claim under this statute, then, any individual plaintiff will have to establish that Defendants' Seattle headquarters constitutes a "gambling premises," as that term is defined in the statute. *See* RCW 9.46.0249. Whether Defendants' headquarters constitutes a "gambling premises" in turn requires examination of other statutory definitions such as "professional gambling" and "gambling device," *id*.—and is common to all members of the proposed Injunction Class.

The consumer protection claim also presents common questions. Each representative plaintiff charges that Defendants' gambling games constitute unfair practices. To succeed on this claim they must "prove an '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1185 (Wash. 2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986)). Again, these elements present several common questions: Do the gambling apps constitute "unfair" practices? Does operation of a smartphone app occur in trade or commerce? Do the purchases made by each class member constitute an "injury" under the consumer-protection law? These questions are identical for each member of the proposed class.

Given the substantial number of common questions present in both claims for the proposed Injunction Class, Rule 23(a)(2) is satisfied. *See Wilbur*, 298 F.R.D. at 667.

### C.    The claims of the proposed representatives are typical.

Rule 23(a)(3) next requires that a proposed class representative's claim be typical of those he or she seeks to represent. "Representative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1329

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   (W.D. Wash. 2015). The Court looks to whether the proposed representative has suffered a

2   similar injury to absent class members by virtue of the same conduct. *See B.E. v. Teeter*, No. 16-

3   cv-0227, 2016 WL 3939674, at *3 (W.D. Wash. July 21, 2016) (citing *Hanon v. Dataproducts*

4   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

5          This requirement is met here. The proposed class representatives, Ms. Kelly and Ms.

6   Thimmegowda, each purchased chips at one of Defendants' gambling apps, and the continued

7   operation of Defendants' illegal gambling games puts them each at risk of continued harm

8   caused by those illegal gambling games. Their claims, and the claims of the class they propose to

9   represent, turn largely on the legality of those sales, so their injuries all stem from these

10  purchases. *See Johnson v. Metro-Goldwyn-Mayer Studios, Inc.*, No. 17-cv-0541, 2018 WL

11  5013764, at *5 (W.D. Wash. Oct. 16, 2018) (typicality satisfied when every class member had

12  made similar purchase).

13         **D.      The proposed representatives and their lawyers are adequate.**

14         "To determine whether named plaintiffs will adequately represent a class, courts must

15  resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest

16  with other class members and (2) will the named plaintiffs and their counsel prosecute the action

17  vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.

18  2011).

19         First, there are no conflicts of interest here. The claims of the proposed representatives

20  turn largely on proof that the gambling games they played are unlawful and unfair under

21  Washington law. They and each member of the class seek similar relief. As the representatives'

22  advance their interests they will simultaneously advance the interests of absent class members.

23  *See Buus v. Wamu Pension Plan*, 251 F.R.D. 578, 586 (W.D. Wash. 2008) (no conflict of interest

24  where "the vast majority of class members (if not all class members) will benefit from the

25  litigation if it is successful"); *Walters v. Reno*, No. 94-cv-1204, 1996 WL 897662, at *6 (W.D.

26  Wash. Mar. 13, 1996) (representatives adequate when "they are interested and involved in

27

Pl's Mot. For Class Cert and PI
Case Nos. 15-cv-612, 19-cv-199 - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    obtaining relief"). Neither do any conflicts threaten to hinder the proposed class's legal

2    representatives.

3           There also can be no doubt that the proposed representatives will vigorously prosecute

4    this action. Each proposed representative believes they were taken advantage of by Defendants'

5    predatory practices, and that Defendants should be enjoined from taking advantage of other

6    members of the Injunction Class. *See* Kelly Decl. ¶ 7; Declaration of Manasa Thimmegowda

7    ("Thimmegowda Decl.") ¶ 3. Each has also lost a substantial sum of money at Defendants'

8    casino games. *See* Kelly Decl. ¶ 7; Thimmegowda Decl. ¶ 3. And each understands that she is a

9    fiduciary to the class, and that her duties will involve producing documents and sitting for a

10   deposition. *See* Kelly Decl. ¶ 8; Thimmegowda Decl.  ¶ 4. That is more than enough here. *See*

11   *McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 696 (W.D. Wash. 2010).

12          The representatives' chosen counsel, lawyers from Edelson PC, also are adequate.

13   Edelson attorneys developed these cases and have now successfully prosecuted three separate

14   appeals over issues arising in these litigations. *See Kater v. Churchill Downs Inc.*, 886 F.3d at

15   789; *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019); *Benson v. Double Down*

16   *Interactive, LLC*, No. 18-36015, 2020 WL 468422, at *2 (9th Cir. Jan. 29, 2020). They have an

17   unparalleled substantive knowledge regarding the merits of these cases and have otherwise

18   proven their adequacy by litigating several complex motions in these and other related cases.

19   More generally, Edelson PC attorneys have over the last decade proven their mettle across the

20   consumer class action space, in which they have achieved landmark decisions and secured

21   groundbreaking settlements—including the recently-announced $550 million (all-cash)

22   consumer class action settlement against Facebook, Inc. *See* Natasha Singer & Mike Isaac, New

23   York Times, *Facebook to Pay $550 Million to Settle Facial Recognition Suit* (Jan. 29, 2020),

24   *available at* https://nyti.ms/2GLtY6V.

25          **E.      Identical injunctive relief is appropriate across the class.**

26          Finally, to satisfy Rule 23(b)(2), Plaintiffs must demonstrate that "the party opposing the

27   class has acted … on grounds that apply generally to the class, so that final injunctive relief or

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1   corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

2   23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

3   remedy warranted—the notion that the conduct is such that it can be enjoined or declared

4   unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v.*

5   *Dukes*, 564 U.S. at 360.

6          Here, a single injunction will do. Plaintiffs seek an order enjoining Defendants from

7   selling their virtual casino chips, which will apply to all class members. These sales, Plaintiffs

8   contend, lead to losses at unlawful gambling games, and, more importantly, are offensive to

9   Washington public policy. Both of the statutes under which Plaintiffs have brought suit authorize

10  such relief, and, indeed, Washington's gambling statute mandates it. The Ninth Circuit has

11  explained that Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek

12  uniform injunctive or declaratory relief from policies or practices that are generally applicable to

13  the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Defendants' practice

14  here—the sale of virtual casino chips in furtherance of unlawful gambling games—is uniform

15  across the proposed class.

16         The Court should certify the proposed Injunction Class.

17  **II.      THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION.**

18         In addition to requesting certification of the proposed Injunction Class, Plaintiffs move

19  for entry of the following preliminary injunction:

20              Pending final disposition of these cases, Defendants are enjoined
               from selling—from within Washington or to individuals located in
21              Washington—virtual casino chips or coins, or other virtual tokens
               or credits, for use in virtual slot machines or other simulated
22              gambling in internet-based casino-style apps, including, but not
23              limited to, Big Fish Casino and Jackpot Magic Slots.

24         "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

25  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

26  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

27

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 - 14

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). But when injunctive relief is authorized by statute, irreparable harm is presumed when the plaintiff demonstrates a likelihood of success on the merits. *See Antonetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010); *Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262, 1278 (D. Idaho 2019); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 859-60 (N.D. Cal. 2011). Plaintiffs in both actions allege two statutory claims for relief under which injunctive relief is authorized: Washington's gambling statute, *see* RCW 9.46.250(1) ("all gambling premises are common nuisances and shall be subject to abatement by injunction or as otherwise provided by law"), and Washington's Consumer Protection Act, *see* RCW 19.86.090 (permitting an "action … to enjoin further violations"). As Plaintiffs demonstrate below, because they are likely to succeed on their claims, they are entitled to a presumption of irreparable harm.

A.    **Plaintiffs are likely to succeed on their injunction claims.**

i.    **Washington Gambling Statute**

First, Plaintiffs are likely to succeed on their injunction claim under the Washington gambling statute.[6] Under that statute, all "gambling premises" are deemed nuisances subject to abatement by injunction. RCW 9.46.250(1).[7] Plaintiffs are likely to succeed in proving that Defendants operate a "gambling premises."

"Gambling premises" is defined as "any building, room, enclosure, vehicle, vessel or other place used or intended to be used for professional gambling." RCW 9.46.0249. "Professional gambling" is further defined as "knowingly engag[ing] in conduct which

---

[6]    In the event that any defendant objects that a finding of a likelihood of success would present one-way intervention concerns, Plaintiff respectfully requests the opportunity—before the injunction motion is adjudicated—for subsequent briefing on whether the objection actually raises any "one-way intervention" problems.

[7]    Although Plaintiffs have suffered harm from Defendants' operation of an unlawful gambling premises, such a showing is not necessary to obtain an injunction under Washington's gambling statute. Unlike general nuisance suits, a plaintiff seeking abatement of a gambling nuisance need not establish any particular injury to themselves. *Compare* RCW 7.48.210 ("A private person may maintain a civil action for a public nuisance, if it is specially injurious to himself or herself but not otherwise.") *with* RCW 9.46.250(1) ("The plaintiff in any action brought under this subsection against any gambling premises need not show special injury.").

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   materially aids any form of gambling activity." RCW 9.46.0269(1)(a). Such material aid

2   expressly includes "conduct directed toward the creation or establishment of the particular game

3   … or activity involved, toward the acquisition or maintenance of … equipment or apparatus

4   therefor, toward the solicitation or inducement of persons to participate therein, toward the actual

5   conduct of the playing phases thereof, … or toward any other phase of its operation." RCW

6   9.46.0269(2).

7        Plaintiffs are also likely to succeed in establishing that Defendants' Washington-based

8   employees "materially aid[]" in the gambling activity of Big Fish Casino such that their Seattle

9   headquarters is a "building . . . used for professional gambling," RCW 9.46.0269(1)(a). The

10  Ninth Circuit has already concluded that "Big Fish Casino falls within Washington's definition

11  of an illegal gambling game," *Kater*, 886 F.3d at 788. Moreover, Plaintiffs are likely to succeed

12  in establishing, among other things, that: (1) Defendants' customer-facing employees in Seattle,

13  including Big Fish Games VIP Host Byron Scott, "solicit[ed] or induc[ed]" members of the

14  Injunction Class into purchasing hundreds of millions of dollars of virtual chips within Big Fish

15  Casino and Jackpot Magic Slots;[8] that Defendant Big Fish Games "creat[ed]" or "establish[ed]"

16  Big Fish Casino from Big Fish Games' Seattle-based headquarters;[9] and (3) Big Fish Games'

17  July 2018 acquisition of 187,000 square feet of office space in Seattle's Pioneer Square

18

19

20  [8]     *See* RCW 9.46.0269(2) (material aid of professional gambling includes conduct directed
    toward "the solicitation or inducement of persons to participate" in professional gambling); *see*
21  *also* **Exhibit 4**, Letter from Suzie Kelly to the Washington State Gambling Commission ("Big
    Fish Casino assigned me a personal VIP host, Byron Scott. Byron personally called me; sent me
22  his direct email address; responded to all of my emails (in the beginning) within minutes … He
    sent me free chips regularly, although sometimes he and other VIP hosts told me that I hadn't
23  spent enough money recently for them to be allowed to send me any … When I would ask Big
    Fish Casino to ban my account, or ban my credit card, or say that I thought I needed to take a
24  break from playing because of how much money I was spending, Byron would tell me how
    much he and the other VIP hosts would miss me, and that they would be sad to see me go.").
25  [9]     *See* RCW 9.46.0269(2) (material aid of professional gambling includes conduct directed
26  toward "the creation or establishment of the particular game, contest, scheme, device or activity
    involved" in professional gambling); *see also* "Big Fish Casino Announced!," *available at*
27  https://www.bigfishgames.com/blog/big-fish-casino-announced/ (Aug. 16, 2012).

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 - 16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    constitutes an "acquisition or maintenance of premises" meant to aid the operation of Big Fish

2    Casino and Jackpot Magic Slots.[10]

3        Additionally, the statutory definition of "gambling premises" further states that "any

4    place where a gambling device is found shall be presumed to be intended to be used for

5    professional gambling." RCW 9.46.0249. "Gambling device" is defined as including "[a]ny

6    device or mechanism the operation of which a right to … credits … or other things of value may

7    be created, in return for a consideration, as the result of the operation of an element of chance,

8    including, but not limited to slot machines … and other electronic games of chance; any device

9    … designed primarily for use in connection with professional gambling; and … any subassembly

10   or essential part designed or intended for use in connection with any such device." RCW

11   9.46.0241.

12       Plaintiffs are likely to succeed in establishing that Defendants' Seattle headquarters is a

13   gambling premises because they are likely to establish that crucial Big Fish Casino hardware and

14   software is operated there. *See, e.g.*, Big Fish Games' LinkedIn Job Posting for "System

15   Reliability Engineer," *available at* https://www.linkedin.com/jobs/view/system-reliability-

16   engineer-at-big-fish-games-1714278460/ (last visited Feb. 20, 2020) (describing an "e-commerce

17   environment with about 2500 servers" and identifying one responsibility as "help migrat[ing] *on-*

18   *premise* workloads to public cloud) (emphasis added). In addition, Plaintiffs are likely to succeed

19   in establishing that it is a gambling premises because gambling devices are found there. Either

20   way, Plaintiffs are likely to succeed on their claim for an injunction under the Washington

21   gambling statute.

22

23

24   [10]    *See* RCW 9.46.0269(2) (material aid of professional gambling includes conduct directed
     toward "the acquisition or maintenance of premises, paraphernalia, equipment or apparatus" for
25   professional gambling); *see also* Paxtyn Merten, *Big Fish Games moves HQ into renovated
     Maritime Building*, Puget Sound Business Journal (July 17, 2018), *available at*
26   https://www.bizjournals.com/seattle/news/2018/07/17/big-fish-games-maritime-building-hq-
     office-photos.html.

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

     **ii.**   **Washington Consumer Protection Act**

2

   Plaintiffs also are likely to succeed on their claim for injunctive relief under the

3 Consumer Protection Act. A person injured by an "unfair or deceptive act[] or practice[]" under

4 the act can seek an injunction against further violations. RCW 19.86.020; 19.86.090. Plaintiffs

5 are likely to succeed on this injunctive claim because they will be able to show that Defendants'

6 conduct is a prohibited "unfair practice" that harmed them.

7

   "To prevail on a CPA action, the plaintiff must prove an '(1) unfair or deceptive act or

8 practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

9 his or her business or property; (5) causation.'" *Klem*, 295 P.3d at 1185 (quoting *Hangman*

10 *Ridge*, 719 P.2d at 533). Plaintiffs easily satisfy these requirements.

11

   First, an "injury to plaintiff" includes monetary losses, which each member of the

12 proposed Injunction Class has suffered given that each has purchased chips from Big Fish Casino

13 or Jackpot Magic slots and that purchased chips are lost, on average, within three days of

14 purchase. *See* Churchill Downs' 2017 10-K Filing, available at https://bit.ly/2V6unJq; *Panag v.*

15 *Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889-90 (Wash. 2009). Likewise, there should be little

16 dispute that class's financial injury was the proximate cause of Defendants' operation of casino

17 gambling apps, which is the practice Plaintiffs allege is unfair. *See Indoor Billboard/Washington,*

18 *Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 22 (Wash. 2007) (establishing

19 proximate cause as the standard of causation). Third, the "public interest impact" element can be

20 met by showing "that additional plaintiffs have been or will be injured in exactly the same

21 fashion." *Hangman Ridge*, 719 P.2d at 538. Here, Defendants' operation of their casino

22 gambling apps has harmed thousands of individuals. The Washington gambling statute also

23 contains a legislative declaration that "the public policy of the state of Washington on gambling

24 is … to promote the social welfare of the people by limiting the nature and scope of gambling

25 activities and by strict regulation and control," RCW 9.46.010, further evidencing the public

26 interest impact of Defendants' activities. *See Hangman Ridge*, 719 P.2d at 538 (noting that the

27 public interest element could be satisfied where the relevant conduct is prohibited by a statute

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   that contains a declaration of public impact). And, fourth, there can be little doubt that

2   Defendants' conduct occurs "in trade or commerce," an element satisfied by, among other things,

3   their sale of virtual casino chips. *See* RCW 19.86.010(2), (3).

4        The only remaining question, then, is whether Plaintiffs are likely to show that

5   Defendants' operation of their casino gambling games is an unfair practice. "Unfair" practices

6   are those that cause substantial injury to the public without countervailing benefits, or which are

7   immoral, unscrupulous, or offensive to public policy. *See Blake v. Federal Way Cycle Center*,

8   698 P.2d 578, 583 (Wash. Ct. App. 1985). Plaintiffs are likely to establish that Defendants'

9   actions fit this bill. As explained above, Plaintiffs are likely to establish that the operation of

10  these games is offensive to Washington public policy, and, indeed, unlawful under Washington

11  law absent a license from the State. *See* RCW 9.46.010. Plaintiffs also are likely to establish that

12  Defendants' casino gambling apps produce few if any benefits to society. And as the mountain of

13  evidence offered in support of this motion already demonstrates, these gambling apps are

14  horrifyingly effective at exploiting the power of addiction to separate consumers from their

15  money. As Plaintiffs will prove at trial, that's exactly the sort of "unfair" practice that the

16  Washington legislature intended to legislate against in passing the CPA. *See Johnson v. Collins*

17  *Entm't, Inc.*, 564 S.E.2d 653, 665-67 (S.C. 2002) (operation of video poker machines was an

18  "unfair practice" under equivalent South Carolina statute), *overruled on other grounds Proctor v.*

19  *Whitlark & Whitlark, Inc.*, 778 S.E.2d 888 (S.C. 2015); *Modernistic Candies v. FTC*, 145 F.2d

20  454, 455 (7th Cir. 1944) ("The device used in the case at bar is too apparently allied with the

21  purpose of merchandising by gambling to appeal to a court as being a fair trade practice.").

22       Of course, it isn't just that, at the end of the day, these gambling apps accomplish little

23  more than moving money from individuals to the companies that run them. Instead, it is the way

24  they accomplish this. As Professor Dow Schüll laid out for the Washington Gambling

25  Commission, the games are essentially designed to mimic the addictive experience of a real

26  casino, and, indeed, are designed to give the addict the one thing he or she most wants: more

27  time on a gambling machine. *See* Dow Schüll Letter at 2. As indicated by **Figure 1** and the

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199  -  19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1   declarations from putative class members attached hereto, Defendants make money off of their

2   gambling apps largely from a small subset of particularly vulnerable players who simply can't

3   walk away from the slot machine. Indeed, this revenue structure lays bare exactly what the

4   business model at issue here is: Get as many players in the proverbial door as possible, snag

5   those who are susceptible to addiction, and milk them for all they are worth. *See* Interrante Decl.

6   ¶ 4 (Big Fish left declarant in "financial ruins"); Fair Decl. ¶¶ 2-3 (discussing playing Big Fish

7   Casino for 20 hours a day); Bennett Decl. ¶ 4 (noting the high an addict gets from winning, and

8   discussing how the Big Fish Casino manipulates that to encourage more chip purchases).

9           In other words, these games are as pernicious and predatory as it gets. Plaintiffs are likely

10  to succeed in showing that Defendants' sale of chips in these games constitutes an unfair

11  practice, and that Plaintiffs are therefore entitled to an injunction under the CPA.

12          **B.      Although unnecessary to show, Defendants' continued operation of these
13          games causes irreparable harm.**

14          As noted above, the need to demonstrate irreparable harm is obviated by that fact that

15  both the Consumer Protection Act and the gambling statute specifically allow for injunctive

16  relief. *See Antonetti*, 643 F.3d at 1175-76. But there exists irreparable harm here, in any event.

17  As the Interrante Letter demonstrates, the real-world consequences of addictions to Defendants'

18  virtual casinos can be devastating. The declarations submitted in support of a TRO in the *Kater*

19  action confirm as much: the costs of these games go well beyond money. The addiction these

20  games cause and that these companies feed interferes with a player's relationship with their

21  loved ones. *See* Jennings Decl. ¶ 8; Fair Decl ¶ 8; Doe 2 Decl. ¶¶ 2, 5; Doe 3 Decl. ¶ 2. The

22  game causes addicts to suffer from anxiety. *See* Martinez Decl. ¶ 4; Bennett Decl. ¶ 5; Doe 2

23  Decl. ¶ 5; Oliver Decl. ¶ 3. And although chip purchases can be recovered through this action, it

24  is clear that by preying on addicts these casino games are stressing the finances of vulnerable

25  people. This has significant downstream effects, both for the individual, who may have difficulty

26  making future needed purchases because their credit score has been ruined (*see e.g.*, Bennett

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    Decl. ¶ 5), and society as a whole—because, say, those who have spent their money at

2    Defendants' games may need to rely on public resources to meet their other needs. *See* Doe 4

3    Decl. ¶ 10.

4            These kinds of harms are irreparable. Ongoing interference with one's familial and

5    personal relationships is not easily quantified and cannot be remedied by an award of monetary

6    damages. The Ninth Circuit also has held that "emotional and psychological" injuries—like

7    those suffered by class members here—"cannot be adequately compensated for by a monetary

8    award after trial." *Clark v. U.S. Dist. Ct. for C.D. Cal.*, 840 F.2d 701, 710 (9th Cir. 1988); *see*

9    *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir. 1984) (listing as irreparable harms "such

10   problems as emotional distress, depression, increased drug use, decrease in feelings of a useful

11   life, … and a reduced sense of well-being"); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483

12   (C.D. Cal. 2012) (finding that plaintiffs faced irreparable injury on account of "stress, anxiety,

13   and uncertainty").

14           And while one major type of injury every class member suffers is monetary, the law

15   recognizes that crippling economic damages can be irreparable. The loss of a business, for

16   instance, is irreparable even though traditional monetary damages theoretically compensate the

17   plaintiff. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019). Class members

18   are at risk of an analogous loss every day Defendants are allowed to continue operating their

19   games, as the financial pressures placed on players by Defendants threaten players' financial

20   solvency. *See Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds* 562

21   U.S. 134 (2011) ("Moreover, the loss of one's job does not carry merely monetary consequences;

22   it carries emotional damages and stress, which cannot be compensated by mere back payment of

23   wages."). Merely recouping their direct losses from Defendants will not help cure the crippling

24   economic problems faced by addicts who cannot put Defendants' casino games down.

25           Plaintiffs—and the class members they seek to represent—are suffering irreparable

26   harms.

27

Pl's Mot. For Class Cert and PI
Case Nos. 15-cv-612, 19-cv-199  -  21

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

**C.       The balance of equities favors an injunction.**

The equities favor Plaintiffs. As before, when a statute dictates injunctive relief upon proof of a violation, as Washington's gambling statute does, the Court need not rigorously engage in a discretionary balancing, because the legislature already has accomplished that task. *See Owner Operator Independent Drivers Ass'n, Inc. v. Swift Transp. Co., Inc. (AZ)*, 367 F.3d 1108, 1111 (9th Cir. 2004). Regardless, the equities favor the preliminary relief Plaintiffs seek here.

From Defendants' perspective, an order enjoining them from selling chips would have no effect on gameplay for 90% of their user base. Indeed, they have insisted from the beginning of this litigation that their games are "free to play." Plaintiffs' requested injunction would merely ensure that Defendants' words about its games are meaningful, and that Defendants' ongoing illegal gambling scheme is halted. Given that Plaintiffs are likely to succeed on their claims anyway, a preliminary injunction would simply prevent Defendants from continuing to add to the damages they will ultimately owe to the class at the close of this litigation.

But from Plaintiffs' perspective, preliminary relief would be especially meaningful. It would provide consumers with a reprieve from the stress and anxiety Defendants' games are causing them, and would prevent crippling personal and financial ruin from occurring before Plaintiffs' likely ultimate success on the merits.

Given the significant harm an injunction would prevent, and the lack of any corresponding harm one would cause, the equities plainly favor preliminary injunctive relief.

**D.       The requested injunction is in the public interest.**

An injunction is also plainly in the public interest. In fact, Washington law specifically deems the operation of a gambling game to be a nuisance subject to mandatory abatement. *See* RCW 9.46.250. Moreover, unlicensed gambling is plainly illegal in Washington, so an injunction to prevent such gambling serves the public interest. *See* 11A Wright & Miller Fed. Prac. & Proc. *Federal Rules of Civil Procedure* § 2948.4 (3d ed.) (noting that "the public interest also may be declared in the form of a statute"); *Versaterm, Inc. v. City of Seattle*, No. 16-cv-1217, 2016 WL

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199 -  22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

4793239, at *8 (W.D. Wash. Sept. 13, 2016) (concluding that injunction that furthered policy set forth in Washington statute was in the public interest).

## CONCLUSION

For the reasons stated above, this Court should (1) certify the proposed Injunction Class, (2) appoint Suzie Kelly and Manasa Thimmegowda as representatives of the Injunction Class, (3) appoint Edelson PC as class counsel for the Injunction Class, and (4) enter the proposed preliminary injunction.

DATED this 20th day of February, 2020.

**SUZIE KELLY and MANASA THIMMEGOWDA,** individually and on behalf of all others similarly situated,

By:  Todd Logan

Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn*
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300/Fax: 415.373.9435

Alexander G. Tievsky*
atievsky@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370/ Fax: 312.589.6378

By:  Cecily C. Shiel

TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1

cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

2

3

4

*Attorneys for Plaintiffs*

5

*Admitted pro hac vice

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Pl's Mot. For Class Cert and PI
Case Nos. 15-CV-612, 19-CV-199  -  24