## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| CHERYL KATER and SUZIE KELLY, individually and on behalf of all others similarly situated, | : : : |
| | : No. 15-cv-00612-RSL |
| Plaintiffs, | : : |
| v. | : : |
| CHURCHILL DOWNS INCORPORATED, a Kentucky corporation, and BIG FISH GAMES INC., a Washington corporation, | : : : : |
| Defendants. | : : : : |

### EXPERT DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN

1.      I am the Bruce Bromley Professor of Law at Harvard Law School and a leading national expert on class action law and practice.  Class Counsel[1] seek a fee of $38.75 million, which constitutes 25% of the $155 million settlement.  Class Counsel have retained me to provide my expert opinion as to whether this request is reasonable in the context of this litigation.  After setting forth my qualifications to serve as an expert (Part I, *infra*), I state the following three expert conclusions:

- ***Class Counsel's requested percentage is consistent with the Ninth Circuit's 25% benchmark, as well as with average awards in the Circuit generally and this District specifically; while courts award lower percentages as fund sizes increase, the 25%***

---

[1] The Settlement Agreement states that "'Class Counsel' means Jay Edelson, Rafey Balabanian, Todd Logan, Alexander G. Tievsky, and Brandt Silver-Korn of Edelson PC." Class Action Settlement Agreement at ¶ 1.7, *Kater v. Churchill Downs*, No. 2:15-cv-00612-RSL (W.D. Wash. July 24, 2020), ECF No. 218-1 [hereinafter, "*Settlement Agreement*"].

***sought here is comfortably within the range of what courts have awarded for settlements of this magnitude.*** (Part II, *infra*). In common fund cases, class counsel are entitled to a percentage of the fund that their efforts created for the class. In the Ninth Circuit, 25% is the benchmark for such awards. The fee requested here is right at that benchmark. Empirical evidence demonstrates that the average fee actually awarded across the Circuit and in this District specifically is roughly 25% as well. Courts tend to approve lower percentages as fund sizes increase. A database of 1,100 cases that I maintain contains 21 settlements between $100–$200 million, with fees ranging from 5.25% to 40% and averaging 19.2%. The 25% sought here puts this request in the top quarter of those cases, but, as explained below, justifiably so.

- ***In the unique circumstances presented by this litigation effort, a lodestar cross-check is not a helpful tool by which to assess the reasonableness of the proposed percentage award.*** (Part III), *infra*). The Ninth Circuit requires courts to assess the reasonableness of a proposed percentage award according to a set of factors and encourages them to cross-check the percentage against class counsel's lodestar. Three sets of interrelated factors make Class Counsel's lodestar not particularly pertinent in the unique circumstances of this litigation: (1) this settlement is one of a set of interrelated settlements and attributing lawyering time across the set of cases to one in particular is administratively difficult; (2) the set of cases encompassed here includes a series of unsuccessful efforts, and although Class Counsel cannot be directly compensated for those, the time they put into them is not completely irrelevant to this successful outcome; and (3) Class Counsel's efforts in this set of cases encompass, *inter alia*, compensable work undertaken before administrative agencies, executive branch officials, and legislatures and accounting for that time with conventional hourly litigation rates is imprecise. The lodestar cross-check is only a means to an end, and other means – *e.g.*, the multifactor Ninth Circuit test – are better used in this unique setting.

- ***Assessing Class Counsel's percentage by the Ninth Circuit's factors supports the conclusion that the 25% request is reasonable because of the truly extraordinary risks they undertook and the remarkable results they achieved for the class.*** (Part IV, *infra*). This was an exceedingly risky set of cases: the cases did not piggy-back on a prior government investigation, nor were they the next cases applying a law regularly deployed by class counsel, but instead required the development of a new legal theory to combat a new – and pernicious – type of technological invention, the social casino. The facts involved complex issues requiring technological expertise, and the law involved the novel application of existing gambling statutes to this new type of game. Worse, not only did Class Counsel fight these cases in courts across the country, but as they did, proponents of these games attempted to compel arbitration, cram down new non-litigation dispute resolution rules on game users mid-case, and change existing gambling laws and regulations; these actions forced Class Counsel to defend their efforts in multiple arenas simultaneously, lest the entire endeavor be lost. Class Counsel shouldered all of this risk while litigating against large and rich corporations,

with seemingly bottomless coffers, yet they did so in a lean fashion without enlisting dozens of law firms to share the risk.  Despite these risks, Class Counsel have secured an absolute landmark set of settlements.  The relief is not only historic: it is available to the full class, easily claimed, with significant non-monetary changes in the defendants' practices complementing the monetary recovery.

2.       Rule 23 requires the Court to assess the reasonableness of the proposed fee in the context of this particular settlement, but Class Counsel's achievement in these social casino cases is better viewed in the aggregate.  Prior to entering academia, I was a lawyer at the national office of the American Civil Liberties Union (ACLU) for nearly a decade, during which time I pursued civil rights campaigns on behalf of minority groups.[2]  Based on that experience, it strikes me that what Class Counsel have pursued here is closer in form to a civil rights litigation campaign than it is to a series of discrete class action settlements.  Class Counsel saw an injustice – a thinly disguised form of gambling preying on those most vulnerable to addictive gambling – and they sought to fix it.  Their goal was not to win a case but to reform an entire industry, much like a civil rights campaign might aim to reform a particular type of discriminatory practice across an entire employment sector.  To accomplish this end, Class Counsel went far beyond what lawyers pursuing a simple class action case would normally do.  Class Counsel pursued multiple cases. Class Counsel pursued multiple defendants.  Class Counsel filed actions in multiple forums.  Class Counsel tested various state laws.  Class Counsel built websites to help app users avoid forced arbitration clauses, lobbied legislators and regulators, and took their efforts to the media.  When Class Counsel lost, they did not give up, but changed tactics or forums and kept going.  And they did all of this with their own funds, risking millions of dollars of their own money to end this

---

[2] *See, e.g.,* William B. Rubenstein, *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 Yale L. J. 1623 (1997).

practice.   What they have achieved so far, with these initial settlements, is an astounding accomplishment that begins to chip away at the pernicious underlying social casinos.  As I explain more fully below, it is in some ways difficult to apply conventional fee-setting principles to a litigation campaign like this, but one conclusion seems irrefutable:  Class Counsel have more than earned – even in the settlements with larger funds – a standard 25% contingency fee.

## I.
### BACKGROUND AND QUALIFICATIONS[3]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at the UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in my appended c.v.).  Much of this work concerns various aspects of class action law.  Since 2008, I

---

[3] My full c.v. is attached as Exhibit A.

have been the sole author of the leading national treatise on class action law, *Newberg on Class Actions*, and I have re-written the entire 10-volume treatise from scratch.  In 2015, I wrote and published a 600-page volume (volume 5) of the Treatise on attorney's fees, costs, and incentive awards; this is the most sustained scholarly treatment of class action attorney's fees and has been cited in numerous federal court fee decisions.  For five years (2007–2011), I published a regular column entitled "Expert's Corner" in the publication *Class Action Attorney Fee Digest*.  My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

     5.     My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs.  For each of the past ten years, the Judicial Panel on Multidistrict Litigation (JPML) has invited me to give a presentation on the current state of class action law at the annual MDL Transferee Judges Conference, and I have often spoken on the topic of attorney's fees to the MDL judges.  The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*.  The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop.  The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*.  In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section.  I am on the Advisory Board of the publication *Class Action Law Monitor*.  I have often presented continuing legal education programs on class action law at law firms and conferences.

6.     My teaching focuses on procedure and complex litigation.  I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation.  I have received honors for my teaching activities, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.     My academic work on class action law follows a significant career as a litigator.  For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union (ACLU) in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States.  I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.  I therefore have personally initiated and pursued complex litigation, including class actions.

8.     I have been retained as an expert witness in roughly 85 cases and as an expert consultant in about another 30 cases.  These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification, to the reasonableness of settlements and fees, to the preclusive effect of class action judgments.  I have been retained by counsel for plaintiffs, for defendants, for objectors, and by courts:

- From 2018–2020, I served as an expert consultant to the Court on complex class action and fees issues in the national opioid MDL, pending in the United States District Court for the Northern District of Ohio.

- In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me as an expert witness on certain attorney's fees issues in the NFL concussion litigation.  In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[4]

- In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[5]

9.      One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases.  As part of my scholarly work on class action law, I have created and maintain a database containing data on more than 1,000 class action lawsuits.  Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* (CAAFD).  CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues, and reported on 1,187 unique court-approved state and federal class actions.  For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous data on case and settlement/judgment administration.  In creating the database from the CAAFD

---

[4] *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

[5] *See In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd sub nom. DeValerio v. Olinski*, 673 F. App'x 87 (2d Cir. 2016).

reports, my research team cross-checked the accuracy of a subset of federal reports against source documents from PACER; we found only one error – an understatement of the settlement benefit value by 2% – in 726 data fields, or fewer than 0.15% of fields.  I am therefore confident about the accuracy of the data in my database and use it regularly as a source for my scholarship and expert witness work.

10.     Courts have often relied on expert witness testimony in fee matters.[6]

11.     I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph, above.  I am being compensated for providing this expert opinion.  I was paid a flat fee in advance of rendering my opinion, so my compensation is in no way contingent upon the content of my opinion.

12.     In analyzing these issues, I have discussed the case with the counsel who retained me.  I have also reviewed documents from this set of litigations, a list of which is attached as Exhibit B.  I have also reviewed the case law and scholarship relevant to the issues herein.

---

[6] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-02529 MMM, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All v. Astrazeneca Pharm. L.P.*, No. CIV.A. 05-0269 BLS 2, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

**II.**
**WHY 25% IS QUANTITATIVELY REASONABLE**

13.     The starting point in analyzing the reasonableness of a proposed percentage award is consideration of the percentage itself.   Ninth Circuit law directs district courts using the percentage method to apply a benchmark approach that starts from the presumption that a 25% award is reasonable.[7]  Class Counsel seek a fee of $38.75 million, which constitutes precisely the benchmark 25% of this $155 million common fund.

14.     A variety of empirical evidence demonstrates that Class Counsel's requested 25% is consistent with fee awards in this Circuit, and District:

- As just noted, in this Circuit, 25% is the benchmark, or normal, fee.[8]

- Empirical evidence from one study demonstrated that the mean award for all settlements in the Ninth Circuit in a two-year period (2006–2007) was 23.9%.[9]

- Empirical evidence from a second study demonstrated that, in common fund cases between 1993–2008, the mean percentage award in the Ninth Circuit was 25%.[10]

- Empirical research from a third study demonstrated that, in common fund cases between 2009–2013, the mean percentage award in the Ninth Circuit was 26%[11] and in the Western District of Washington specifically 24%.[12]

---

[7] *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").

[8] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002).

[9] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 836 tbl.9 (2010).

[10] Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 260 tbl.4 (2010) [hereinafter "Eisenberg & Miller II"].

[11] Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 tbl.3 (2017) [hereinafter "Eisenberg & Miller III"].

[12] *Id.* at 950 tbl.2.

- I have reported that in my dataset, the mean award in the Ninth Circuit is 24.5%;[13] for purposes of this Declaration, my research assistants identified 12 common fund cases in my database from the Western District of Washington and the average award across these 12 cases is 26.98%.

15.     A variety of empirical evidence demonstrates that percentage awards tend to decrease as the size of the fund increases.[14]  The effect is easily demonstrated in the aggregate,[15] but pinning down percentage awards for this level of settlement ($155 million) is slightly more complicated:

- One study divided settlements by size into ten tranches and found that the mean award in the tranche relevant here (settlements between $69.6 million and $175.5 million) was 19.4%.[16]

- A later version of that study, using the same methodology, found that the mean award for the largest-funds tranche (settlements over $67.5 million) was 22.3%.[17]

- A third study, using the same methodology, found that the mean award in the top tranche (settlements over $72.5 million) was 18.4%.[18]

- That third study then broke the top tranche into five sub-tranches, with the relevant tranche ($100–$250 million) having a mean award of 17.9%.[19]

The average of these four data points is 19.5%, roughly a 22% "discount" from the benchmark and normally awarded 25%.

---

[13] *See* 5 William B. Rubenstein, *Newberg on Class Actions* § 15:83 tbl.2 (5th ed. & Supp. 2020) [hereinafter *Newberg on Class Actions*].

[14] This is referred to as "sliding scale" (*id.* at § 15:80) or "mega-fund" (*id.* at § 15:81) approach.

[15] *See* 5 *Newberg on Class Actions*, *supra* note 13, at § 15:81 Graphs 1–2.

[16] Eisenberg & Miller II*, supra* note 10 at 265 tbl.7.

[17] Eisenberg & Miller III, *supra* note 11, at 948 & fig.5.

[18] Fitzpatrick, *supra* note 9, at 839 tbl.10.

[19] *Id.* at 839 tbl.11.

16.     In my own dataset, there are 22 similarly sized settlements ($100–$200 million). The average percentage award across 21 of these settlements is 19.19%.[20]  The 21 cases in my database range from a low of 5.25% to a high of 40%, with 10 cases having fee awards at or above 20% and six with fee awards at or above 24%.  These data are depicted in Graph 1, below.

**GRAPH 1**
**RANGE OF FEE AWARDS IN $100–$200 MILLION**
**COMMON FUND SETTLEMENTS**



As the Court can see, Class Counsel's proposed 25% fee (the red bar) is at the higher end of this range, but fully within it and consistent with roughly half the cases in the comparable set.[21]

---

[20] I have excluded the 22nd case because the percentage award was calculated against potential benefits to a class in a way that amounted to 0.6% of those potential benefits and hence the Court's fee analysis was largely lodestar-driven.

[21] If the Court considers Class Counsel's fee across all three current settlements, the total of the settlements ($199.5 million) falls within this same $100-$200 million range, so the prior points remain pertinent and provide quantitative justification for the request.  More broadly, in my database, there are 15 cases with settlement funds ranging from $150 million to $250 million (which puts the $199.5 million total in the middle of the range) and the fees in that group similarly range from 3.2% to 40%, with six above 22%, and they similarly average in the high teens

17.     The data points presented in the prior paragraphs support the conclusions that Class

Counsel's requested fee of 25% of the common fund is (i) commensurate with the Ninth Circuit's

benchmark; (ii) consistent with the average courts actually award across the Ninth Circuit; (iii)

consistent with the average courts have awarded here in the Western District; and (iv) within –

though at the higher end of – the range of percentages awarded in cases with funds in the $100-

$200 million range.

### III.
### WHY A LODESTAR CROSS-CHECK IS UNHELPFUL
### IN THE UNIQUE CIRCUMSTANCES OF THIS CASE

18.     Courts in the Ninth Circuit may check the reasonableness of the percentage sought

against class counsel's hours and rates – that is, undertake a "lodestar cross-check" –  but such an

approach is discretionary.  While long holding that a lodestar cross-check "may provide a useful

perspective on the reasonableness of a given percentage award,"[22] and "encourag[ing]"[23] District

Courts to undertake one, the Circuit has "consistently refused to adopt a crosscheck

requirement,"[24] and just this past September, the Circuit refused to "do so once more."[25]

---

(18.26%).  Thus, viewing the settlements as a whole leads to substantially similarly quantitative
conclusions and of course precisely the same qualitative conclusions set forth in Part III, *infra.*

[22] *Vizcaino*, 290 F.3d at 1050.

[23] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also
encouraged courts to guard against an unreasonable result by cross-checking their calculations
against a second method.").

[24] *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020).

[25] *Id.*

19.     In my scholarship, I have consistently urged courts to engage in a lodestar cross-check, believing it is the single most important backstop against excessive fees in most cases.[26] Other scholars and some courts disagree,[27] expressing the general concerns that a lodestar cross-check recreates all of the problems that prompted courts to move away from a lodestar method to a percentage method.[28]  For example, basing a fee on counsel's hours can be time consuming for the lawyers and judiciary, may incentivize counsel to run up their hours unnecessarily, and may accordingly misalign the lawyers' incentives from those of their clients, prolonging recovery and deferring the class's compensation.[29]

20.     Beyond these general concerns about the lodestar cross-check, courts in the Ninth Circuit have found the tool inapplicable or unhelpful in certain specific situations.  For example, Ninth Circuit law suggests that state fees law should apply in diversity cases such as this[30] and

---

[26] *See* 5 *Newberg on Class Actions*, *supra* note 13, at § 15:86.

[27] *See id.* (examining costs and benefits of lodestar cross-check).

[28] For a discussion of this history, *see id.* at § 15:64.

[29] *See id.* at § 15:65 (examining costs and benefits of percentage and lodestar fee methods).

[30] *See, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."); *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the *Erie* doctrine and apply to actions pending in federal district court when the fee award is connected to the substance of the case." (internal quotation marks omitted)); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees.").

This position is disputed. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001) ("There is some dispute in this case as to whether state law or federal law applies to the determination of the reasonableness of attorneys fees. . . ."), *aff'd*, 290 F.3d 1043 (9th Cir. 2002). *See generally* 5 *Newberg on Class Actions*, *supra* note 13, at § 15:2 ("[T]here is a fair argument that the federal court's equity powers authorize use of federal law.  Specifically, a common fund fee award is a creature of equity, emanating from the court's control of the fund and its ability to therefore extract a fee from the fund to ensure against unjust enrichment.  To the

some states – such as Washington[31] – do not employ the cross-check in their jurisprudence.  Thus, were the Court to employ state fees law here, the lodestar cross-check would arguably not come into play.  Moreover, where class counsel quickly achieve a strong settlement, courts have sometimes eschewed a lodestar cross-check, likely on the premise that to apply one in those circumstances would incentivize counsel to continue the case (so as to run up their lodestar and lower their multiplier) despite their efficient success.[32]  Finally, where analysis of the Ninth Circuit's qualitative factors[33] provides strong support for the percentage award, some courts have held that a cross-check is unnecessary.[34]

---

extent that a federal court's equitable powers are arguably the source of the common fund fee, application of federal fees law (including calculation methods) seems appropriate and not inconsistent with the general principles underlying the so-called *Erie* doctrine." (footnotes omitted)).

[31] *See Vizcaino*, 142 F. Supp. 2d at 1302 ("Under Washington law, the percentage method, without a lodestar cross-check, should be used in common fund cases."); *Bowles v. Washington Dep't of Ret. Sys.*, 847 P.2d 440, 451 (Wash. 1993) (explaining that Washington courts "apply the percentage of recovery approach" in common fund cases without mentioning a lodestar cross-check).

[32] *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) ("Furthermore, in accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement.").

[33] These are set forth in ¶ 23, *infra*.

[34] *Bendon v. DTG Operations, Inc.*, No. EDCV160861FMOAGRX, 2018 WL 4976511, at *8 (C.D. Cal. Aug. 22, 2018), *judgment entered,* No. EDCV160861FMOAGRX, 2018 WL 4959047 (C.D. Cal. Aug. 22, 2018) ("Consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the Gross Settlement Amount. The court, therefore, is satisfied that a lodestar 'cross-check' is not required."); *see also Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV122016FMOANX, 2014 WL 12586117, at *10 (C.D. Cal. Dec. 22, 2014) (similar); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004FMOCWX, 2014 WL

21.     While I am generally skeptical about arguments against a lodestar cross-check,[35] there are a variety of interrelated circumstances specific to this litigation that makes utilization of the device particularly difficult:

- *First*, this settlement does not stand alone but is one of a group of current (and possibly future) settlements and/or judgments Class Counsel will achieve against social casinos. In this multiple case situation, it is often difficult to attribute lodestar to any one specific case, rendering application of a lodestar cross-check problematic.[36]  One solution would be to wait until all of the cases are concluded and then determine a final fee – against a total lodestar – at that time.[37]  Such an approach may solve the allocation problem, but it raises others:  it does not work until the final lodestar can be calculated for all the cases, but neither the earlier-settling classes (nor counsel) should be made to await their recoveries until that time and it can be further complicated when the multiple cases are filed across multiple forums with different approaches to fees.  Thus, here, that final rationalization approach is not possible, as these social casino settlements involve multiple cases (some still ongoing), in multiple jurisdictions, against multiple different defendants, with the potential that settlements may ultimately be run through different courts.

- *Second*, Class Counsel's work in the social casino space not only encompasses a number of settlements, it also encompasses a number of unsuccessful matters.

---

12579822, at *13 (C.D. Cal. July 14, 2014) (similar); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013) (similar).

[35] I have argued that these concerns are somewhat exaggerated and can be minimized, *see* 5 *Newberg on Class Actions*, *supra* note 13, at § 15:86, a position the California Supreme Court has endorsed.  *See Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016) ("We tend to agree with the amicus curiae brief of Professor William B. Rubenstein that these concerns [about the lodestar cross-check] are likely overstated and the benefits of having the lodestar cross-check available as a tool outweigh the problems its use could cause in individual cases.").  Regardless, this core debate about the efficacy of a cross-check recedes in relevance in this case for the reasons outlined in this textual paragraph.

[36] *See, e.g.*, *Bendixen v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-05274-RBL, 2013 WL 2949569, at *3 (W.D. Wash. June 14, 2013) (noting, in a multiple-case situation, although undertaking a cross-check on a global basis, that:  "In terms of a lodestar crosscheck, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across the country for more than a decade . . . have prevented Settlement Class Counsel from segregating their fees and expenses into a 'Washington-only' category or similar categories for other states.").

[37] *Id.*

15

Contingent fee lawyers do not get paid for losing cases.  But the question presented by the lodestar cross-check is not whether to *pay* class counsel, but what hours of work to recognize in checking the level of counsel's proposed fees in the cases that reach a settlement or judgment for the class.  Thus, in the fee-shifting context, the Ninth Circuit has acknowledged that some hours prevailing counsel expend are spent on unsuccessful arguments, but that such time may nonetheless be compensable if it contributed to the ultimate victory.[38]  Similarly, here there is a non-trivial argument that (1) in a litigation campaign like this one (2) the hours class counsel expended on behalf of social casino users that proved unsuccessful (3) nonetheless contributed so significantly to the settlements that they did achieve that (4) these hours are appropriately considered as part of a cross-check.[39]  At the least, it is fair to acknowledge that the fact that a conventional cross-check might *not* account for these hours renders such a cross-check less than optimal on facts such as these.

- *Third*, this case does not involve solely litigation activities.  Class Counsel were forced to work on behalf of the class in multiple forums, including legislative arenas and executive branch administrative proceedings, and across various states.  Courts have not hesitated to award fees for such activities in appropriate circumstances,[40] but including hours and rates for non-litigation work in a litigation-related lodestar cross-

---

[38] *Church of the Holy Light of the Queen v. Holder*, 584 Fed. Appx. 457, 459 (9th Cir. 2014) ("'Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war … [L]osing is part of winning.' … [Plaintiff's] work on appeal was 'a necessary step to ultimate victory,' and [plaintiff] is 'entitle[d] to attorney's fees even for the unsuccessful stage' of litigation." (first and second alteration in original) (quoting *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991))).

[39] *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*,  No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) (noting that hours spent on parallel unsuccessful case were not compensable, but because that effort "yielded significant evidence that Counsel were able to use in this case . . . [i]t is appropriate to consider, to some extent, the time Class Counsel spent litigating that case" in undertaking a lodestar cross-check).

[40] *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002) (holding that it is within a court's "equitable power to award fees for work that helped create the fund . . . outside the strict confines of the litigation immediately before the court"); *id.* at 1121 n.3 (noting that in determining whether attorneys' time is compensable, "[t]he level of relatedness to the ongoing litigation is of less importance than the extent to which the non-litigation work was calculated to—and in fact did—bring about the common fund presently under the district court's control"); *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" (quoting *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)).

check risks an uncomfortable level of imprecision even within that back-of-the-envelope endeavor.

22.      Given the complications that these factors present to application of the lodestar cross-check, it is helpful to remember that a lodestar cross-check is a means to an end – ensuring against an excessive fee – but it is not the only means to that end, nor always the best means to that end.  In the particular circumstances present here, it is my expert opinion that application of the lodestar cross-check raises as many questions as it solves and that the reasonableness of Class Counsel's proposed fee is better assessed not by this discretionary check, but according to the mandatory Ninth Circuit factors.

## IV.
## WHY 25% IS QUALITATIVELY REASONABLE

23.      While a lodestar cross-check is optional, the Ninth Circuit requires courts to consider the following factors in assessing the reasonableness of a proposed fee:

> (1) the results achieved for the class; (2) the risk of the litigation (including complexity of litigation); (3) benefits generated by class counsel beyond the settlement fund; (4) the comparison between the proposed fee and market rate; and (5) the burdens of the litigation for class counsel (including contingency basis, length of litigation, expenses to counsel, and opportunity cost of foregone work).[41]

I distill these five factors into three considerations:[42] (i) Part II, *supra*, addressed prong 4's comparison of the percentage sought to percentages normally awarded (the "market rate"); (ii) Part

---

[41] *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048–50 (9th Cir. 2002).

[42] *See also Farrell v. Bank of Am. Corp., N.A*., 827 F. App'x 628, 630 (9th Cir. 2020) (characterizing "the most pertinent factors influencing reasonableness" as "(1) the extent to which counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; and (4) the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work)") (cleaned up).

IV(A), *infra*, addresses the risks and burdens of the litigation, as per prongs 2 and 5; and (iii) Part IV(B), *infra*, contemplates the litigation's results and benefits, as per prongs 1 and 3.   In undertaking this analysis, I utilize the phrase "this litigation" or "these cases" or "this set of cases" when my points apply across Class Counsel's litigation campaign and affect all three current settlements in similar ways; where appropriate, I pin specific points to this case itself.

## A.
### *Class Counsel Took Extraordinary Risks*

24.     Eleven independent factors demonstrate the riskiness of these cases:[43]

- ***These cases were risky because they did not piggy-back on a government enforcement action.***   Many class actions follow on the heels of government enforcement actions, such as securities class actions that follow SEC enforcement actions or antitrust cases that follow Department of Justice actions.   Class counsel have a lower risk in such cases as their investigative costs may be lower, as they may be able to employ non-mutual offensive issue preclusion to establish liability without litigation,[44] and/or as the defendant has a natural incentive to settle with the government, easing the road to settlement with the class.   Not these cases: no government agency has pursued the social casino industry.   Class Counsel detected, investigated, theorized, and executed the entire litigation campaign from scratch.

- ***These cases were especially risky because of their novelty.***   Many class actions are pursued by lawyers who specialize in particular areas (securities, antitrust, consumer, etc.) and can economize their practices and lower their risks by repeating efforts from one case to the next.   Not this set of cases: here Class Counsel have taken existing gambling laws and attempted – for the first time in American history – to apply them to the technologically novel social casino industry.   This application had no precedent and Class Counsel have accordingly spent significant time litigating the applicability of state gambling laws throughout the country to these social casinos.

- ***These cases were especially risky because of their factual and legal complexity.***   All class action cases are typically more complex than the average contingent fee case – that is why the field is known as "complex litigation."   But many class actions involve straightforward enforcement of a well-worn statute.   Not this set of cases: the novel

---

[43]   The point is not to look at Counsel's risks *ex post*, but rather to demonstrate the strength of the achievement compared to the risks *ex ante*.

[44]   *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

legal issues outlined in the prior bullet point involve complex questions, as do the factual issues presented by these social casino platforms and practices.

- ***The fact that Class Counsel were unsuccessful in challenging these social casinos under other state laws is evidence of the riskiness that inhered in these successful cases.*** In assessing the riskiness of a case, courts have noted that class counsel invested time and resources in parallel endeavors that were unsuccessful and for which they were not compensated.[45] For class counsel in those circumstances, the commitment to another case after losing one case is generally a much riskier commitment. Here, Class Counsel doubled down after unsuccessful efforts in several other states, demonstrating a comfort with risk – and/or a deep commitment to this social effort – far beyond the level of risk than what most investors will tolerate.

- ***These cases were especially risky because Class Counsel litigated against large, well-funded defendants***. The defendants in this particular case[46] are very well capitalized:

---

[45] *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *5–6 (C.D. Cal. Sept. 18, 2020) (reasoning that Class Counsel's "financial risks were compounded by the fact that recovery was uncertain" because "[s]everal of ERISA excessive fee cases filed by the firm were dismissed and the dismissals were upheld by Courts of Appeal. In other cases, district courts granted summary judgment against the plaintiffs in whole or part. . . . Accordingly, the Court concludes that the great risk assumed by [Class Counsel] justifies an award of one third of the settlement fund in attorney fees." (internal citations omitted)); *Krakauer v. Dish Network, L.L.C.* No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ("Class Counsel's prior work in [a parallel unsuccessful action] illustrates the risk they assumed by litigating the present matter. In [the parallel case], Class Counsel spent over 5,000 hours on a TCPA case that the named plaintiff voluntarily dismissed after the court denied class certification. While Class Counsel was able to leverage some of [that] work into the litigation of this case, it will not recover fees for the 5,000-plus hours it spent on that case.").

[46] The Settlement agreement identifies four defendants: "Big Fish Games, Inc., Churchill Downs Incorporated, Aristocrat Technologies, Inc., and Aristocrat Leisure Ltd." *Settlement Agreement*, *supra* note 1, at ¶ 1.10.

cumulatively, the defendants take in billions of dollars in annual revenue[47] and multiple defendants boast market valuations in the billions of dollars.[48]

- ***These cases were especially risky because Class Counsel litigated against some of the largest and most powerful law firms in the world***.  The defendants in this particular case exerted their financial strength by retaining high-priced counsel[49] from Covington & Burling and Orrick, Herrington, & Sutcliffe, two of the most expensive and well-respected firms in the country.  These firms rank among the most prestigious in the United States and employ over 1,000 attorneys each.[50]  Class Counsel—armed with only its own resources and 27 attorneys—faced tremendous risk litigating against such deep-pocketed, high-powered opponents.

- ***These cases were especially risky because the defendants sought to have the Washington gambling commission <u>and</u> the Washington State legislature intervene in ways that would have terminated the case.***  Class Counsel explain that, during the pendency of these actions, the defendants (1) asked the Washington State Gambling Commission to issue a ruling that their social casinos did not constitute gambling as it

---

[47] *See* Churchill Downs, Inc., *2019 Form 10-K*, at 91, https://ir.churchilldownsincorporated.com /static-files/0526f0e6-66ee-4363-8cf3-c758657a48db (showing total 2019 revenues for defendant Churchill Downs, Inc. to be \$1.329 billion); Aristocrat Leisure Limited, *2019 Annual Report*, at 9, https://ir.aristocrat.com/static-files/e97ce5b6-3289-4fd5-aa51-efca73f1c9e2 (showing total 2019 revenues for defendant Aristocrat Leisure Limited to be A\$4.4 billion); Christina Gough, *Annual Revenue of Big Games 2014-2018*, Statista, https://www.statista .com/statistics/697565/big-fish-games-revenue/#:~:text=Annual%20revenue%20of%20Big %20Fish%20Games%202014%2D2018&text=In%202018%2C%20Big%20Fish%20Games,mill ion%20U.S.%20dollars%20in%20revenues (showing total 2018 revenues for defendant Big Fish Games to be \$495 million).

[48] *See* Yahoo! Finance, *Churchill Downs Incorporated (CHDN)*, https://finance.yahoo.com/quote /CHDN/ [https://perma.cc/2Z6X-3PQ8] (accessed Dec. 2, 2020) (showing the market capitalization for defendant Churchill Downs, Inc. to be \$7.216 billion); Yahoo! Finance, *Aristocrat Leisure Limited (ALL.AX)*, https://finance.yahoo.com/quote/all.ax/ [https://perma .cc/XCM7-BWRC] (accessed Dec. 2, 2020) (showing the market capitalization for defendant Aristocrat Leisure Limited to be \$20.561 billion).

[49] Defendants had originally employed the nationally recognized boutique litigation firm, Susman Godfrey, which employs more than 100 attorneys at four offices throughout the United States.  The firm describes it practice in these terms:  "Susman Godfrey has a longstanding reputation as one of the premier firms of trial lawyers in the United States. We are often brought in on the eve of trial to 'rescue' troubled cases or to take the reins when the case requires trial lawyers with a proven record of courtroom success."  *Why Us?,* available at https://www.susmangodfrey.com/why-us/.

[50] *See* Vault, *2021 Vault Law 100*, https://www.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings.

is defined in Washington law; and (2) through their lobbying organization, introduced a series of bills in the Washington State legislature that would have altered Washington law so as to terminate these actions.[51]   Thus, Class Counsel accepted not only the normal contingency risk inherent in litigation (not knowing for a certainty how a judge or jury would rule) but also the heightened risk of having their litigation terminated by the executive or legislative branches.

- ***This particular case was risky because this defendant sought to compel arbitration and – had it prevailed – Class Counsel could not have proceeded with a class proceeding of any kind.***   Following the Ninth Circuit's landmark decision in this matter, the defendant moved to compel arbitration, arguing that their terms of use subject the plaintiffs' claims to mandatory arbitration on an individual, not class, basis.[52]   Had this motion been granted, the case would have ended, as aggregated proceedings would have been prohibited.   However, this Court rejected the motion, concluding that the defendant had waived its arbitration argument by litigating the substantive issue at the case's core through the Ninth Circuit.[53]

- ***This particular case was especially risky because, in the middle of the case, the defendants instituted technological changes whereby a pop-up "agreement" to mandatory arbitration effectively risked shutting the whole case down.***   This technological maneuver was a cutting-edge approach by which the defendants effectively "communicated" with the absent class members without Class Counsel's consent[54] and it ran the risk of scuttling this entire non-arbitration litigation.   Class Counsel were forced to fight it both in court and technologically, creating their own website so as to enable class members to opt out of the mandatory arbitration provision.

- ***These cases were especially risky because Class Counsel bore the risk of the case themselves.***   In many class actions, particularly of this length and magnitude, the class is represented by a collection of large plaintiffs' firms.[55]   This means that the lawyers

---

[51] Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, *Kater v. Churchill Downs Inc.*, Case No. 2:15-cv-00612 (W.D. Wash. July 24, 2020), ECF No. 217 at 5-6 [herinafter "*Preliminary Approval Brief*"].

[52] Defendant's Motion to Compel Arbitration, *Kater v. Churchill Downs Inc.*, Case No. 2:15-cv-00612 (W.D. Wash. July 20, 2018), ECF No. 60 at 2 (reprinting terms).

[53] *Kater v. Churchill Downs Downs Inc.*, No. 3:15-CV-00612-RBL, 2018 WL 5734656, at *6 (W.D. Wash. Nov. 2, 2018) (concluding that defendant "waived its right to arbitration when it took its first bite of the apple and chewed thoroughly for over three years").

[54] On defendant pre- and post-certification communications with absent class members, see 3 *Newberg on Class Actions*, *supra* note 13, at ¶¶ 9:7, 9:9.

[55] *See, e.g.*, *Manual for Complex Litigation (Fourth)* § 10.22 (2004) (discussing presence of multiple counsel in complex litigation and advising judges on how to manage).

are able to spread the risk among the various firms.  Here, but for local counsel, a single class action firm (Edelson, P.C.) alone bore the significant risks outlined above.

- ***Given their commitment to these highly risky cases, Class Counsel were precluded from taking other, simpler, work.***  It is fair to conclude that Class Counsel's extraordinary devotion of time and resources to this novel and complex set of cases prevented them from pursuing simpler, bread-and-butter actions, any of which would have had a higher expectation of settlement and hence ease of recovery of a contingent fee, possibly a well-multiplied one.

25.     These eleven points demonstrate what seems incontestable: Class Counsel took large risks in litigating this case – and the other social casino cases – from inception to judgment. Like any investor that takes large risks, these attorneys are entitled to a return on their investment, so long as the risks they took paid off.  I will now turn to that analysis.

**B.**
***Class Counsel Achieved Remarkable Results***

26.     At least nine components of these cases' outcomes speak to the results Class Counsel obtained.

- ***Counsel secured a significant legal victory for these classes***.  Class Counsel engaged in a litigation campaign against these social casinos, filing cases in courts throughout the United States.  Class Counsel's success in the Ninth Circuit in this specific case was a landmark victory.  In a recent case similarly involving multiple efforts, the Ninth Circuit noted "that excepting the district court in this particular matter, no court has ever ruled for bank accountholders on the controlling legal issue," and affirmed the District Court's characterization of class counsel's efforts as demonstrating "'tenacity and great skill,' achieving a 'remarkable' result in a 'hard fought battle' despite an 'adverse legal landscape' and the 'substantial risk of non-payment.'"[56]  Surely these Class Counsel's efforts have merited similar conclusions.

- ***Counsel obtained significant monetary relief for this class***.  Put simply, $155 million is an extraordinary sum.  In my own database, I have fund information on 1,017 settlements and only 35 are larger funds than this.  These data support the conclusion that this settlement amount is in the top 3–4% of all common fund class action settlements.

---

[56] *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020).

- ***100% of this class is eligible for relief***.  The settlement agreement explains that the class, for settlement purposes, is defined as "all persons in the United States who played Big Fish Casino, Jackpot Magic Slots, or Epic Diamond Slots on or before Preliminary Approval of the Settlement" with some exclusions.[57]  In turn, the claim form enables users to submit a coded ID or to fill out a form inserting their gaming app user code.[58]  Thus, as noted in the settlement agreement, "[e]ach Class Member with an Approved Claim shall be entitled to a Settlement Payment from the Net Settlement Fund.[59]  All class members similarly benefit from the significant changes defendants will make to their applications going forward.[60]

- ***Class members will receive cash not script***.  Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.[61]  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' product . . . ."[62]  The settlements secured in these cases will deliver cash compensation directly to class members, a form of recovery that speaks highly of the cases' outcomes.

- ***Class members will receive significant cash payments***.  Not only does this specific settlement provide cash payments to class members, the payments are significant.  The motion for preliminary approval of the settlement uses three examples:  class members who have expended approximately $4,000, $40,000, and $400,000 will likely receive in the vicinity of $500–$1000, $10,000–$18,000, and $200,000–$300,000 respectively.[63]  These amounts vary from an approximate low of 12.5% of a class member's losses up to 75% for the most injured class members.[64]

- ***The claims process is straightforward***.  Class actions often end with settlements requiring class members to file claims.  The claim-filing process may often dissuade

---

[57] *Settlement Agreement*, *supra* note 1, at ¶ 1.33.

[58] Big Fish Games Settlement Claim Form, available at https://www.bigfishgamessettlement.com /submit-claim.php.

[59] Settlement Agreement, *supra* note 1, at ¶ 2.1(b).

[60] *See* text accompanying note 68, *infra*.

[61] *See* 4 *Newberg on Class Actions, supra* note 13, at §§ 12:7–12:13 (on nonpecuniary damages).

[62] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

[63] *Preliminary Approval Brief, supra* note 51, at 22–23.

[64] *Id.*

class members from making the effort, particularly in small-claim situations. The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits . . . ."[65]   In this specific case, the claim form could not be more straightforward: most class members need only fill in identifying information on a website, the manner in which they would like to receive their funds, an attestation to the veracity of the information – and then click "submit;"[66] alternatively, class members can fill out a simple claim form at the same site.[67]

- ***These cases contributed to significant changes in defendants' practices***. The prior points focus on the common funds Class Counsel secured for these classes. These lawsuits have also produced meaningful changes to the defendants' policies. In this particular case, through Class Counsel's efforts, the defendants agreed to "prospective measures" including (a) placing "resources related to video game behavior disorders within the Applications;" (b) publishing on their website a "voluntary self-exclusion policy;" and (c) enabling continued play without the requirement of continued payment.[68]

- ***The relief required significant, contested adversarial litigation against strong opposition, leaving no hint of collusion.***  A critical concern in class suits is that the class's agents might be tempted to sell out the class by agreeing to a low recovery in return for a high fee. The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements that "[a]ctive judicial oversight of the settlement process [is necessary to] prevent collusion between counsel for the class and defendant and [to] minimize the potential for unfair settlements."[69] Here, there is not a hint of collusion – this set of cases has been nothing but adversarial since its inception, encompassing nearly six years of hard-fought litigation, and then settled under the mediation auspices of a former federal judge. There is, therefore, no evidence whatsoever of Class Counsel selling out the Class's interest.

---

[65] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

[66] Big Fish Games Settlement Submit a Claim, https://www.bigfishgamessettlement.com/submit-claim.php.

[67] Big Fish Games Settlement Claim Form, https://www.bigfishgamessettlement.com/submit-claim.php.

[68] Settlement Agreement, *supra* note 1, at ¶ 2.2.

[69] *Manual for Complex Litigation (Fourth)* § 22.923 (2004) (internal quotation marks omitted).

- ***This litigation served an important public interest***. While all class action settlements assist in the government's enforcement of the law,[70] these settlements provide an important and unique public service.  Through their persistent and protected efforts, Class Counsel have helped establish legal limits to a socially destructive practice: gambling addiction.  Class Counsel's achievement transcends these particular settlements by making a contribution to the general public health of the United States.  As noted at the outset of this Declaration,[71] this litigation is as much a social mission as it is a class action settlement.

27.     These eleven risks and nine results demonstrate what seems incontestable: Class Counsel took extraordinary risks in investing substantial capital and labor in highly adversarial litigation without the promise of any easy return on that investment, and Class Counsel shouldered that risk superbly, generating important monetary and non-monetary returns for this client class specifically and for social casino users generally.

28.     I have testified that:

- The requested fee is precisely consistent with the Ninth Circuit's 25% benchmark and, while at the high end of percentages in larger fund cases, comfortably within the range of percentages courts award in cases of this magnitude.

- A lodestar cross-check is not a helpful tool by which to assess the reasonableness of counsel's proposed percentage award in the unique circumstances presented by these interrelated cases.

- The benchmark 25% award, though at the higher end for a recovery of this magnitude, is fully justified by (a) the remarkable risks that Class Counsel shouldered and (b) the extraordinary results that they achieved for the class.

December 11, 2020

_____
William B. Rubenstein

---

[70] *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.").

[71] *See* ¶ 2, *supra.*

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                  (617) 496-7320
1545 Massachusetts Avenue                          rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
    Bruce Bromley Professor of Law                                  2018-present
    Sidley Austin Professor of Law                                   2011-2018
    Professor of Law                                                 2007-2011
    Bruce Bromley Visiting Professor of Law                          2006-2007
    Visiting Professor of Law                          2003-2004, 2005-2006
    Lecturer in Law                                                  1990-1996
        *Courses:*    Civil Procedure; Class Action Law; Remedies
        *Awards*:    2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
        *Membership:*  American Law Institute; American Bar Foundation Fellow

UCLA SCHOOL OF LAW, LOS ANGELES CA
    Professor of Law                                                 2002-2007
    Acting Professor of Law                                          1997-2002
        *Courses*:    Civil Procedure; Complex Litigation; Remedies
        *Awards*:    2002 Rutter Award for Excellence in Teaching
                  Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
    Acting Associate Professor of Law                                1995-1997
        *Courses*:    Civil Procedure; Federal Litigation
        *Awards*:    1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
    Lecturer in Law                                                  1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
    Visiting Professor                                               Summer 2005

### LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
    Project Director and Staff Counsel                               1987-1995
    -Litigated impact cases in federal and state courts throughout the United States.
    -Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys
    around the country and coordinated work with private cooperating counsel nationwide.
    -Significant experience in complex litigation practice and procedural issues; appellate
    litigation; litigation coordination, planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
    Law Clerk                                                        1986-87

PUBLIC CITIZEN LITIGATION GROUP, WASHINGTON DC
    Intern                                                           Summer 1985

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
        J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
        B.A., 1982, *magna cum laude*
        Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◊   *Author,* NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019); sole author of NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022) (forthcoming))

◊   *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law and related topics (2010, 2011, 2012, 2013, 2014 (invited), 2015, 2016, 2017, 2018, 2019)

◊   *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊   *Amicus curiae,* authored *amicus* brief on proper approach to incentive awards in class action lawsuits in conjunction with motion for rehearing *en banc* in the United States Court of Appeals for the Eleventh Circuit (*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020).

◊   *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, 139 S. Ct. 1041 (2019))

◊   *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊   *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊   *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◊   *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◊   *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

**A-2**

◊   *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◊   *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

*Judicial Appointments*

◊   *Meditator.*   Appointed by the United States District Court for the Southern District of New York to mediate a set of complex issues in ongoing civil rights class action (*Grottano v. City of New York*, Civ. Action No. 15-cv-9242 (RMB) (May 29, 2020))

◊   *Expert consultant.*   Retained by the United States District Court for the Northern District of Ohio, and Special Master, as an expert consultant on class certification and attorney's fees issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civ. Action No. 1:17-md-2804 (N.D. Ohio Aug. 13, 2018; June 29, 2019; March 10, 2020))

◊   *Expert witness.*   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   *Appellate counsel.*   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016))

*Expert Witness*

◊   Submitted expert witness declarations concerning (1) reasonableness of attorney's fee request and (2) empirical data confirming robustness of class claims rate   (*In re Facebook Biometric Information Privacy Litigation,* Civil Action No. 3:15-cv-03747-JD (N.D. Cal. (2020))

◊   Retained as an expert witness on class action issues in complex mass tort MDL (*In re Roundup Products Liability Litigation,* Civil Action No. 3:16-md-02741-VC (N.D. Cal. (2020))

◊   Retained as an expert witness on issues regarding the Lead Plaintiff/Lead Counsel provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA) (*In re Apple Inc. Securities Litigation.*, Civil Action No. 4:19-cv-02033-YGR (N.D. Cal. (2020))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Amador v. Baca*, Civil Action No. 2:10-cv-01649 (C.D. Cal. February 9, 2020))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement (*In re: Columbia Gas Cases*, Civil Action No. 1877CV01343G (Mass. Super. Ct., Essex County, February 6, 2020))

◊    Submitted an expert witness declaration, and reply declaration, concerning reasonableness of attorney's fee request (*Hartman v. Pompeo*, Civil Action No. 1:77-cv-02019 (D.D.C. October 10, 2019; February 28, 2020))

◊    Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 16-MD-2724 (E.D. Pa. May 15, 2019))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request, relied upon by court in awarding fees (*Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018))

◊    Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊    Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊    Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊    Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊    Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊    Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◊    Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◊   Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◊   Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊   Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊   Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced

by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊   Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊   Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊   Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊   Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊   Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊   Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide

consumer class action settlement   (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊    Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊    Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.*, 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊    Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊    Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No.   CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊    Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◊    Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊    Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊    Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊    Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◊    Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,*Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◊    Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◊    Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts

Superior Court (2010))

◊   Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◊   Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◊   Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◊   Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◊   Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◊   Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◊   Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊   Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊   Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊   Submitted an expert witness declaration and supplemental declaration concerning common benefit fee

in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◊   Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊   Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊   Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◊   Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊   Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊   Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al*., No. 07-39 (E. D. Ky. (2007))

◊   Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊   Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊   Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◇   Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◇   Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◇   Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◇   Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◇   Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◇   Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◇   Provided expert consulting services to Harvard Law School Predatory Lending and Consumer Protection Clinic concerning complex class action issues in bankruptcy (*In re: ITT Educational Services Inc.,* Case No. 16-07207-JMC-7A (Bank. S.D. Ind. 2020))

◇   Provided expert consulting services to law firm concerning complex federal procedural and bankruptcy issues (*Homaidan v. Navient Solutions, LLC*, Adv. Proc. No. 17-1085 (Bank. E.D.N.Y 2020))

◇   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◇   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◇   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◇   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

**A-10**

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◊   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.*, Civil No. 8-04194 (E.D. Pa. (2008))

◊   Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth

Circuit (2008))

◊   Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◊   Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◊   Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◊   Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◊   Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◊   Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◊   Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◊   Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◊   Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

*Ethics Opinions*

◊   Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊   Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊   *Deconstitutionalizing Personal Jurisdiction:   A Separation of Powers Approach,* Harvard Public Law Working Paper No. 20-34, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3715068.

◊   *The Negotiation Class:   A Cooperative Approach to Class Actions Involving Large Stakeholders,* 99 TEXAS L. REV.73 (2020) (with Francis E. McGovern)

◊   NEWBERG ON CLASS ACTIONS (sole since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◊   *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊   *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊   *Supreme Court Round-Up – Part II,* 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊   *Supreme Court Round-Up – Part I,* 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊   *The Puzzling Persistence of the AMega-Fund@ Concept,* 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483 (December 2009)

◊   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

◊   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊   *2008:   The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊   *Supreme Court Round-Up,* 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊   *Fee-Shifting For Wrongful Removals: A Developing Trend?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊   *You Cut, I Choose:   (Two Recent Decisions About) Allocating Fees Among Class Counsel,* 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊   *Why The Percentage Method?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊   *Reasonable Rates: Time To Reload The (*Laffey*) Matrix,* 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊   *The "Lodestar Percentage" A New Concept For Fee Decisions?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊   *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◊   *Finality in Class Action Litigation: Lessons From Habeas,* 82 N.Y.U. L. REV. 791 (2007)

◊   *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◊   *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◊   *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◊   *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◊   *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◊   *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◊   *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◊   *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◊   *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◊   *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◊   *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◊   *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV.  2129 (2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◊   *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◊   *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◊   *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◊   *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))

*Selected Presentations*

◊  *Opioid Litigation:   What's New and What Does it Mean for Future Litigation?*, RAND Institute for Civil Justice and RAND Kenneth R. Feinberg Center for Catastrophic Risk Management and Compensation, RAND Corporation, October 22, 2020 (forthcoming)

◊  *The Opioid Crisis:   Where Do We Go From Here?"* Clifford Symposium 2020, DePaul University College of Law, Chicago, Illinois, May 28-29, 2020)

◊  *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2019

◊  *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 31, 2018

◊  *Attorneys' Fees Issues,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2018

◊  *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊  *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊  *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊  *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊  *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊  *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊  *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊  *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊  *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊  *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊  *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

**A-16**

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊   *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊   *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊   *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊   *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊   *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊   *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊   *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊   *Marks, Bonds, and Labels:   Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Attorney's Fees*

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases, relied on by the court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016).

*Consumer Class Action*

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation*, 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

*Disability*

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

*Employment*

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); (*Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

*Equal Protection*

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

*Fair Housing*

◊   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

### *Family Law*

◊   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

### *First Amendment*

◊   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

### *Landlord / Tenant*

◊   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

### *Police*

◊   Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2nd Cir. 1994))

### *Racial Equality*

◊   Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 (*Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

SELECTED OTHER PUBLICATIONS
### *Editorials*

◊   *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◊   *Play It Straight*, NEW YORK TIMES, October 16, 2004

◊   *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

◊   *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◊   *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993

◊   *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

BAR ADMISSIONS

◊   Massachusetts (2008)

◊   California (2004)

◊   District of Columbia (1987) (inactive)

◊   Pennsylvania (1986) (inactive)

◊   U.S. Supreme Court (1993)

◊   U.S. Court of Appeals for the First Circuit (2010)

◊   U.S. Court of Appeals for the Second Circuit (2015)

◊   U.S. Court of Appeals for the Fifth Circuit (1989)

◊   U.S. Court of Appeals for the Ninth Circuit (2004)

◊   U.S. Court of Appeals for the Eleventh Circuit (1993)

◊   U.S. Court of Appeals for the D.C. Circuit (1993)

◊   U.S. District Courts for the Central District of California (2004)

◊   U.S. District Court for the District of the District of Columbia (1989)

◊   U.S. District Court for the District of Massachusetts (2010)

◊   U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*Kater v. Churchill Downs Incorporated,* No. 2:15-cv-612-RSL
*Wilson v. Playtika LTD.*, No. 3:18-cv-05277-RSL
*Wilson v. Huuuge, Inc.*, No. 3:18-cf-05276-RSL
U.S. District Court for the Western District of Washington

## EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

EXHIBIT B
Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

**A.  *Kater v. Churchill Downs Incorporated*, No. 2:15-cv-612-RSL (W.D. Wash.)**

1.  Class Action Complaint, ECF No. 2
2.  Defendant Churchill Downs Incorporated's Motion to Dismiss, ECF No. 24
3.  Plaintiffs' Opposition to Churchill Downs Incorporated's Motion to Dismiss, ECF No. 32
4.  Defendant Churchill Downs Incorporated's Reply in Support of Motion to Dismiss, ECF No. 35
5.  Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 39
6.  Judgment Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 40
7.  Plaintiff's Motion to Reconsider Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 41
8.  Order Denying Plaintiff's Motion to Reconsider Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 42
9.  Opinion Reversing and Remanding Order Granting Motion to Dismiss, ECF No. 46 [886 F.3d 784]
10. Defendant Churchill Downs Incorporated's Motion to Compel Arbitration, No. 60
11. Plaintiff's Opposition to Defendant Churchill Downs Incorporated's Motion to Compel Arbitration, No. 68
12. Defendant Churchill Downs Incorporated's Reply in Support of Motion to Compel Arbitration, No. 70
13. Plaintiff's Surreply to Defendant Churchill Downs Incorporated's Reply in Support of Motion to Compel Arbitration, No. 72
14. Before the Washington State Gambling Commission, Order Denying Request to Issue Declaratory Order, ECF No. 74-1
15. Order Denying Motion to Compel Arbitration, No. 75
16. Defendant Churchill Downs Incorporated's Answer to Plaintiff's Complaint, No. 76
17. Defendant Churchill Downs Incorporated's Motion for Joinder of Big Fish Games, Inc. as a Necessary Party, No. 79
18. Exhibit D to Defendant Churchill Downs Incorporated's Motion for Joinder of Big Fish Games, Inc. as a Necessary Party, Petition Before the Washington State Gambling Commission, No. 79-5
19. First Amended Class Action Complaint, No. 85

20. Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, No. 217
21. Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, No. 217-1
22. Declaration of Todd Logan, No. 218
23. Exhibit 1 to Declaration of Todd Logan, Class Action Settlement Agreement, No. 218-1
24. Exhibit 2 to Declaration of Todd Logan, Edelson PC Firm Resume, No. 218-2
25. Order on Preliminary Approval of Class Action Settlement, No. 221
26. Order Scheduling Motions and Final Approval Hearing, No. 223
27. Class Member Motion to Cease and Desist, No. 228
28. Class Member Handwritten Opt Out, No. 237
29. Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, No. 243
30. Notice re: Class Notice Plan, No. 249

**B.** *Wilson v. Playtika LTD.*, **No. 3:18-cv-05277-RSL (W.D. Wash.)**

1. Class Action Complaint, ECF No. 1
2. Motion to Dismiss Defendants Playtika LTD and Playtika Holding Corp. or, in the Alternative, to Strike Certain Allegations from the Complaint, ECF No. 40
3. Plaintiff's Opposition to Defendants' Motion to Dismiss for Forum Non Conveniens, ECF No. 48
4. Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, ECF No. 52
5. Plaintiff's Opposition to Defendant Playtika LTD's Rule 12(B)(2) Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 57
6. Defendant Playtika LTD's Reply in Support of its Motion to Dismiss, ECF No. 64
7. Plaintiffs' Consolidated Surreply Pursuant to Local Rule 7(g), ECF No. 66
8. Plaintiffs' Consolidated Notice of Supplemental Authority Pursuant to LCR 7(n), ECF No. 67
9. Order Denying Defendants' Motion to Dismiss and Strike and Granting Defendants' Request for Judicial Notice, ECF No. 68
10. Defendant's Answer to Plaintiff's Class Action Complaint, ECF No. 74
11. Defendant Caesars Interactive Entertainment, LLC's Motion to Dismiss, ECF No. 75
12. Defendant Playtika LTD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 79
13. Plaintiff's Opposition to Defendant Playtika LTD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 84
14. Order Granting Defendant Playtika LTD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 85
15. Joint Status Report, ECF No. 98
16. Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 99
17. Plaintiff's Response in Opposition to Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 102
18. Defendant Playtika LTD's Reply in Support of Motion to Certify Issues to the Washington Supreme Court, ECF No. 104

19. Order on Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 113
20. Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 120
21. Proposed Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 120-1
22. Declaration of Todd Logan, No. 121
23. Exhibit 1 to Declaration of Todd Logan, Class Action Settlement Agreement, No. 121-1
24. Exhibit 2 to Declaration of Todd Logan, Edelson PC Firm Resume, No. 121-2
25. Order on Preliminary Approval of Class Action Settlement, ECF No. 124
26. Order Scheduling Motions and Final Approval Hearing, ECF No. 126
27. Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, ECF No. 129
28. Notice re: Class Notice Plan, ECF No. 136

**C. *Wilson v. Huuuge, Inc.*, No. 3:18-cf-05276-RSL**

1. Class Action Complaint, ECF No. 1
2. Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 26
3. Plaintiff's Opposition to Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 28
4. Defendant Huuuge, Inc.'s Reply in Support of Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 29
5. Order Granting Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 30
6. Defendant Huuuge, Inc.'s Motion to Compel Arbitration and Stay Action, ECF No. 31
7. Plaintiff's Opposition to Defendant Huuuge, Inc.'s Motion to Compel Arbitration and Stay Action, ECF No. 35
8. Defendant Huuuge, Inc.'s Reply in Support of Motion to Compel Arbitration and Stay Action, ECF No. 39
9. Plaintiffs' Consolidated Surreply Pursuant to Local Rule 7(g), ECF No. 41
10. Order Denying Defendant's Motion to Compel Arbitration, ECF No. 43
11. Huuuge, Inc.'s Answer to Class Action Complaint, ECF No. 61
12. Opinion Affirming Order Denying Defendant's Motion to Compel Arbitration, ECF No. 64 [944 F.3d 1212]
13. Plaintiff's Motion for Temporary Restraining Order, ECF No. 69
14. Huuuge, Inc.'s Opposition to Plaintiff's Motion for Temporary Restraining Order, ECF No. 77
15. Plaintiff's Reply in Support of Temporary Restraining Order, ECF No. 80
16. Order on Plaintiff's Motion for Temporary Restraining Order, ECF No. 82
17. Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 98
18. Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, No. 98-1
19. Declaration of Todd Logan, No. 99

20. Class Action Settlement Agreement, No. 99-1
21. Edelson PC Firm Resume, No. 99-2
22. Declaration of Steven Weisbrot, Esq. re: Angeion Group, LLC Qualifications and Implementation of the Notice Program, ECF No. 100
23. Order on Preliminary Approval of Class Action Settlement, ECF No. 101
24. Order Scheduling Motions and Final Approval Hearing, No. 105
25. Stipulated Motion and Order to Amend Preliminary Approval Order, ECF No. 106
26. Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, ECF No. 109
27. Notice re: Class Notice Plan, ECF No. 116